Thomas A. Evans (SBN 202841)
Email: tevans@reedsmith.com
Eugenia S. Chern (SBN 215092)
Email: echern@reedsmith.com
REED SMITH LLP
1999 Harrison Street, Suite 2400
Oakland, CA  94612-3572

**Mailing Address:**
P.O. Box 2084
Oakland, CA  94604-2084

Telephone:    +1 510 763 2000
Facsimile:    +1 510 273 8832

Attorneys for Defendant
Pan-American Life Insurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA MATHEWS,<br><br>          Plaintiff,<br><br>    vs.<br><br>PAN-AMERICAN LIFE INSURANCE COMPANY,<br><br>          Defendant. | No.: C 07-02757 SBA<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:         June 10, 2008<br>Time:        1:00 p.m.<br>Place:       Ctrm 3, 3rd Floor<br><br>Honorable Saundra Brown Armstrong |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 10, 2008 at 1:00 p.m., or as soon thereafter as the

matter may be heard before the Honorable Saundra Brown Armstrong, United States District Judge,

in Courtroom 3 of the above-entitled Court located at 1301 Clay Street, Oakland, California 94612,

defendant Pan-American Life Insurance Company ("Pan-American"), will and hereby does move the

Court for summary judgment, or alternatively, partial summary judgment, on the ground that there is

no genuine issue as to any material fact as to the Complaint because: (1) Pan-American has paid all

- 1 -

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

disability benefits and refunded or waived all premiums to which plaintiff is owed under her disability insurance policies; (2) Pan-American properly denied rehabilitative benefits under the policies based on plaintiff's failure to submit information to support a claim; and (2) Pan-American's actions were reasonable.

Alternatively, if for any reason summary judgment cannot be granted, Pan-American hereby moves for an order adjudicating that there is no merit to the following described claims for relief and claims for damages and that the final judgment in this action shall, in addition to any matters determined at trial, award judgment as follows:

Issue No. 1: Plaintiff Donna Mathews' first claim of relief for breach of contract must fail as a matter of law because plaintiff has been paid all disability benefits and refunded all premiums owed under her disability insurance policies, and Pan-American acted within its discretion in denying rehabilitation benefits and otherwise complied with the terms of the disability insurance policy;

Issue No. 2: Plaintiff Donna Mathews' second claim of relief for breach of the covenant of good faith and fair dealing must fail as a matter of law because Pan-American's actions were neither arbitrary nor unreasonable;

Issue No. 3: Plaintiff Donna Mathews' third claim of relief for fraud must fail as a matter of law because there was no intent to deceive, nor any misrepresentations made, by Pan-American;

Issue No. 4: Plaintiff Donna Mathews' fourth claim of relief for negligent misrepresentation must fail as a matter of law because Pan-American never made any misrepresentations to plaintiff;

Issue No. 5: Plaintiff Donna Mathews' fifth claim of relief for unfair business practices must fail as a matter of law because Pan-American's actions were neither unfair, unlawful nor fraudulent;

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Issue No. 6: Plaintiff Donna Mathews' sixth claim of relief for intentional infliction of emotional distress must fail as a matter of law because plaintiff cannot establish that Pan-American's conduct was outrageous, nor can she establish that Pan-American intended to cause her emotional distress;

Issue No. 7:  Plaintiff Donna Mathews' seventh claim of relief for negligent infliction of emotional distress must fail as a matter of law because such recovery is only applied to very limited situations, none of which apply to the facts of this case;

Issue No. 8:  Plaintiff Donna Mathews' claim for punitive and/or exemplary damages must fail as a matter of law because Pan-American's conduct was neither oppressive, fraudulent, nor malicious.

This Motion will be based on this Notice of Motion and Motion, the Declarations of Michael Jones and Thomas A. Evans, the Memorandum of Points and Authorities filed and served herewith, the papers and records on file herein, and such oral and documentary evidence as may be presented at the hearing on the Motion.

DATED:  April 29, 2008.

REED SMITH LLP

By____/s/ Thomas A. Evans_____
    Thomas A. Evans
    Eugenia S. Chern
    Attorneys for Defendant
    Pan-American Life Insurance Company

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

**Page**

I .    INTRODUCTION. .............................................................................................1

II .   STATEMENT OF FACTS. ...............................................................................1

    A.    Plaintiff's Disability Insurance Policies...............................................1

    B.    Plaintiff's Claim for Benefits Under The Policies. ..............................3

III .  POINTS AND AUTHORITIES. ....................................................................10

    A.    Standard On Motion For Summary Judgment, Or Partial Summary Judgment. .........................................................................................10

    B.    Plaintiff's Claims For Breach Of Contract And Bad Faith Fails As A Matter Of Law.................................................................................11

    C.    Plaintiff's Claims For Fraud And Negligent Misrepresentation Fail..........................15

    D.    Plaintiff's Claim For Unfair Business Practices Fails. ......................16

    E.    Plaintiff's Claim For Intentional Infliction Of Emotional Distress Fails. ..................17

    F.    Plaintiff's Claim For Negligent Infliction Of Emotional Distress Fails. ....................17

    G.    Plaintiff's Claim For Punitive Damages Fails. ...................................18

IV .   CONCLUSION..................................................................................................19

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Page**

**CASES**

*AICCO, Inc. v. Insurance Co. of North America*,
   90 Cal. App. 4th 579 (2001) ..................................................................16

*Amadeo v. Principal Mutual Life Insurance Co.*,
   290 F.3d 1152 (9th Cir. 2002) ...............................................................14

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................................11

*Beck v. State Farm Mutual Automobile Insurance Co.*,
   54 Cal. App. 3d 347 (1976) ..............................................................18, 19

*Benavides v. State Farm General Insurance Co.*,
   136 Cal. App. 4th 1241 (2006) ..............................................................17

*Burgess v. Superior Ct.*,
   2 Cal. 4th 1064 (1992) ...........................................................................18

*Butler-Rupp v. Lordeaux*,
   134 Cal. App. 4th 1220 (2005) ..............................................................17

*Cardiner v. Provident Life & Acc. Insurance Co.*,
   158 F.Supp. 2d 1088 (C.D. Cal. 2001) ..................................................15

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................................11

*Christensen v. Superior Court (Pasadena Crematorium)*,
   54 Cal. 3d 868 (1991) ...............................................................................1

*Community Assisting Recovery, Inc. v. Aegis Security Insurance Co.*,
   92 Cal. App. 4th 886 (2001) ..................................................................17

*Continental Insurance Co. v. Sup.Ct. (Bangerter)*,
   37 Cal. App. 4th 69 (1995) ....................................................................15

*Dillon v. Legg*,
   68 Cal. 2d 728 (1968) ............................................................................18

*Dumas v. Stocker*,
   213 Cal. App. 3d 1262 (1989) ...............................................................19

*Erlich v. Menezes*,
   21 Cal. 4th 543 (1999) ...........................................................................17

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Fletcher v. Western National Life Insurance Co.,*
    10 Cal. App. 3d 376 (1970) ...................................................................................17

