Thomas A. Evans (SBN 202841)
Email: tevans@reedsmith.com
Eugenia S. Chern (SBN 215092)
Email: echern@reedsmith.com
REED SMITH LLP
1999 Harrison Street, Suite 2400
Oakland, CA 94612-3572

**Mailing Address:**
P.O. Box 2084
Oakland, CA 94604-2084

Telephone:  +1 510 763 2000
Facsimile:  +1 510 273 8832

Attorneys for Defendant
Pan-American Life Insurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA MATHEWS,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>PAN-AMERICAN LIFE INSURANCE COMPANY,<br><br>　　　　Defendant. | No.: C 07-02757 SBA<br><br>**DECLARATION OF MICHAEL JONES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**<br><br>Date:　　June 10, 2008<br>Time:　　1:00 p.m.<br>Place:　　Ctrm 3, 3rd Floor<br><br>Honorable Saundra Brown Armstrong |

I, Michael Jones, declare as follows:

1.　I am employed as a Senior Claims Examiner for the Policy Benefits Department of Pan-American Life Insurance Company ("Pan-American"). I have personal knowledge of the contents of this Declaration and if called as a witness to testify in this matter, I could and would competently testify as set forth below.

2.　I have reviewed and am familiar with the contents of the file that contains documents which constitute Pan-American's business records pertaining to disability income insurance policy numbers 1285-764, 1257-753, and 1257-758 issued to Donna Mathews. Entries in this file were made on or about the dates of the events that are recorded therein and/or on or about the dates the

documents bear. These entries are made, and such documents are created or retained, in the ordinary course of business of Pan-American by persons who are regularly employed by Pan-American and whose duties are to make such entries and/or to create and/or retain such documents.

3. According to Pan-American's records, Pan-American issued Income Protection Policy number 1285-764 to plaintiff with an issue date of May 6, 1991. A true and correct copy of specimen Policy number 1285-764 is attached hereto as Exhibit A.

4. According to Pan-American's records, Pan-American issued Disability Income Policy number 1257-758 to plaintiff with an issue date of July 6, 2005. A true and correct copy of specimen Policy number 1257-758 is attached hereto as Exhibit B.

5. According to Pan-American's records, Pan-American received a Proof of Loss-Monthly Income Claimant's Statement dated January 19, 2006 and signed by plaintiff, and an Attending Physician's Statement (APS) signed by Dr. Andrew Alexander. On the Claimant's Statement, plaintiff stated that she became totally disabled as of December 14, 2005. According to Dr. Alexander's APS, plaintiff would recover sufficiently to perform the duties of her regular job on March 15, 2006. A true and correct copy of the Claimant's Statement and APS is attached hereto as Exhibit C.

6. According to Pan-American's records, Pan-American received an Occupation Description Form signed by plaintiff on or about February 1, 2006. A true and correct copy of the Occupation Description Form is attached hereto as Exhibit D.

7. Pan-American's records show that, on or about February 6, 2006, Elaine Bourg, Claims Associate for Pan-American, received a letter from plaintiff dated February 1, 2006, enclosing plaintiff's 2005 W-2 form and tax returns for the years 2003 and 2004, as requested. A true and correct copy of plaintiff's February 1, 2006 letter is attached hereto as Exhibit E.

8. On or about February 6, 2006, Pan-American also received a list of treating physicians from plaintiff, stating that she had been seen by Dr. Alexander, Dr. Steven Smith, Dr. Marko Bodor, Dr. Jaime Fitzgerald-McMullen, Dr. Chris Henderson, St. Helena Hospital, Wellspring Physical Therapy, and Santa Rosa Imaging Medical Center. A true and correct copy of the list is attached hereto as Exhibit F.

9. According to her Claimant's Statement, plaintiff became totally disabled on December 14, 2005. Therefore, the 60-day Elimination Period under Policy numbers 1285-764 and 1257-758 began to run on that date and ended on February 14, 2006. Once the Elimination Period expired, monthly benefits under these Policies became payable as of February 14, 2006. Because the initial APS indicated a disability of three months, Pan-American approved the claim for three months of benefits and paid monthly benefits to plaintiff in the amounts of $1700.00 and $500.00, respectively, on or about March 6, 2006.