*Flyer's Body Shop Profit Sharing Plan v. Ticor Title Insurance Co.,*
    185 Cal. App. 3d 1149 (1986) ...............................................................................19

*Gagne v. Bertran,*
    43 Cal. 2d 481 (1954) ............................................................................................16

*Gonsalves v. Hodgson,*
    38 Cal. 2d 91 (1951) ..............................................................................................15

*Gruenberg v. Aetna Insurance Co.,*
    9 Cal. 3d 566 (1973) ..............................................................................................14

*Hadland v. NN Investors Life Insurance Co.,*
    24 Cal. App. 4th 1578 (1994) ................................................................................16

*Horrell v. Santa Fe Tank & Tower Co.,*
    117 Cal. App. 2d 114 (1953) .................................................................................16

*Jonathan Neil & Associates, Inc. v. Jones,*
    33 Cal. 4th 917 (2004) ...........................................................................................14

*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.,*
    48 Cal. 3d 583 (1989) ............................................................................................18

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986)................................................................................................11

*Molien v. Kaiser Foundation Hospitals,*
    27 Cal. 3d 916 (1980) ............................................................................................18

*Okun v. Morton,*
    203 Cal. App. 3d 805 (1988) .................................................................................15

*Progressive West Insurance Co. v. Sup.Ct. (Preciado),*
    135 Cal. App. 4th 263 (2005) ................................................................................17

*Ricard v. Pacific Indemnity Co.,*
    132 Cal. App. 3d 886 (1982) .................................................................................17

*Rubin v. Green,*
    4 Cal. 4th 1187 (1993) ...........................................................................................16

*San Diego Housing Commission v. Industrial Indemnity Co.,*
    68 Cal. App. 4th 526 (1998) ..................................................................................14

*Schlauch v. Hartford Acc. & Indemnity Co.,*
    146 Cal. App. 3d 926 (1983) .................................................................................17

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

- iii -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Stewart v. Truck Insurance Exchange*,
    17 Cal. App. 4th 468 (1993) ...................................................................................18

*Waters v. United Services Automobile Association*,
    41 Cal. App. 4th 1063 (1996) ...............................................................................15

*Wilhelm v. Pray, Price, Williams & Russell*,
    186 Cal. App. 3d 1324 (1986) ...............................................................................15

**STATUTES**

Cal. Civ. Code § 1709....................................................................................................15

Cal. Civ. Code § 3294(a) ...............................................................................................18

Cal. Ins. Code § 10350.10..............................................................................................15

**RULES**

Fed. R. Civ. Proc. 56.................................................................................................10, 11

**OTHER AUTHORITIES**

5 Witkin, Summary of Cal. Law, Torts, § 772 (10th ed. 2005).........................................15

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION.

Plaintiff Donna Mathews ("plaintiff") brings this action against Pan-American Life Insurance Company ("Pan-American") asserting claims for breach of contract, bad faith, fraud, negligent misrepresentation, intentional and negligent infliction of emotional distress and unfair business practices in connection with Pan-American's handling of her claim for disability and rehabilitative benefits under three disability insurance policies.  However, plaintiff has no basis for recovery in this action as she has been paid, and continues to be paid all disability benefits to which she is entitled under the policies.  Moreover, she has been refunded all premiums since the date of her disability as provided by the policies' terms.  To the extent that plaintiff's claims are based on Pan-American's denial of her request for rehabilitative benefits under the policies, Pan-American acted within its discretion in denying her request because she failed to submit necessary information to evaluate her claim.  Plaintiff also complains of administrative and accounting issues by Pan-American in the issuance of checks and payment of premiums in connection with her disability benefits.  However, those issues, which were promptly resolved once discovered, do not amount to actionable claims against Pan-American.  For these reasons, summary judgment, or alternatively, partial summary judgment should be granted in Pan-American's favor as to all of plaintiff's claims.

## II.    STATEMENT OF FACTS.

### A.    Plaintiff's Disability Insurance Policies.

Plaintiff is insured under three policies with Pan-American: (1) Disability Income Policy Number 1257-753 with a monthly premium amount of $39.70 and an issue date of June 6, 2001, (2) Disability Income Policy Number 1257-758 with a monthly premium of $44.20 and an issue date of July 6, 2005, and (3) Disability Income Protection Policy Number 1285-764 with a monthly premium amount of $62.07 and an issue date of May 6, 1991.  Declaration of Michael Jones in Support of Motion for Summary Judgment, Or Alternatively, Partial Summary Judgment ("Jones Decl."), ¶¶ 3, 4, 24 and Exs. A, B, R.  The purpose of all three Policies is to pay benefits to cover "losses of income due to disabilities beginning while this policy is in force."  *Id.* at Exs. A at PAL 1007, B at PAL 0943, R at PAL 0943.  Pan-American "AGREES TO PAY the benefits provided in

- 1 -

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    this policy subject to its terms and conditions." *Id.*  Both of plaintiff's Disability Income Policies

2    provide a monthly benefit of $500, while plaintiff's Disability Income Protection Policy provided a

3    monthly benefit of $1700.  *Id.* at Exs. A at p. 3, B at PAL 0163, R at PAL 0942.  All three policies

4    had a 60-day elimination period and 5-year maximum benefit period.  *Id.*

5        Under the terms of the Disability Income Policies, Pan-American agrees to pay the monthly

6    benefit provided that plaintiff meets the Policy terms.  Jones Decl., Exs. B, R at PAL 0943.  If

7    plaintiff's "Total Disability begins while this policy is in force and lasts longer than the Elimination

8    Period, we will pay the Monthly Benefit for each additional month Total Disability continues

9    beyond the Elimination Period." *Id.* at  PAL 0946.  "Total Disability" means that the insured

10   "[c]annot work at your Regular Job because of Injury or Sickness during the first 5 years of

11   Disability" and is "under the regular care of a Doctor.  We will waive this requirement if we receive

12   written proof acceptable to us that further Doctor's care would be of no benefit to you." *Id.* at PAL

13   0945.  The Disability Income Policies also contain a Rehabilitation provision which states as

14   follows:  "We will pay for a rehabilitation program if we approve it in advance.  The extent of our

15   payment will be what we state in our written approval.  We will not pay for any rehabilitation

16   expenses covered by another source.  This payment will have no effect on any other benefit of this

17   policy." *Id.* at PAL 0947.

18       The terms of the Disability Income Protection Policy similarly provide that "[i]f total

19   disability begins while this policy is in force and lasts longer than the Elimination Period, [Pan-

20   American] will pay the Monthly Benefit for each additional month total disability continues beyond

21   the Elimination Period." Jones Decl., Ex. A at PAL 1010.  However, the definition of "Total

22   Disability" under the Disability Income Protection Policy is slightly different:

23       Total Disability occurs when the Insured:

24       • Cannot work at his or her regular job because of injury or sickness for two

25          years.  Following two years of total disability, total disability requires that the

26          insured not be engaged in any paying work; and

27       • Must be under the regular care of a doctor.  If in the opinion of the doctor

28          there is no doubt that the Insured is disabled and future or continued treatment

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1      would be of no benefit to the Insured, the requirement for regular care of a

2      doctor is satisfied.