10. The effective date of waiver of premium disability benefits for Policy numbers 1285-764 and 1257-758 was December 14, 2005, the date plaintiff claimed to become totally disabled. On March 13, 2006, I notified plaintiff that it had approved her application for waiver of premiums as to policy number 1285-764, effective December 14, 2005, and enclosed a check for refund of premiums in the amount of $114.14. A true and correct copy of my March 13, 2006 letter is attached hereto as Exhibit G.

11. On March 13, 2006, I wrote a letter to plaintiff notifying her that Pan-American had approved her application for waiver of premiums as to policy number 1257-758, effective December 14, 2005, and enclosed a check for refund of premiums in the amount of $88.40. A true and correct copy of my March 13, 2006 letter is attached hereto as Exhibit H.

12. Based on the list of treating physicians provided by plaintiff, Pan-American ordered plaintiff's medical records from St. Helena Hospital, Santa Rosa Imaging Medical Center, Wellspring Physical Therapy, Dr. Alexander, Dr. Bodor, and Dr. Smith in February and/or March 2006.

13. On or about April 3, 2006, Pan-American received a Supplementary Proof of Loss Monthly Income Claimant's Statement signed by plaintiff on or about March 10 or 29, 2006. Along with the Claimant's Statement, plaintiff submitted a narrative statement dated March 15, 2006, describing her November 19, 2005 accident, and another list of her treating physicians which included Dr. Smith, Dr. Fitzgerald-McMullen, Wellspring Physical Therapy, Dr. Alexander, Dr. Eldan Eichbaum, and Dr. Barry Brown. A true and correct copy of plaintiff's Supplementary Claimant's Statement, list of treating physicians and narrative statement is attached hereto as Exhibit

I.

14. On or about April 3, 2006, Pan-American also received an APS signed by Dr. Barry A. Brown on March 29, 2006. According to the APS, plaintiff's diagnosis was cervical stenosis and left rotator cuff repair. Dr. Brown stated that plaintiff's rotator cuff was unchanged and that her cervical stenosis had retrogressed. Dr. Brown concluded that plaintiff had physical impairment of "Class 4 – Moderate limitation of functional capacity; capable of clerical/administrative (sedentary*) activity." Dr. Brown concluded that plaintiff was totally disabled from her own occupation, but that she was not totally disabled from performing all other types of work. Dr. Brown expected plaintiff to recover sufficiently to perform the duties of her regular job within 3-6 months. A true and correct copy of the APS signed by Dr. Brown is attached hereto as Exhibit J.

15. Based on the updated list of treating physicians provided by plaintiff on or about April 3, 2006, Pan-American requested, received and reviewed plaintiff's medical records from Dr. Eichbaum and Dr. Brown.

16. Because Ms. Mathews was now claiming a more severe disability for a longer period of time, I decided to investigate her claim in more detail. In addition, from my experience in claims handling, I have learned that where a claimant changes their treating physicians and then sees multiple other health care providers, this raises concerns about the claim that may require additional investigation.

17. As part of the investigation of plaintiff's claim, I requested that Mitchell S. Nudelman, Chief Medical Officer of Medical Director Solutions, LLC review plaintiff's claim and medical records. Pan-American received Dr. Nudelman's report dated April 20, 2006. A true and correct copy of Dr. Nudelman's April 20, 2006 report is attached hereto as Exhibit K. I also requested a further Independent Medical Examination of Ms. Mathews, which was ordered. I also requested surveillance of Ms. Mathews as part of the investigation of her claim for additional benefits.

18. On or about May 17, 2006, I sent a letter to plaintiff enclosing refunds of premium withdrawals taken on April 12, 2006 for policy numbers 1257-758 and 1285-764. An amount of $499.20 was deducted to pay policy number 1257-758, of which $406.80 was refunded. An amount

of $652.71 was deducted to pay policy number 1285-764, of which $534.57 was refunded. Both policies are paid until June 6, 2006. This was due to an error in resetting the premium withdrawals to an "annual" rate, instead of a "monthly" rate. A true and correct copy of my May 17, 2006 letter and the enclosed checks is attached hereto as Exhibit L.

19. On or about July 12, 2006, I wrote a letter to plaintiff informing her that Pan-American was currently investigating her claim for benefits, and that it would it would pay monthly payments under policy numbers 1257-758 and 1285-764 under a reservation of rights, without waiving Pan-American's right to later contest coverage or deny the claim. A true and correct copy of my July 12, 2006 letter is attached hereto as Exhibit M.