3   *Id.* at PAL 1009.  The Disability Income Protection Policy also contains a Rehabilitation provision

4   which states as follows: "[Pan-American] will pay for a rehabilitation program that we approve.

5   Maximum payment for a single disability will be 24 times the Monthly Benefit.  With our

6   permission this maximum may be waived.  This payment will have no effect on any other benefit of

7   this policy."  *Id.* at PAL 1011.

8      Under the terms of the three Policies, Pan-American will waive any premiums that become

9   due while the insured remains disabled, after 90 consecutive days of disability, and provided the

10   policy is in force.  Jones Decl., Exs. A at PAL 1012, B, R at PAL 0948.  Pan-American will refund

11   any premiums paid during the first 90 days of disability, if premiums are waived.  *Id.*

12   **B.**     **Plaintiff's Claim for Benefits Under The Policies.**

13      In early February 2006, plaintiff submitted a claim for disability benefits to Pan-American.

14   Jones Decl., ¶ 5 and Ex. C.  In support of plaintiff's claim, Pan-American received a Proof of Loss –

15   Monthly Income Claimant's Statement and Occupational Description Form signed by plaintiff, and

16   an Attending Physician's Statement (APS) signed by plaintiff's treating physician, Dr. Andrew

17   Alexander.  *Id.*  According to the Claimant's Statement and Occupational Description Form, plaintiff

18   was employed as a dental hygienist working approximately 32 hours per week at Brown's Valley

19   Dental in Napa, California.  *Id.*, Exs. C and D.  Her duties as a dental hygienist included dental

20   prophylaxis, one-hour appointments involving x-rays, scaling, polishing, oral hygiene, sterilization

21   of instruments, and education.  *Id.*  Plaintiff described her job as sedentary with "all fine

22   movements."  *Id.*  Plaintiff stated that she became partially disabled beginning on November 19,

23   2005, when she slipped and fell six feet off a ladder on the deck of her home.  *Id.*  She then returned

24   to work on November 21, 2005, but then became totally disabled on December 14, 2005.  *Id.*

25      According to the APS signed by Dr. Alexander, plaintiff's diagnosis was a rotator cuff tear.

26   Dr. Alexander characterized plaintiff's physical impairment as "Class 4 – Moderate limitation of

27   functional capacity; capable of clerical/administrative (sedentary*) activity."  Jones Decl., Ex. C.

28   Dr. Alexander also stated that plaintiff was totally disabled from performing her regular job, and all

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   other types of work, but that he expected significant improvement in the future.  *Id.*  He indicated

2   that plaintiff would be able to recover sufficiently to perform the duties of her regular job by March

3   15, 2006.  *Id.*  Dr. Alexander did not indicate whether plaintiff would be a suitable candidate for

4   rehabilitation, and said that her present job could not be modified to allow for handling with

5   impairment.  *Id.*

6   Plaintiff also provided to Pan-American a list of her treating physicians, which included Dr.

7   Alexander, Dr. Steven Smith, Dr. Marko Bodor, Dr. Jaime Fitzgerald-McMullen, Dr. Chris

8   Henderson, St. Helena Hospital, Wellspring Physical Therapy and Santa Rosa Imaging Medical

9   Center.  Jones Decl., ¶ 8 and Ex. F.  Pan-American ordered plaintiff's medical records from all of the

10  medical providers disclosed by plaintiff.  *Id.*, ¶ 12.

11  Since plaintiff became totally disabled on December 14, 2005, the 60-day Elimination Period

12  under Policy numbers 1285-764 and 1257-758 began to run on that date and ended on February 14,

13  2006.  Jones Decl., ¶ 9.  Once the Elimination Period expired, monthly benefits under these Policies

14  became payable as of February 14, 2006.  *Id.*  Pan-American began paying monthly benefits under

15  those Policies to plaintiff in the amounts of $1700.00 and $500.00, respectively, on or about March

16  6, 2006.  *Id.*  On March 13, 2006, Pan-American also notified plaintiff that it had approved her

17  application for waiver of premiums as to those Policies effective December 14, 2005, and issued

18  checks to plaintiff in the amounts of $88.40 and $114.14, respectively, representing a refund of two-

19  months worth of premiums on both Policies.  *Id.*, ¶¶ 10, 11 and Exs. G, H.  Because the initial

20  statement indicated a disability of three months, Pan-American approved the claim for three months

21  of benefits.[1] Jones Decl., ¶ 9.

22  On or about April 3, 2006, Pan-American received a Supplementary Proof of Loss Monthly

23  Income Claimant's Statement signed by plaintiff in March 2006, indicating that plaintiff was now

24  claiming a longer period of disability. Jones Decl., ¶ 13 and Ex. I.   According to the Supplementary

25

26  [1] Indeed, plaintiff testified at her deposition that Dr. Alexander indicated a return-to-work date of
    March 15, 2006 because "[t]his is how we play the game."   Declaration of Thomas A. Evans in
27  Support of Motion for Summary Judgment, Or Alternatively, Partial Summary Judgment ("Evans
    Decl."), Ex. C at 108:10-109:3.

28

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   Statement, plaintiff remained totally disabled and unable to perform all the duties of her regular

2   occupation.  *Id.*  Along with the Supplementary Statement, plaintiff submitted a narrative statement

3   dated March 15, 2006, describing her November 19, 2005 accident, and an updated list of her

4   treating physicians which included Dr. Smith, Dr. Fitzgerald-McMullen, Wellspring Physical

5   Therapy, Dr. Alexander, Dr. Eldan Eichbaum, and Dr. Barry Brown.  *Id.*

6       Pan-American also received an APS signed by Dr. Barry A. Brown on March 29, 2006.

7   Jones Decl., ¶ 14 and Ex. J.  According to the APS, plaintiff's diagnosis was cervical stenosis and

8   left rotator cuff repair.  *Id.*  Dr. Brown stated that plaintiff's rotator cuff was unchanged and that her

9   cervical stenosis had retrogressed.  *Id.*  Dr. Brown concluded that plaintiff had physical impairment

10   of "Class 4 – Moderate limitation of functional capacity; capable of clerical/administrative

11   (sedentary*) activity."  *Id.*  Dr. Brown concluded that plaintiff was totally disabled from her own

12   occupation, but that she was not totally disabled from performing all other types of work. *Id.*  Dr.

13   Brown expected plaintiff to recover sufficiently to perform the duties of her regular job within three

14   to six months. *Id.*  He also said that vocational counseling and/or retraining would "possibly" be

15   recommended. *Id.*

16       Because plaintiff was now claiming a more severe disability for a longer period of time, Pan-

17   American conducted a further investigation of plaintiff's claim. Jones Decl., ¶ 16.  Furthermore,

18   when a claimant changes his or her treating physicians and then sees multiple other health care

19   providers, this raises concerns about the claim that may require additional investigation. *Id.*

20   Accordingly, as part of the investigation of plaintiff's claim, Pan-American ordered and reviewed

21   plaintiff's medical records from Dr. Eichbaum and Dr. Brown based on the updated list of treating

22   physicians provided by plaintiff. *Id.*, ¶ 15.  Pan-American requested that Mitchell S. Nudelman,

23   Chief Medical Officer of Medical Director Solutions, LLC review plaintiff's claim and medical

24   records. *Id.*, ¶ 17 and Ex. K.  Pan-American also ordered an Independent Medical Examination of

25   plaintiff. *Id.*  Pan-American further requested surveillance of plaintiff as part of the investigation of

26   her claim for additional benefits. *Id.*, ¶ 17.