20. On or about July 21, 2006, Pan-American received a letter from plaintiff stating that she wanted to apply for rehabilitation under the terms of her disability policy. A true and correct copy of plaintiff's July 21, 2006 letter is attached hereto as Exhibit N.

21. On or about August 3, 2006, I wrote to plaintiff acknowledging receipt of her July 21, 2006 letter. In my letter, I requested a copy of her rehabilitation plans including, "a detailed plan of treatment and estimated costs and estimated date of rehabilitation completion." A true and correct copy of my August 3, 2006 letter is attached hereto as Exhibit O.

22. On or about August 23, 2006, I received a letter from plaintiff stating, among other things, that she had been overcharged $964.28 in premiums and that Pan-American erroneously debited $1,189.61 from her bank account on April 17, 2006, causing her to incur two service charges of $4.00 each. Although this letter mentioned some schools, it did not include a detailed plan or any estimated costs. A true and correct copy of my August 23, 2006 letter is attached hereto as Exhibit P.

23. On or about August 25, 2006, I wrote a letter to plaintiff acknowledging receipt of, and responding to, her August 23, 2006 letter. In the letter, I informed plaintiff that Pan-American would not be extending benefits for rehabilitation. A true and correct copy of my August 25, 2006 letter and attachments is attached hereto as Exhibit Q.

24. On or about September 12, 2006, I discovered that plaintiff had been issued a third disability policy by Pan-American, Disability Income Policy number 1257-753. According to Pan-

-5-

1  American's records, Pan-American issued Policy number 1257-753 with an issue date of June 6, 2001. A true and correct copy of specimen Policy number 1257-753 is attached hereto as Exhibit R. Pan-American did not locate the Policy earlier because it was indexed under an incorrect social security number.

25. After discovering Policy Number 1257-753 on September 12, 2006, I sent a check to plaintiff dated September 13, 2006, in the amount of $2,000.00 for payment of monthly benefits for the period of February 14, 2006 through June 14, 2006. A true and correct copy of the September 13, 2006 check is attached hereto as Exhibit S.

26. On or about September 12, 2006, I also wrote a letter to plaintiff stating that Pan-American had evaluated her claim and approved the application for waiver of premium disability benefits as to Policy Number 1257-753, effective December 14, 2005. The letter enclosed a check representing refund of premiums in the amount of $301.60. I further informed plaintiff that premiums would be waived as long as she continued to be disabled within the meaning of the policy, and that Pan-American reserved the right to require evidence of her continued disability. A true and correct copy of my September 12, 2006 letter is attached hereto as Exhibit T.

27. On or about September 18, 2006, I received a letter from plaintiff requesting that I itemize my accounting of the $301.60 refund amount enclosed with my September 12, 2006 letter. A true and correct copy of plaintiff's September 18, 2006 letter is attached hereto as Exhibit U.

28. On or about September 19, 2006, I received a letter from Linda van der Veur of the Consumer Protection Division for the Napa County District Attorney's Office. A true and correct copy of Ms. Van Der Veer's September 19, 2006 letter is attached hereto as Exhibit V.

29. On or about September 22, 2006, I wrote a letter to plaintiff responding to her September 18, 2006 letter and providing an itemized accounting of the $301.60 refund amount as she had requested. A true and correct copy of my September 22, 2006 letter is attached hereto as Exhibit W.

30. On or about September 25, 2006, Jose Suquet of Pan-American received a letter from Darryl Tolliver of the California Department of Insurance (DOI), enclosing a Request for Assistance from plaintiff. A true and correct copy of the September 25, 2006 letter and plaintiff's Request for

Assistance is attached hereto as Exhibit X.

31. On or about October 3, 2006, I wrote to Ms. van der Veur responding to her September 19, 2006 letter. A true and correct copy of my October 3, 2006 letter is attached hereto as Exhibit Y.

32. According to Pan-American's records, Glenda Griffin of Pan-American's Customer Satisfaction Team, wrote to plaintiff on or about October 5, 2006 responding to the Request for Assistance she submitted to the DOI. A true and correct copy of Ms. Griffin's October 5, 2006 letter is attached hereto as Exhibit Z.

33. On or about November 2, 2006, I received a letter from plaintiff dated October 24, 2006, in response to my October 3, 2006 letter to Ms. van der Veur. A true and correct copy of plaintiff's October 24, 2006 letter is attached hereto as Exhibit AA.