27       In May 2006, Pan-American wrote a letter to plaintiff enclosing refunds of premium

28   withdrawals taken on April 12, 2006 for policy numbers 1257-758 and 1285-764.  Jones Decl., ¶ 18

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1　and Ex. L.  An amount of $499.20 was deducted to pay policy number 1257-758, of which $406.80

2　was refunded.  *Id.* An amount of $652.71 was deducted to pay policy number 1285-764, of which

3　$534.57 was refunded. *Id.*  The deductions resulted due to an error in resetting the premium

4　withdrawals to an "annual" rate, instead of a "monthly" rate. *Id.*  The remainder of the withdrawal

5　amounts were applied to both Policies to keep them in force until June 6, 2006.  *Id.*  Although Ms.

6　Mathews stated that this error caused her account to be overdrawn, she admitted that the bank

7　reversed any charges for overdraft fees.  Evans Decl., Ex. C at 126:17-127:13.  She also admitted

8　that she has not been experiencing any financial difficulties in paying bills. *Id.* at 126:17-127:5,

9　147:15-148:17.

10　　In July 2006, Pan-American wrote to plaintiff informing her that the company was in the

11　process of investigating her claim for benefits, and that it would pay monthly payments under Policy

12　numbers 1257-758 and 1285-764 under a reservation of rights, without waiving Pan-American's

13　right to later contest coverage or deny the claim.  Jones Decl., ¶ 19 and Ex. M.  Shortly thereafter, on

14　or about July 21, 2006, plaintiff wrote to Pan-American inquiring about rehabilitation benefits under

15　the terms of her disability policy.  *Id.*, ¶ 20 and Ex. N.  In early August 2006, Pan-American

16　acknowledged receipt of plaintiff's July 21, 2006 letter, and requested a copy of her rehabilitation

17　plans including, "a detailed plan of treatment and estimated costs and estimated date of rehabilitation

18　completion."  *Id.*, ¶ 21 and Ex. O.

19　　On August 23, 2006, Pan-American received a letter from plaintiff stating, among other

20　things, that she had been overcharged $964.28 in premiums and that Pan-American erroneously

21　debited $1,189.61 from her bank account on April 17, 2006, causing her to incur two service charges

22　of $4.00 each.  Jones Decl., ¶ 22 and Ex. P.  In response to Pan-American's request for further

23　information as to plaintiff's inquiry regarding rehabilitation benefits, plaintiff mentioned some

24　schools where she may pursue nursing, but did not include a detailed plan or any estimated costs. *Id.*

25　　Approximately two days later, Pan-American wrote to plaintiff acknowledging receipt of,

26　and responding to, her August 23, 2006 letter.  Jones Decl., ¶ 23 and Ex. Q.  Pan-American clarified

27　that $1,151.91, not $1,189.61, was overdrafted from plaintiff's bank account.  *Id.*  Pan-American had

28　requested that plaintiff forward a bank statement illustrating the $1,151.91 amount in question, but

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   the information was never received.  *Id.*  A total of $941.37 was reimbursed to plaintiff via check in

2   May 2006 once the overdraft was discovered.  *Id.*, ¶¶ 18, 23 and Exs. L, Q.  At the time, the

3   remaining amount of the overdrafted premiums had been retained to keep plaintiff's Policies in force

4   through June 6, 2006.  *Id.*  However, Pan-American also refunded those premiums, and confirmed

5   that all premiums have been waived or refunded since December 14, 2005, and will continue to be

6   waived or refunded while she is on disability.  *Id.*, ¶ 23 and Ex. Q.  Pan-American also informed

7   plaintiff that it would not be extending benefits for rehabilitation.  *Id.*

8        In September 2006, Pan-American discovered plaintiff's third disability policy with Pan-

9   American, Disability Income Policy number 1257-753.  Jones Decl., ¶ 24 and Ex. R.  Pan-American

10  did not locate the Policy earlier because it was indexed under an incorrect social security number.  *Id.*

11  After discovering Policy number 1257-753 on September 12, 2006, Pan-American sent to plaintiff a

12  check dated September 13, 2006, in the amount of $2,000.00 for payment of monthly benefits for the

13  period of February 14, 2006 through June 14, 2006.  *Id.*, ¶ 25 and Ex. S.  That same day, Pan-

14  American also informed plaintiff that it had approved waiver of premiums as to this Policy effective

15  December 14, 2005.  *Id.*, ¶ 26 and Ex. T.  Pan-American refunded premiums to plaintiff in the

16  amount of $301.60.  *Id.*  As with the other two Policies, Pan-American informed plaintiff that

17  premiums would be waived as long as she continued to be disabled within the meaning of the Policy,

18  and that Pan-American reserved the right to require evidence of her continued disability.  *Id.*

19       Plaintiff wrote to Pan-American requesting an itemized accounting of the $301.60 refund

20  amount enclosed with Pan-American's September 12, 2006 letter.  Jones Decl., ¶ 27 and Ex. U.

21  Pan-American responded to plaintiff's letter within a few days, providing an itemized accounting of

22  the $301.60 refund amount with a breakdown by monthly premium amount refunded and the

23  corresponding month.  *Id.*, ¶ 29 and Ex. W.  Plaintiff had been refunded the monthly premium

24  amount of $37.70 for each month between January 6, 2006 through September 6, 2006, for a total of

25  $301.60.  *Id.*

26       In mid to late September 2006, Pan-American received letters from the Consumer Protection

27  Division for the Napa County District Attorney's Office and the California Department of Insurance

28  informing the Company that plaintiff had submitted complaints regarding Pan-American's handling

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

of her disability claims. Jones Decl., ¶¶ 28, 30 and Exs. V, X. In her complaints, plaintiff requested reimbursement of improperly debited premiums, payment of policy benefits and rehabilitation benefits, and asked that Pan-American date their checks. *Id.* Pan-American responded to both complaints in early October 2006, stating that: (1) plaintiff had received all refunded premiums due to her for all her policies totaling $1,648.05; (2) plaintiff's claim for disability benefits was never denied, and in fact, she had received benefit payments for all of her Policies totaling $10,800 to date; (3) not only are plaintiff's benefit checks and premium refund checks dated and state the benefit period for which they cover, they also include an itemized statement defining the time period of the benefits and have dated accompanying correspondence; (4) Pan-American explained to plaintiff the policies' rehabilitation provision and that rehabilitation benefits are paid at Pan-American's discretion, and further notified plaintiff in writing that it was not approving her request for rehabilitation benefits. *Id.*, ¶¶ 31, 32 and Exs. Y, Z.

Plaintiff sent Pan-American another letter dated October 24, 2006, with additional questions regarding Pan-American's October 2006 letter to the Napa County District Attorney's Office. Jones Decl., ¶ 33 and Ex. AA. Pan-American responded in a letter dated November 15, 2006, reminding plaintiff that it had requested copies of her bank statements in August 2006 evidencing the alleged overdraft bank charges she had incurred, and enclosed a copy of its August 2006 letter requesting the same. *Id.*, ¶ 35 and Ex. CC. Pan-American also explained again the calculation of the premium reimbursements and the dating of the checks for benefits. *Id.* At around the same time, Pan-American sent two additional checks to plaintiff refunding premium payments made by plaintiff after she was placed on disability in the amounts of $96.40 for policy number 1257-758, and $122.14 for policy number 1285-764. *Id.*, ¶ 34 and Ex. BB. Plaintiff had now been refunded total premium refunds in the amounts of $301.60 for policy number 1257-753, $884.99 for policy number 1285-764, and $680.00 for policy number 1257-758. *Id.*

Plaintiff underwent an Independent Medical Examination on November 15, 2006.[2] Jones

---

[2] It typically takes some time to schedule independent medical examinations. Jones Decl., ¶ 36. In addition, Pan-American was coordinating the scheduling of the examination with the surveillance of Ms. Mathews. *Id.* Ms. Mathews' examination had originally been scheduled for October 16, 2006, but was re-scheduled to November 15, 2006 at Ms. Mathew's request. *Id.*

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   Decl., ¶ 36 and Ex. DD.  Plaintiff was seen by Elaine S. Date, M.D., Associate Professor and Head

2   of the Division of Physical Medicine & Rehabilitation for the Department of Orthopedic Surgery at

3   Stanford University School of Medicine, who concluded that "the objective medical findings do

4   support the presence of an impairment, which limits Ms. Mathews' ability to work as a dental

5   hygienist."  *Id.* at PAL 0760.    Attached to the report was a chart regarding the scope of Ms.

6   Mathews' impairment, which indicated severe limitations in lifting, crouching, reaching, and other

7   regular activities.  *Id.* at PAL 0762.

8       On November 30, 2006, Pan-American received a letter from plaintiff dated November 27,

9   2006, responding to Pan-American's explanation of the previous overdraft of premiums, discovery

10  of Policy number 1257-753, checks that were allegedly being sent without clarification.  Jones Decl.,

11  ¶ 38 and Ex. FF.  Plaintiff also had additional questions regarding Pan-American's review of request

12  for rehabilitation benefits. *Id.*  Pan-American responded to plaintiff's letter on December 8, 2006,

13  stating that Pan-American had responded in a timely and detailed fashion to her requests. *Id.*, ¶ 39

14  and Ex. GG.  Pan-American also explained again the rehabilitation provision in the Policies,

15  informing plaintiff that "Pan American reserves the right to be involved with an insured's vocational

16  rehabilitation process" which "includes but is not limited to evaluation by certified rehabilitation

17  specialists, physical testing and vocational aptitude testing.  This benefit is not a guaranteed benefit

18  for all disabled insured and must be agreed upon and evaluated in advance on a case to case basis."

19  *Id.*  Pan-American again stated that it would not be entering into a rehabilitation agreement with

20  plaintiff.  *Id.*  Incidentally, plaintiff never informed Pan-American that she was and is receiving

21  rehabilitation benefits from the State of California, nor has she ever provided her rehabilitation plan

22  or an estimate of costs. *Id.*, ¶ 43.

23      Pan-American has paid and continues to pay all monthly disability benefits owed to plaintiff

24  under Policy numbers 1257-758, 1257-753, and 1285-764, since the expiration of the Elimination

25  Period on February 14, 2006.  Jones Decl., ¶ 41.  Plaintiff's benefits have been brought up to date.

26  *Id.* at ¶ 41 and Ex. HH.  Although one explanation of benefits was sent with an incorrect date, this

27  was not an attempt to deceive plaintiff but a clerical error that has been corrected. *Id.* at ¶ 41.   Pan-

28  American has also refunded premiums paid by plaintiff on Policy numbers 1257-758, 1257-753, and

- 9 -

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   1285-764 since plaintiff's date of disability on December 14, 2005. *Id.*, ¶ 42. Pan-American will

2   continue to waive payment of premiums under the Policies as long as plaintiff continued to be

3   disabled within the meaning of the Policies. *Id.*

4         Unknown to Pan-American, Ms. Mathews applied for and began receiving rehabilitation

5   benefits from the State of California Department of Rehabilitation, which has been paying Ms.

6   Mathews' costs and tuition to for attending Sonoma State University to pursue a bachelor's in

7   nursing program. Evans Decl., Ex. C at 59:4-61:6. As part of this process, Ms. Mathews obtained

8   information regarding the necessary coursework and whether a nursing career was feasible in light of

9   her disability, and if so, what course of study would provide a feasible opportunity to pursue a

10  career. *Id.* at 58:24-59:9. This culminated in a detailed rehabilitation plan developed with the state.

11  Ms. Mathews never disclosed to Pan-American (or to the state agencies to which she complained)

12  that she had applied for or received benefits, nor did she ever forward her rehabilitation plan to Pan-

13  American for review. *Id.* at 131:9-12; Jones Decl.., ¶ 43. Ms. Mathews has claimed that she has

14  suffered distress as a result of receiving state benefits. Evans Decl., Ex. C at 153:1-12. During the

15  same period however, Ms. Mathews received state disability payments to supplement her income, in

16  addition to her Pan-American benefits. *Id.*, Ex. C at 93:8-18, D at p. 16.

17        Although Ms. Mathews initially indicated to Pan-American that she was considering several

18  schools, including Sonoma State University, she has since indicated that she would have preferred

19  Pacific Union College, a private school in Angvin. *Id.*, Ex. D at pp. 8-9. According to Ms. Mathews,

20  tuition at Pacific Union is approximately $22,000 – more than $15,000 more than her tuition at

21  Sonoma State. *Id.* When asked why she preferred Pacific Union, Ms. Mathews indicated it was a

22  shorter drive. *Id.*, Ex. C at 59:4-12.

23  ## III.    POINTS AND AUTHORITIES.

24  ### A.    Standard On Motion For Summary Judgment, Or Partial Summary Judgment.

25        A party against whom a claim is asserted may, at any time, move with or without supporting

26  affidavits for a summary judgment in the party's favor as to all or any part thereof. Fed. R. Civ.

27  Proc. 56(b). The judgment sought shall be rendered forthwith if the pleadings, depositions, answers

28  to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

2    of law. Fed. R. Civ. Proc. 56(c).

3         The moving party bears the initial burden of demonstrating the absence of a genuine issue of

4    material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986).  However, the moving party

5    has no burden to negate or disprove matters on which the non-moving party will have the burden of

6    proof at trial. *Id*.  The moving party need only point out to the Court that there is an absence of

7    evidence to support the non-moving party's case. *Id.* at 325.

8         The burden then shifts to the non-moving party to "designate 'specific facts showing that

9    there is a genuine issue for trial.'"  *Id.* at 324 (quoting Fed. R. Civ. Proc. 56(e)).  To carry this

10   burden, the non-moving party must "do more than simply show that there is some metaphysical

11   doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475

12   U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there

13   must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v.

14   Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Evidence that "is merely colorable, or is not

15   significantly probative," is not sufficient to avoid summary judgment.  *Id*. at 249-250.

16   **B.     Plaintiff's Claims For Breach Of Contract And Bad Faith Fails As A Matter Of**

17        **Law.**

18        There is no genuine issue of material fact as to plaintiff's breach of contract and bad faith

19   claims.  Plaintiff has been paid and continues to be paid all monthly disability benefits owed under

20   her three Pan-American Policies.  Pan-American has also refunded or waived any premiums owed

21   under the Policies since plaintiff's date of disability.  Moreover, Pan-American properly denied

22   rehabilitation benefits because plaintiff failed to submit the requested information for Pan-

23   American's review and approval.  To the extent plaintiff asserts clerical errors by Pan-American in

24   connection with the issuance of payments and/or refunds, those errors do not constitute a breach of

25   contract, and most certainly, do not constitute bad faith.  Summary judgment is therefore appropriate

26   as to plaintiff's claims for breach of contract and bad faith.

27        Plaintiff submitted a claim for disability benefits under her Pan-American Policies.  Plaintiff

28   became totally disabled on December 14, 2005, and therefore, the 60-day Elimination Period under

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

the Policies began to run on that date and ended on February 14, 2006.  Jones Decl., ¶¶ 9, 25.  Once the Elimination Period expired, monthly benefits under the Policies became payable as of February 14, 2006.  *Id.*  Pan-American began paying monthly benefits under Policy numbers 1285-764 and 1257-758 to plaintiff in the amounts of $1700.00 and $500.00, respectively, on March 6, 2006.  *Id.*, ¶ 9.  As soon as Pan-American discovered plaintiff's third Policy number 1257-753 in September 2006, it immediately paid plaintiff disability benefits owed for the period of February 14 through June 14, 2006, totaling $2,000.00. *Id.*, ¶¶ 24, 25 and Ex. S.  Since benefits became payable on February 14, 2006, Pan-American has paid and continues to pay the monthly disability benefits owed under all three Policies. *Id.*, ¶ 41.  Ms. Mathews' first claim for benefits only indicated a three month disability;  it was therefore reasonable for Pan-American to treat her claim as a three month disability until she advised Pan-American that she was claiming additional benefits and a longer disability.  At that point, Pan-American was entitled to investigate the substance of Ms. Mathews' supplemental claim.  Moreover, all premiums under the three Policies have been either waived or refunded to plaintiff since her date of disability on December 14, 2005. *Id.*, ¶ 42.  Plaintiff also cannot assert a breach of contract claim based on clerical errors by Pan-American in the administration of benefits and premium refunds under the Policies.  Such errors, once discovered, were promptly resolved.  Accordingly, Pan-American has fulfilled its obligations under the Policies with respect to plaintiff's claim for disability benefits.

Pan-American has further complied with the Policies' terms with respect to the handling of plaintiff's request for rehabilitation benefits.  The Rehabilitation Provision of plaintiff's Disability Income Policies states as follows:  "[Pan-American] will pay for a rehabilitation program if we approve it in advance.  The extent of our payment will be what we state in our written approval.  We will not pay for any rehabilitation expenses covered by another source.  This payment will have no effect on any other benefit of this policy." Jones Decl., Exs. B, R at PAL 0947.  Plaintiff's Income Protection Policy contains a similar provision:  "[Pan-American] will pay for a rehabilitation program that we approve.  Maximum payment for a single disability will be 24 times the Monthly Benefit.  With our permission this maximum may be waived.  This payment will have no effect on any other benefit of this policy." *Id.*, Ex. A at PAL 1011.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   In late July 2006, plaintiff notified Pan-American that she wanted to apply for rehabilitation

2   benefits under her Policies. Jones Decl., ¶ 20 and Ex. N. In order to evaluate her claim, Pan-

3   American needed to determine the type of occupational vocational rehabilitation and the field of

4   future employment plaintiff would pursue. Evans Decl., Ex. B at 28:19-25. In addition, Pan-

5   American would also require an action plan describing the course of study, the cost of and length of

6   time to complete the course of study, and how the plaintiff expected to accomplish her goal of

7   returning to work. *Id.* at 29:1-6, 68:21-70:17. Consistent with Pan-American's requirements, Pan-

8   American requested in writing in early August 2006 that plaintiff submit a copy of her rehabilitation

9   plans, including "a detailed plan of treatment and estimated costs and estimated date of rehabilitation

10  completion." Jones Decl., ¶ 21 and Ex. O. In response to Pan-American's request for information,

11  plaintiff mentioned some schools where she may pursue nursing, but failed to submit a detailed plan

12  of treatment, estimated costs, and estimated date of rehabilitation completion. *Id.*, ¶ 22 and Ex. P.

13  To date, plaintiff has not provided the information requested by Pan-American in order to evaluate

14  plaintiff's claim for rehabilitation benefits. *Id.*, ¶ 43. Indeed, Ms. Mathews has already developed a

15  rehabilitation plan, obtained benefits, and determined the likely cost and time her plan will require,

16  but did not disclose it to Pan-American. Evans Decl., Ex. C at 58:24-61:6. Pan-American, on the

17  other hand, has only received a list of schools and a vague timeline from someone who, based on the

18  results of her last medical examination, is severely disabled. Jones Decl., ¶ 22 and Ex. P.

19  Accordingly, Pan-American acted within its discretion in denying rehabilitation benefits to plaintiff

20  under her three Policies.

21  In any event, plaintiff has not suffered any damages in connection with the denial of her

22  claim for rehabilitation benefits as she is receiving rehabilitation benefits from the State of California

23  Department of Rehabilitation to attend the nursing program at Sonoma State University. Jones

24  Decl., ¶ 43; Evans Decl., Ex. C at 59:4-61:6. Plaintiff never informed Pan-American that she was

25  receiving rehabilitation benefits from the State before the filing of this lawsuit. Jones Decl., ¶ 43;

26  Evans Decl., Ex. C at 131:9-12. Even if granted, the rehabilitation benefit does not require payment

27  of any specific sum, but only an amount that covers the plan, which Ms. Mathews has already

28  received. Moreover, plaintiff cannot claim damages on the ground that she would have applied to

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   the nursing program at Pacific Union College – a $22,000 per year private college –  rather than

2   Sonoma State if Pan-American had granted her claim.  Nothing in the Policies nor in applicable law

3   imposes a duty upon an insurer to pay for a private education versus a public education in

4   connection with rehabilitation benefits, nor does it permit Ms. Mathews to select the most expensive

5   option available.   Plaintiff's breach of contract claim therefore fails as a matter of law on that basis.

6       Since there is no breach of contract, there can be no breach of the covenant of good faith and

7   fair dealing.  *San Diego Housing Commission v. Industrial Indemnity Co.*, 68 Cal. App. 4th 526, 544

8   (1998) ("[w]here a breach of contract cannot be shown, there is no basis for a finding of breach of

9   the covenant").  For the reasons mentioned above, plaintiff's claim for bad faith also fails.

10      However, even if there is a genuine issue as to plaintiff's breach of contract claim, which

11  Pan-American denies, plaintiff has not set forth sufficient facts to create a genuine issue of material

12  fact as to her bad faith claim.  Damages for an insurer's bad faith are proper only where its

13  misconduct relates to benefits promised under the policy - i.e., to its duty to defend, settle or pay

14  claims. *Jonathan Neil & Assocs., Inc. v. Jones*, 33 Cal. 4th 917, 940 (2004).  In *Jones*, tort damages

15  for bad faith were refused where an insurance company had "in bad faith" retroactively billed its

16  insured for excessive premiums.  The insured had received the benefits of the policy (security

17  against loss and third party liability) and the <u>overbilling was unrelated to claims handling</u>.  *Id.* at

18  938–940.  "[T]he billing dispute does not, by itself, deny the insured the benefits of the insurance

19  policy." *Id.* at 939-941 n.10.  Similarly, here, since plaintiff has received and continues to receive all

20  monthly disability benefits under her three Policies, she cannot prevail on a bad faith claim based on

21  clerical errors unrelated to Pan-American's handling of her disability claim.

22      Further, plaintiff cannot prevail on her claim for bad faith based on Pan-American's denial of

23  her claim for rehabilitation benefits.  A bad faith claim requires facts that demonstrate that the

24  insurer was "arbitrary or unreasonable" in withholding benefits under the contract. *See Amadeo v.*

25  *Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1162 (9th Cir. 2002); *Gruenberg v. Aetna Ins. Co.*, 9

26  Cal. 3d 566, 574 (1973).  Once plaintiff made an inquiry to Pan-American regarding rehabilitation

27  benefits, Pan-American requested that she submit a rehabilitation plan, including a detailed plan of

28  treatment and estimated costs and estimated date of rehabilitation completion, so that the Company

- 14 -

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   could evaluate her claim for rehabilitation benefits.  Jones Decl., ¶¶ 20, 21 and Exs. N, O, P, GG.

2   She did not do so, and therefore, Pan-American acted within its discretion to deny benefits.  *Id.*  In

3   addition, Pan-American's independent medical examination revealed Ms. Mathews to be

4   substantially impaired, and Ms. Mathews had provided no information to establish that she could

5   pursue a nursing career, even though she had gathered such information in the course of applying for

6   state benefits.[3]  Moreover, plaintiff is already receiving rehabilitation benefits from the State to

7   cover the expenses of her nursing education. *Id.*, ¶ 43.  If the insured suffers no financial loss, no bad

8   faith claim can be maintained solely for emotional distress resulting from the insurer's delay or other

9   mishandling of the claim. *Continental Ins. Co. v. Sup.Ct. (Bangerter)*, 37 Cal. App. 4th 69, 86

10  (1995); *Waters v. United Services Auto. Ass'n*, 41 Cal. App. 4th 1063, 1079 (1996).  Pan-American's

11  handling of plaintiff's rehabilitation claim therefore does not support a claim for bad faith.

**C.      Plaintiff's Claims For Fraud And Negligent Misrepresentation Fail.**

13           Summary judgment is likewise proper as to plaintiff's claims for fraud and negligent

14  misrepresentation because plaintiff cannot establish that Pan-American made any misrepresentation,

15  intentional or otherwise, to plaintiff.

16           The elements of fraud are "(a) misrepresentation (false representation, concealment, or

17  nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance;

18  (d) justifiable reliance; and (e) resulting damage."  5 Witkin, Summary of Cal. Law, Torts, § 772

19  (10th ed. 2005); Cal. Civ. Code § 1709.  All of the cited elements must be established in order to

20  find actionable fraud, as the absence of any one element is fatal to recovery.  *Gonsalves v. Hodgson*,

21  38 Cal. 2d 91, 101 (1951);  *Okun v. Morton*, 203 Cal. App. 3d 805, 828 (1988); *Wilhelm v. Pray,*

22  *Price, Williams & Russell*,  186 Cal. App. 3d 1324, 1331 (1986).  The only significant difference

23  between negligent misrepresentation and fraud is the element of scienter; negligent

---

[3] While plaintiff has complained about being required to submit to an independent medical examination, California law provides insurers the right to conduct medical examinations of insureds. *See* Cal. Ins. Code § 10350.10.  Pan-American's exercise of that right cannot support a claim of bad faith.  *See Cardiner v. Provident Life & Acc. Ins. Co.*, 158 F.Supp. 2d 1088, 1110 (C.D. Cal. 2001). While Ms. Mathews complains about having to drive to Palo Alto for an examination, Pan-American's decision to request an opinion from the head of Rehabilitation at Stanford University Hospital is plainly reasonable.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   misrepresentation requires only that the representation was made without reasonable ground for

2   believing it to be true. *See Horrell v. Santa Fe Tank & Tower Co.*, 117 Cal. App. 2d 114, 117

3   (1953); *see also Gagne v. Bertran*, 43 Cal. 2d 481, 487-89 (1954).  Here, there is no admissible

4   evidence of any such misrepresentation.

5        Plaintiff's fraud and negligent misrepresentation claims are purportedly based on

6   "representations contained in Defendants' advertising and in the Policies that Plaintiff would be paid

7   benefits timely and in full as provided by the Policies, that premiums would be waived during the

8   period of Plaintiff's disability, that premiums paid at the beginning of Plaintiff's disability would be

9   refunded, that Plaintiff would be permitted the rehabilitation benefit stated in the policy."  Evans

10  Decl., Exs. A (Complaint) at ¶¶ 30, 36 and D at p. 20.  As the evidence establishes, monthly

11  disability benefits have been (and continue to be) paid, and premiums have been (and continue to be)

12  refunded or waived through the duration of plaintiff's disability in accordance with the terms of her

13  Policies.  As to the Polices' rehabilitation provisions, the language clearly states that payment of

14  rehabilitation benefits are subject to Pan-American's approval of the insured's rehabilitation

15  program.  To the extent that plaintiff failed to read her policies, she cannot recover for fraud because

16  she cannot establish justifiable reliance on alleged false representations regarding coverage  --

17  plaintiff is bound by the clear and conspicuous limitations in the Policies. *Hadland v. NN Investors*

18  *Life Ins. Co.*, 24 Cal. App. 4th 1578, 1586 (1994).  Plaintiff was never promised automatic

19  entitlement to rehabilitation benefits under her Policies.  Not only has plaintiff failed to show any

20  evidence of actionable misrepresentation, she has failed to show any intent to deceive, justifiable

21  reliance, or resulting damage.  Plaintiff's fraud and negligent misrepresentation claims also fail as a

22  matter of law.

23       **D.    Plaintiff's Claim For Unfair Business Practices Fails.**

24       Plaintiff further asserts that Pan-American violated Business and Professions Code Section

25  17200 based on the same allegations set forth for her claims for breach of contract, bad faith and

26  fraud.  Section 17200 prohibits unlawful, unfair or fraudulent business acts or practices.  *See also*

27  *Rubin v. Green*, 4 Cal. 4th 1187, 1200 (1993).  A business practice is "unlawful" if it violates any

28  law.  *See AICCO, Inc. v. Insurance Co. of North America*, 90 Cal. App. 4th 579, 588–589 (2001).  A

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

business practice is "unfair" if "it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.*, 92 Cal. App. 4th 886, 894 (2001). A business practice is "fraudulent" if it is "likely to deceive." *Progressive West Ins. Co. v. Sup.Ct. (Preciado)*, 135 Cal. App. 4th 263, 284 (2005). The evidence simply does not support any unlawful, unfair, or fraudulent act or practice by Pan-American in the handling of plaintiff's claim under her Policies. Moreover, plaintiff has not cited any law violated by Pan-American which would constitute unlawful activity under Section 17200. There is no triable issue of material fact as to plaintiff's 17200 claim.

### E.     Plaintiff's Claim For Intentional Infliction Of Emotional Distress Fails.

In order to prevail on a claim for intentional infliction of emotional distress, a claimant must establish: "(1) outrageous conduct by the defendant; (2) the defendant's intention of causing severe or extreme emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation by the defendant's outrageous conduct." *Fletcher v. Western National Life Insurance Co.*, 10 Cal. App. 3d 376, 394 (1970); *see also Christensen v. Superior Court (Pasadena Crematorium)*, 54 Cal. 3d 868, 903 (1991). In other words, plaintiff must show that the acts by the defendant are "so extreme as to exceed all the bounds of that usually tolerated in a civilized community." *Schlauch v. Hartford Acc. & Indem. Co.*, 146 Cal. App. 3d 926, 936 (1983); *Ricard v. Pacific Indem. Co.*, 132 Cal. App. 3d 886, 895 (1982). There is a complete absence of evidence establishing any outrageous conduct or intent to cause plaintiff severe emotional distress. Nor has plaintiff demonstrated that she has suffered severe emotional distress resulting from Pan-American's handling of her claim under the Policies. Summary judgment should therefore be granted as to plaintiff's claim for intentional infliction of emotional distress.

### F.     Plaintiff's Claim For Negligent Infliction Of Emotional Distress Fails.

Plaintiff's claim for negligent infliction of emotional distress must also fail because there is no tort liability for "negligent breach of contract." *Benavides v. State Farm Gen. Ins. Co.*, 136 Cal. App. 4th 1241 (2006); *Butler-Rupp v. Lordeaux*, 134 Cal. App. 4th 1220, 1227-1228 (2005). Emotional distress is not an element of contract damages, and a negligent breach of contract cannot support a claim for emotional distress damages. *See Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

While tort damages may be recoverable for bad faith breach of the insurance contract, plaintiff cannot avoid the burden of proving the elements of a bad faith claim by falling back to a mere negligence theory.

To the extent any recovery is ever available for negligent infliction of emotional distress, it has only been permitted in three limited situations, none of which applies to this case: (1) negligence leading to a legitimate fear of one's own physical safety; *see Molien v. Kaiser Foundation Hospitals*, 27 Cal. 3d 916, 923 (1980) (husband claimed emotional distress where doctor misdiagnosed wife with syphilis); (2) negligence leading to a fear for the safety of others; *see Dillon v. Legg*, 68 Cal. 2d 728, 740 (1968) (mother claimed emotional distress after witnessing her child get hit and killed by negligent motorist), and (3) the so-called "direct victim" type cases or cases involving the negligent breach of a duty arising out of a preexisting relationship such as *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc*., 48 Cal. 3d 583, 590 (1989) (mother claimed emotional distress against psychotherapist who molested her child) and *Burgess v. Superior Ct.*, 2 Cal. 4th 1064, 1076 (1992) (mother claimed emotional distress against doctor where child was injured during delivery). Obviously, none of those circumstances applies here, so plaintiff's claim for negligent infliction of emotional distress must also fail.

### G.     Plaintiff's Claim For Punitive Damages Fails.

Just as plaintiff has not established any outrageous or arbitrary or unreasonable conduct by Pan-American, plaintiff also cannot set forth "clear and convincing" evidence to support a claim for punitive damages. *See* Cal. Civil Code 3294(a).  "To justify an award of punitive damages, the defendant must be guilty of oppression, fraud, or malice.  It must act with intent to vex, injure or annoy, or with a conscious disregard of plaintiff's rights.  Proof of a violation of the duty of good faith and fair dealing does not establish that defendant acted with the requisite intent to injure the plaintiff."  *Beck v. State Farm Mut. Auto. Ins. Co.*, 54 Cal. App. 3d 347, 355 (1976); *see also Stewart v. Truck Ins. Exchange*, 17 Cal. App. 4th 468, 483 (1993).  In *Beck*, the court held that even though the automobile insurer took an unreasonable position on the validity of a defense to coverage under the policy, it did not act with intent to harm him, or with malice or oppression, so no award of punitive damages was justified.  54 Cal. App. 3d at 356.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

> The mere carelessness or ignorance of the defendant does not justify the imposition of punitive damages.  Unhappily, as a society, we must tolerate without added retribution these all too common lapses in ourselves.  Punitive damages are proper only when the tortious conduct rises to levels of extreme indifference to the plaintiff's rights, a level which decent citizens should not have to tolerate.

*Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.*, 185 Cal. App. 3d 1149, 1154 (1986).  Furthermore, California law does not favor awards of punitive damages.  "[P]unitive damages constitute a windfall, create the anomaly of excessive compensation, and are therefore not favored in the law."  *Dumas v. Stocker*, 213 Cal. App. 3d 1262, 1266 (1989); *see also Beck*, 54 Cal. App. 3d at 355 ("The law does not favor punitive damages and they should be granted with the greatest caution").  Here, there is simply no evidence, clear and convincing or otherwise, indicating that Pan-American acted with oppression, fraud or malice.  Plaintiff's punitive damages claim fails.

## IV.    CONCLUSION.

There is no genuine issue of material fact as to plaintiff's claims against Pan-American.  The evidence establishes that Pan-American has complied with the terms of the Policies.  Plaintiff has been and continues to be paid all monthly disability benefits under her Policies, and Pan-American has waived or refunded and continues to waive or refund all premiums since plaintiff's date of disability.  Any clerical errors by Pan-American have not damaged plaintiff.  Moreover, Pan-American properly exercised its discretion conferred under the Policies when it denied rehabilitation benefits after plaintiff failed to submit the requested information for the company's review and approval.   For these reasons, all of plaintiff's claims fail as a matter of law and summary judgment, or alternatively, partial summary judgment in favor of Pan-American should be granted.

DATED:  April 29, 2008.

REED SMITH LLP

By____/s/ Thomas A. Evans_____
    Thomas A. Evans
    Eugenia S. Chern
    Attorneys for Defendant
    Pan-American Life Insurance Company

DOCSOAK-9906998.2-TEVANS-359830-60004