34. On or about October 27, 2006, I wrote a letter to plaintiff enclosing refunds for premium payments plaintiff made after she was placed on disability in the amounts of $96.40 for policy number 1257-758, and $122.14 for policy number 1285-764. As stated in the letter, plaintiff had received total premium refunds in the amounts of $301.60 for policy number 1257-753, $884.99 for policy number 1285-764, and $680.00 for policy number 1257-758. A true and correct copy of my October 27, 2006 letter is attached hereto as Exhibit BB.

35. On or about November 15, 2006, I wrote a letter to plaintiff addressing the questions she raised in her October 24, 2006 letter. In my letter, I reminded plaintiff that I had requested copies of her bank statements in August 2006 evidencing the alleged overdraft bank charges she had incurred, and enclosed a copy of my August 2006 letter requesting the same. I also explained again the calculation of the premium reimbursements and the dating of the checks for benefits. A true and correct copy of my November 15, 2006 letter without attachments is attached hereto as Exhibit CC.

36. Pan-American's records include a report prepared by Elaine S. Date, M.D., Associate Professor and Head of the Division of Physical Medicine & Rehabilitation for the Department of Orthopedic Surgery at Stanford University School of Medicine, regarding her independent medical examination of plaintiff on November 15, 2006. I scheduled the examination with Dr. Date because I believed that she was the best physician to perform Ms. Mathews' examination. It typically takes

DECLARATION OF MICHAEL JONES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT

some time to schedule independent medical examinations. In addition, I was coordinating the scheduling of the examination with the surveillance of Ms. Mathews. Ms. Mathews' examination had originally been scheduled for October 16, 2006, but was re-scheduled to November 15, 2006 at Ms. Mathew's request. A true and correct copy of Dr. Date's report is attached hereto as Exhibit DD.

37. According to Pan-American's records, Ms. Griffin received a facsimile transmittal from John Balthazar, DOI Associate Compliance Officer, dated November 20, 2006, attaching a statement from plaintiff's bank records. A true and correct copy of the November 20, 2006 facsimile transmittal is attached hereto as Exhibit EE.

38. On or about November 30, 2006, I received a letter from plaintiff dated November 27, 2006. A true and correct copy of plaintiff's November 27, 2006 letter is attached hereto as Exhibit FF.

39. On or about December 8, 2006, I wrote a letter to plaintiff acknowledging receipt of, and responding to, plaintiff's November 27, 2006 letter. In the letter, I stated that Pan-American had responded in a timely and detailed fashion to her requests. I also explained again the rehabilitation provision in the policies and again informed plaintiff that Pan-American would not be entering into a rehabilitation agreement with plaintiff. A true and correct copy of my December 8, 2006 letter is attached hereto as Exhibit GG.

40. In December 2006, I requested and received plaintiff's recent medical records from May 2006 through December 2005 from Dr. Brown.

41. Pan-American has paid and continues to pay all monthly benefits owed to plaintiff under Policy numbers 1257-758, 1257-753, and 1285-764, since the expiration of the Elimination Period on February 14, 2006. Ms. Mathews' benefits have been brought up to date. A true and correct copy of the benefit checks in the amounts of $6,800 for Policy number 1285-764, $2000 for Policy Number 1257-753 and $2000 for Policy number 1257-758, along with spreadsheets detailing the check numbers, benefit periods and benefit amounts paid for each Policy, which were sent to Ms. Matthews is attached hereto as Exhibit HH. Although one explanation of benefits was sent with an incorrect date, this was not an attempt to deceive Ms. Mathews but a clerical error that has been

1 | corrected.

2 | 42.  Pan-American has refunded premiums paid by plaintiff on Policy numbers 1257-758, 1257-753, and 1285-764 since plaintiff's date of disability on December 14, 2005. Pan-American will continue to waive payment of premiums under the Policies as long as plaintiff continued to be disabled within the meaning of the Policies.

43.  Plaintiff never informed Pan-American that she was and is receiving rehabilitation benefits from the State of California, nor has she ever provided her rehabilitation plan or an estimate of costs.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on April 29, 2008 at New Orleans, Louisiana.

_____
MICHAEL JONES

DOCSOAK-9906372.4

DECLARATION OF MICHAEL JONES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT