Exhibit F

Steven Smith M.
Orthopedic
4706 Hoen Ave
Santa Rosa    1-9-06
      95405

707 575 3728

Silverado Pharmacy
1348 Lincoln Ave
Calistoga, CA 94515
707 942-5115

⟶

St. Helena Hospital
10 woodland Road    11-19-05
St. Helena, CA    94574

707 963 3611

Dr Alexander    11-28-05 (12-1-05?
913 Washington St    12-9-05
Calistoga, CA 94515    1-3-06

707 942-6233

Dr Bodor    12-14-05
980 Trancas    1-9-06
Napa, CA 94558

707 255-5454

Santa Rosa Imaging    12-16-05
    Mendocino Ave    1-3-06
Santa Rosa, CA

707

Dr McMullen (Fitzgerald)
1900 Cinnabar Ct
Calistoga, CA 94515

707 942-4388    11-28-05
at least 8 visits Dec.    ongoing

Dr Chris Henderson
2436 Foothill Blvd
Calistoga, CA 94515

707 942-1250

12/12
12/16
12/19
12/21
12/22
12/27
12/29
1/9/06

Wellspring Physical Therapy
2436 Foothill Blvd
Calistoga, CA 94515
707 942 8094
    12/22, 12/27, 12/29
    1/4/06, 1/9/06, 1/20/06
    1/23/06, 2/3/06

Exhibit G



Donna Dupell-Mathews
REDACTED
Calistoga, CA 94515

March 13, 2006

RE:  Policy # 1285-764

Dear Mrs. Dupell-Mathews:

We have evaluated the claim papers submitted and have approved the application for waiver of premium disability benefits effective December 14, 2005.

We are enclosing our check representing refund of premiums for a total of $114.14.

Future premiums will be waived as long as you continue to be disabled within the meaning of the disability agreement and the Company reserves the right to require evidence of your continued disability in accordance with the previsions thereof.  You will be advised when such evidence is desired.

We certainly hope your health will improve soon.

Sincerely

Michael Jones
Senior Claims Examiner

Pan American Life
Policy Benefits
P.O. Box 60219
New Orleans, LA 70160-0219

REDACTED

000056

ENDORSEMENT OF THIS CHECK MUST BE    A... RITING OF PAYEE OR PAYEES EXACTLY IN CONFORMIT    E NAME OR NAMES AS WRITTEN    30OOT

84—13
654    NO. 062034850    12

**PAN AMERICAN LIFE**

0012857640

PAY TO THE ORDER OF:

DONNA R DUPELL—MATHEWS
REDACTED
CALISTOGA CA 94515

MAR 1 3 2006

**AMOUNT**

$*********114.14**

**$114.14**

DATE
MAR 10, 2006

NOT VALID AFTER
90 DAYS OF ISSUE

BANK ONE
NEW ORLEANS, LA.

**NON NEGOTIABLE**

⑈062034850⑈ ⑆065400137⑈ 0110029518⑈

REDACTED

PAL 0085

Exhibit H



Donna Dupell-Mathews
REDACTED
Calistoga, CA 94515

March 13, 2006

**RE: Policy # 1257-7580**

Dear Mrs. Dupell-Mathews:

We have evaluated the claim papers submitted and have approved the application for waiver of premium disability benefits effective December 14, 2005.

We are enclosing our check representing refund of premiums for a total of $88.40.

Future premiums will be waived as long as you continue to be disabled within the meaning of the disability agreement and the Company reserves the right to require evidence of your continued disability in accordance with the previsions thereof. You will be advised when such evidence is desired.

We certainly hope your health will improve soon.

Sincerely

Michael Jones
Senior Claims Examiner

Pan American Life
Policy Benefits
P.O. Box 60219
New Orleans, LA 70160-0219

REDACTED

000050    ENDORSEMENT OF THIS CHECK MUST BE IN THE WRITING OF PAYEE OR PAYEES EXACTLY IN CONFORMITY WITH THE NAME OR NAMES AS WRITTEN    300OT 12

**PAN AMERICAN LIFE**

0012577580

No. 062034849

**AMOUNT**

$*********88.40**

**DATE**
MAR 10, 2006

NOT VALID AFTER
90 DAYS OF ISSUE

PAY TO THE ORDER OF:

DONNA R DUPELL—MATHEWS
REDACTED
CALISTOGA CA 94515

MAR 1 3 2006

$88.40

BANK ONE
NEW ORLEANS, LA.

**NON NEGOTIABLE**

⑆062034849⑆ ⑉065400137⑈ 0110029518⑆

**REDACTED**

PAL 0083

Exhibit I

**PAN AMERICAN LIFE**
*People you can trust for life®*

Mail To
Individual Health Claims
Pan-American Life Insurance Company
P.O. Box 60219
New Orleans, LA 70160

**SUPPLEMENTARY PROOF OF LOSS**
MONTHLY INCOME
CLAIMANT'S STATEMENT

**1. Insured's full name and address (Please Print)**
Donna Mathews
REDACTED

Home Telephone _____  Employer's Telephone 707 2572800

Policy No.(s) *not listed on your letter*
1285-764 & 1257-758

**2. Cause of Disability**
Fall from ladder

**3. Have you received medical attention since your last report?** 4-19 Yes ☒  No ☐  If "Yes," show:
(a) Name of Doctors: Wellspring DR. Alexander  Dr Fitzgerald (Chiro) AKA (McMullen)
Dr Smith, Dr. Eichbaum, Dr. Brown 3-29-06
(b) Date of Treatment: see attached list for dates

**4. Have you been hospitalized or undergone surgery since last report?** Yes ☐  No ☒  If "Yes," show:
(a) Name of Hospital
(b) Dates of Confinement
(c) Type of Surgery

**5. (a) What are your present complaints?**
Pain, burning, tenderness weakness

**(b) Briefly describe your present daily activities.**
Driving child to school, mild exercise,

**6. Date total disability began.**  Month December  Day 14  Year 2005

(a) Are you still totally disabled and unable to perform all the duties of your regular occupation? Yes ☒  No ☐
If "Yes," what occupational duties are you unable to perform? Scaling & polishing / dental prophylaxis in stagnant position w/ arms elevated & neck bent.

If "Yes," when do you expect to return to your regular occupation? Month _____ Day _____ Year 19 _____
What other restrictions (if any) do you have due to your disability? Driving, sitting, neck Restrictions
Pain in BACK & neck

If "No," when did you return to your regular occupation? Month _____ Day _____ Year 19 _____

(b) If partially disabled, when did you begin working at your regular occupation? Month _____ Day _____ Year 19 _____
(c) What important occupational duties have you been unable to perform during such partial disability?

(d) Are you now gainfully employed in other than your regular occupation? Yes ☐  No ☒
(e) If "Yes," date you commenced such duties? Month _____ Day _____ Year 19 _____
(f) Briefly describe the job and the nature of duties performed.

I authorize any doctor, clinic, hospital, pharmacy, organization or association, insurance company, or person that has any record or knowledge of me, to give such information to Pan-American Life Insurance Company or its representative. This includes (but is not limited to): driving records, drug and alcohol abuse history and treatment, and treatment for mental illness. A photocopy of this authorization shall be as valid as the original.

Date 3-10-06   Insured's Signature  Donna Mathews
3-29-06

**ATTENDING PHYSICIAN'S STATEMENT ON REVERSE SIDE SHOULD BE COMPLETED**
**ITEMIZED BILLS SHOULD BE ATTACHED TO SUPPORT ANY CLAIM FOR HOSPITAL, SURGICAL OR MEDICAL CARE BENEFITS.**

FRAUD STATEMENT REQUIRED BY SOME STATES. Any person who knowingly and with intent to injure, defraud or deceive any insurance company files a statement of claim containing any false, incomplete or misleading information is guilty of committing a crime.

Form 2978-CD Rev. 3-96

REDACTED

PAL 0533

RECEIVED APR 3 2006

Dr Steven Smith
Orthopedic Surgeon
4706 Hoen Ave.
Santa Rosa , Ca 95405
707 575-3728        2/10/2006


Dr. Jaime Fitzgerald-McMullen
1900 Cinnabar Ct
Calistoga, Ca 94515
707 942-438        1/20/2006,1/24/2006,3/06/2006



Training Wellspring Physical Therapy
 2436 Foothill Blvd.
Calistoga, Ca 94515
707 942-8094
1/19/2006
1/23/2006, 1/31/2006

| 2/03/2006 | 3/08/2006 | 3/20/2006 |
| 2/07/2006 | 3/14/2006 | 3/23/2006 |
| 2/20/2006 | 3/17/2006 | 3/28/2006 |

2/23/2006
2/28/2006
3/03/2006

Dr. Andrew Alexander
913 Washington St
Calistoga, CA 94515
707 942-6233        1/19/2006

Dr. Eldan Eichbaum
No. Bay Neurosurgical Associates
525 Doyle Park Drive #102
Santa Rosa , Ca 95405
707 523-1873        3/07/2006

Dr Barry Brown
1222 Pine Street
St. Helena, CA 94574
707 963-2711        3/29/2006

PAL 0532

March 15, 2006

On November 19, 2005 the ladder I was climbing on slipped and I fell approximately 6 feet. Only two young men from the cable company were at the house when I fell and they assisted me to the couch, retrieved ice, a and encouraged me to go to the hospital. My first major complaint was my ankle. As the ladder slipped I rotated off to the side so as not to become entangled in the ladder as well as the near-by step of the deck and I landed on my left ankle, left shoulder and hit my head on the left side.  I tried to protect my head by reaching with my hands but I didn't succeed.

The hospital took x-rays of my hands and ankle, and sent me home with ice and crutches. This occurred on a Saturday and I went to work limping on Monday. I only worked two days that week, and by Tuesday I had neck pain. By Friday I had increasing neck and back pain and by Saturday my neck pain was a 10 on a one to ten scale. This was the Thanksgiving holiday and I was unable to contact any health practitioners until the following week. I worked again Tuesday and Wednesday, but by Thursday I needed a substitute, Doctor Marvan who saw me, and recommended rest and massage.  I was not able to see my regular Doctor, Dr. Alexander, until Friday, December 9th and he recommended I have neurological testing done by Dr. Bodor. I worked two and one-half days that week, pursued acupuncture for relief and worked one and one-half days the following week. I was still in such pain that I had to take a leave of absence and I began Physical Therapy. An evaluation by Dr. Bodor on December 14th showed some neurological deficits because it was unclear to me whether the pain was from my neck or shoulder. He recommended an MRI of my neck. When I revisited Dr. Alexander on January 3rd, he recommended I see an orthopedic surgeon for my shoulder. I was unable to find one that didn't have a one month waiting period, so I asked my sister who works for a Dr. Sullivan in Santa Rosa for a recommendation and Dr. Sullivan asked me to lift my arms and I had such pain and weakness that he said just get an MRI today and he wrote the prescription and it was diagnosed the next day, a torn rotator cuff. Dr Sullivan recommended I see the orthopedic surgeon Dr Steven Smith and on January 9th Dr. Smith gave me a cortisone injection in my left shoulder that greatly relieved some of my pain and told me to see him again in four weeks for a surgical evaluation. I continued Physical Therapy and chiropractic but discontinued acupuncture at this time. One month later I saw Dr. Smith and he recommended I see a neurologist for my neck. I asked my general practitioner, Dr. Alexander, at this time for another prescription for physical therapy while I waited for the March 7th appointment with the neurologist Dr. Eichbaum. Dr Alexander said he did not want to recommend Physical Therapy until I saw the neurologist, but PT was my only relief along with vicodin so Dr. Smith had no problem fulfilling this request. It has now been one week since the neurologist told me that neck surgery would be the only definitive relief for my pain, that I had one or two bulging disks, and showed me on the MRI where there is no space around the spinal cord in one or two locations. He said I could do surgery now but most people wait until the pain is more severe than I now experience. The pain and burning in my forearms upon awakening increases during the day, depending on the length of time I sit, and if I bend my neck forward for too long. This is the exact position in which I must practice Dental Hygiene. Dr Eichbaum recommended I take breaks every 30 to 60 minutes, but

Exhibit J



**PAN AMERICAN LIFE**
*People you can trust for life*

**INDIVIDUAL HEALTH CLAIMS**
**PAN-AMERICAN LIFE INSURANCE COMPANY**
P.O. Box 60219
NEW ORLEANS, LA 70160

**RECEIVED APR 3 2006**

**ATTENDING PHYSICIAN'S STATEMENT**
The Patient is responsible for the completion of this form
without expense to the Company.
*Space is available on the reverse side if you wish to amplify your answers.

---

Name of Patient  _Donna Mathews_  Phone ~~REDACTED~~     Date of Birth  ~~REDACTED~~  / 1953
                                                                              Mo.    Day    Year

Employer Name _Brown's Valley Rental_  Phone _707 257 2800_  Policy No. _____

## 1. HISTORY

(a) When did symptoms first appear or accident happen? ............. Mo. _11_  Day _19_  20 _06_

(b) Date patient ceased work because of disability ....... Mo. _12_  Day _14_  ~~20~~ _2005_

(c) Has patient ever had same or similar condition? ..... Yes ☐ No ☐ If "Yes" state when and describe

(d) Is condition due to injury or sickness arising out of patient's employment? Yes ☐ No ☐ Unknown ☐

(e) Names and addresses of other treating physicians _D.R. Steven Smith_ _DR Eichbaum_ #
_4706 Hoen, Santa Rosa_ _525 Doyle Park Dr. 102_
_95405_ _Santa Rosa CA_
_95405_

(f) Have you ever treated patient prior to this illness? (If so, for what and when?)

## 2. DIAGNOSIS (including any complication)

(a) Date of last examination ............. Mo. _3_  Day _29_  2006
                                                            19 ___

(b) Diagnosis (including any complications) _CERVICAL STENOSIS; (R) ROTATOR CUFF REPAIR_

(c) Subjective symptoms _PAIN, BOTH U.E.'s_

(d) Objective findings (including current X-rays, EKG's, Laboratory Data and any clinical findings)
_MRI CONFIRMS DISC DISEASE AND STENOSIS_

## 3. DATES OF TREATMENT

(a) Date of first visit ...................... Mo. _____  Day _____  19 ___

(b) Date of last visit ...................... Mo. _____  Day _____  19 ___

(c) Frequency ............................. Weekly ☑ Monthly ☐ Other (Specify) ☐ _____

## 4. NATURE OF TREATMENT (Including Surgery and medications prescribed, if any)
_PHYSICAL THERAPY; MEDICATIONS_

## 5. PROGRESS

_ROTATOR CUFF_

(a) Has patient .......................... Recovered? ☐ Improved? ☑ Unchanged? ☑ Retrogressed? ☐
                                                                         _↳ CERVICAL STENOSIS_

(b) If recovered, date able to resume work ......... ___ / ___ / ___
                                                            Mo.  Day  Year

(c) Is patient ............................. Ambulatory? ☑  House Confined? ☐
                                                Bed Confined? ☐  Hospital Confined? ☐

(d) Has patient been hospital confined? Yes ☐ No ☑ If "Yes", give Name and Address of Hospital _____
_____ Confined from _____ Through _____

## 6. CARDIAC (If Applicable)

(a) Functional capacity ......... Class 1 (No limitation) ☐  Class 2 (Slight limitation) ☑
    (American Heart Ass'n)  Class 3 (Marked limitations) ☐  Class 4 (Complete limitation) ☐

(b) Blood Pressure (last visit) .......... _120_ / _68_
                                          SYSTOLIC / DIASTOLIC

## REDACTED

Form 2978 APS

**7. PHYSICAL IMPAIRMENT** (*as defined in Federal Dictionary of Occupation Titles)

☐ Class 1 - No limitation of functional capacity; capable of heavy work*  No restrictions. (0-10%)
☐ Class 2 - Medium manual activity*  (15-30%)
☐ Class 3 - Slight limitation of functional capacity; capable of light work*  (35-55%0)
☒ Class 4 - Moderate limitation of functional capacity; capable of clerical/administrative (sedentary*) activity. (60-70%)
☐ Class 5 - Severe limitation of functional capacity; incapable of minimal (sedentary*) activity (75-100%)
☐ Remarks:

**8. MENTAL/NERVOUS IMPAIRMENT(if applicable)**

(a)  Please define "stress" as it applies to this claimant.

(b)  What stress and problems in interpersonal relation has claimant had on job?

☒ Class 1 - Patient is able to function under stress and engage in interpersonal relations (no limitations)
☐ Class 2 - Patient is able to function in most stress situations and engage in most interpersonal relations (slight limitations)
☐ Class 3 - Patient is able to engage in only limited stress situations and engage in only limited interpersonal relations (moderate limitations)
☐ Class 4 - Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitations)
☐ Class 5 - Patient has significant loss of psychological, physiological, personal and social adjustment (severe limitation)
☐ Remarks:

Do you believe the patient is compentent to endorse checks and direct the use of the proceeds thereof?  Yes ☒  No ☐

**9. PROGNOSIS**

(a)  Is patient now totally disabled from performing HIS/HER REGULAR JOB? . . . . . . . . . . . . .  Yes ☒  No ☐
(b)  Is patient now totally disabled from performing ALL OTHER TYPES OF WORK? . . . . . . . . . .  Yes ☐  No ☒
(c)  Do you expect any significant improvement in the future? . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Yes ☒  No ☐

(1)  If yes, when will patient recover sufficiently to perform the duties of:

(a)  HIS/HER REGULAR JOB ___/___/___          1 Mos. ☐    1-3 Mos. ☐
Mo.    Day    Yr.                              3-6 Mos. ☒   Never ☐

(b)  ANY OTHER TYPE OF WORK ___/___/___      1 Mos. ☐    1-3 Mos. ☐
Mo.    Day    Yr.                              3-6 Mos. ☐   Never ☐

(2)  If no, please explain . . . . . . . . . . .

**10. REHABILITATION**

(a)  Is patient a suitable candidate for rehabilitation? (i.e., cardiopulmonary program, speech therapy, ect.          Yes ☒  No ☐

(b)  Can present job be modified to allow for handling with impairment?          Yes ☐  No ☒

|  | PATIENT'S JOB | ANY OTHER WORK |
|---|---|---|

(c)  When could trial employment ___/___/___  Full time ☐          ___/___/___  Full-time ☐
commence . . .          Mo.    Day    Yr.                    Mo.    Day    Yr.

(d)  Would vocational counseling and/or retraining be recommended? POSSIBLY ___          Yes ☐  No ☐

**11. REMARKS**

Barry A. Brown  MD                    707 963-2711
Name (Attending Physician) Print          Degree          Telephone

1222  PINES  ST  NELENA  CALIF          94574
Street Address          City or Town          State or Province          Zip Code

Barry A Brown MD                    3/24/06
Signature          Date

PAL 0524

Exhibit K

*Medical Director Solutions, L.L.C.*

April 20, 2006

**Received**

APR 2 5 2006

**Policy Benefits
Division**

Mr. Michael Jones
Senior Claim Examiner
Pan American Life
PO Box 60219
New Orleans, LA 70160-0219

RE: Donna Mathews
Client Ref. #: 1257-758 / 1285-764
MDS file #: D-02266A-3989

Dear Mr. Jones:

After careful consideration of the medical records submitted for review, and consultation with a Board Certified Orthopedic Surgeon, it is my opinion within reasonable medical certainty at this time that although the claimant may have a functional impairment that could preclude her from performing her own occupation, at this time there is not sufficient objective medical data to arrive a that conclusion. If she does have such impairment, with appropriate treatment the impairment may well not be permanent.

The rationale for this opinion provided by the consultant Orthopedic Surgeon is in italics below and is as follows:

*Per your request I have carefully reviewed the file submitted on the above referenced claimant, who is a 52 year-old right hand dominant dental hygienist who fell from a ladder on 11-19-05. She asserts that she injured the left shoulder, and an inability to work since 12-15-05.*

*The file documents objectively the presence of two specific diagnoses, which are used to substantiate the claim: left rotator cuff tear, and multilevel cervical spondylosis with stenosis. The latter has been present for several years, while the former is presumed to be related to the fall.*

*Claimant has seen two physicians appropriate to her conditions, and their notes are included in the file, being Dr. Bodor (PM&R) and Dr. Smith (Orthopedics). There is reference to a consult with Dr. Eichbaum (Neurosurgeon), but that is not in the file. There is a statement from claimant herself, dated 3-15-06 detailing the impact of symptoms on ability to work. There is an APS from dated 3-29-06 from Dr. Brown (Family Medicine), which I must discount, as he is not a qualified specialist in the areas of involvement.*

*577 Seminole Drive
Marietta, Georgia 30060
(770) 499-0398*

**PAL 0363**

*Medical Director Solutions, L.L.C.*

*There is one other APS form of unclear date and illegible signature, for which reasons I would likewise find this unacceptable documentation. An APS form with these diagnoses should be from either Dr. Bodor or Dr. Smith. Therefore, in essence we have only self-reported inability to work without appropriate specialty physician backup.*

*Although claimant may well have significant symptoms that interfere with or inhibit work, as she states for the sitting with neck forward position, there are some troubling aspects to this case. For example, it is unclear how a left shoulder problem renders a right hand dominant hygienist totally unable to work. Some objective medical evidence (FCE) or a statement from Dr. Bodor or Dr. Smith would be necessary as a good start.*

*The cervical spine issue also needs some clarification: this has been a chronic problem, treated in the past by Dr. Bodor. The MRI documents progression of the problem over time, yet presumably she had been working with it up until the accident and beyond, which would not in and of itself produced the changes noted. She has cord compression at two levels, yet no neurosurgeon report is provided. I would be urgently concerned if this were my neck.*

*The specific queries posed are answered as follows:*

1. **Were claimant's activities restricted/limited since the onset of condition...and to what extent?**

   *Probably so, but the extent cannot be determined objectively. Please see comments above.*

2. **Do objective findings support the presence of an impairment?**

   *Yes. But again, the extent of such impairment is not known from these records.*

   **What are the medical restrictions/limitations?**

   *As explained above, due to the lack of necessary medical information, this cannot be determined from the file. Generically, for the shoulder it would involve avoiding placing the arm in space away from the body, and for the neck avoiding rotation to the right or left, or extension of the neck.*

*577 Seminole Drive*
*Marietta, Georgia  30060*
*(770) 499-0398*

PAL 0364

## Medical Director Solutions, L.L.C.

3. *Do the restrictions/limitations effect claimant's ability to perform her occupation, and how?*

   *Again generically speaking, they might, but see discussion above.*

4. *Do the objective medical findings support claimant's assertion of inability to perform the physical demands of her occupation?*

   *No. See above discussion.*

4. *Are restrictions/limitations noted on the APS reasonable and consistent with medical findings?*

   *Again, please see above discussion.*

5. *If there are restrictions/limitations, are they temporary or permanent?*

   *Again generically, it depends on the progress of the underlying condition. Will the shoulder need surgery? Will the neck need surgery? The prognosis for both would be good, so even if there are r/l's, I would not think they would be permanent.*

6. *If current therapy is not optimal for return to work ASAP, please advise re: treatment/testing.*

   *This cannot be answered without knowing the treatment plan of Dr. Smith and Dr. Eichbaum based on current date findings. I think all the diagnostic work has been done; the last visit with Dr. Smith was on 2-10-06, so we need an update, which includes his proposal for treatment and projected RTW date, and the same from Dr. Eichbaum or some other spine surgeon.*

7. *Are claimant's subjective complaints consistent with objective medical evidence?*

   *Yes, her symptoms could certainly be consistent with the objective findings. Is there evidence of malingering, symptom magnification or secondary gain? No, although one must always be alert on the secondary gain issue, especially if claimant declines to undergo treatment that would be curative or normally expected to allow her sufficient improvement so as to be able to return to work.*

### 577 Seminole Drive
### Marietta, Georgia  30060
### (770) 499-0398

PAL 0365

*Medical Director Solutions, L.L.C.*

9. ***Has claimant reached MMI?***

*Unknown.  Need current data.  See above discussion.*

Thank you for referring this case to me.  If there are any questions and/or additional information that you may have, please feel free to contact me or submit it for re-review.

Sincerely,

Mitchell S. Nudelman, MD, JD, FCLM
Chief Medical Officer

*577 Seminole Drive*
*Marietta, Georgia  30060*
*(770) 499-0398*

Page 4 of 4

PAL 0366

Exhibit L



May 17, 2006

Donna Mathews
REDACTED
Calistoga CA 94515

Re:    Policy # 1257-758 & # 1285-764
       Claim # 06-1007   & # 06-1005

Dear Ms. Mathews:

Please find enclosed refunds for premium withdrawals taken on April 12, 2006 for policies # 1257-758 and # 1285-764. These withdrawals were made at the annual billing rate for your policies instead of the monthly billing rate.

An amount of $499.20 was deducted to pay policy # 1257-758. The refund amount will be $406.80. The policy is now paid to June 6, 2006. Your monthly premium rate is $46.20.

An amount of $652.71 was deducted to pay policy # 1285-764. The refund amount will be $534.57. The policy is now paid to June 6, 2006. Your monthly premium rate is $59.07.

Sincerely,


Michael Jones
Senior Claim Examiner
Pan American Life
P.O. Box 60219
New Orleans, LA 70160-0219


REDACTED

ENDORSEMENT OF THIS CHECK MUST BE  NDW..  ING OF PAYEE OR PAYEES EXACTLY IN CONFORMIT  H T  ME OR NAMES AS WRITTEN 300OT 12

**PAN AMERICAN LIFE**

0012577580

04–13
654

No.062040332

| AMOUNT |
| --- |
| $*******406.80** |

PAY TO THE ORDER OF: JC

**DONNA R DUPELL—MATHEWS**
REDACTED
**CALISTOGA CA 94515**

MAY 1 7 2006

**$406.80**

DOLLAR FOUR ZERO SIX PER CENT ZERO

DATE
MAY 16 ,2006

NOT VALID AFTER
90 DAYS OF ISSUE

BANK ONE
NEW ORLEANS, LA.

**NON NEGOTIABLE**

⑈062040332⑈ ⑆065400137⑉ 0110029518⑈

REDACTED

PAL 0087

000064  ENDORSEMENT OF THIS CHECK MUST BE    TING OF PAYEE OR PAYEES EXACTLY IN CONFORMIT    E NAME OR NAMES AS WRITTEN    300OT
12

**PAN AMERICAN LIFE**    0012857640

84—13
654    No. 062040333

**AMOUNT**

$ *********534.57**

**PAY TO THE ORDER OF:**    JC

DONNA R DUPELL—MATHEWS
REDACTED
CALISTOGA CA 94515    MAY 1 7 2006



**$534.57**

DATE
MAY 16 ,2006

NOT VALID AFTER
90 DAYS OF ISSUE

BANK ONE
NEW ORLEANS, LA.    **NON NEGOTIABLE**

⑈062040333⑈ ⑈065400137⑈ 0110029518⑈

**REDACTED**

Exhibit M



Michael Jones
 Individual Administration
P.O. BOX 60219
New Orleans, LA 70160-0219

July 12, 2006

**Donna Mathews**
REDACTED
**Calistoga, CA 94515**

RE: Pan American Life Insurance Company     Policy No. 1257-758 & 1285-764
      Claim No. 06-1005 & 06-1007:  Reservation of Rights

Dear Ms. Mathews,

Pan American Life Insurance Company has received a claim for Benefits under Policy No. 1257-758 and 1285-764 issued to Donna Mathews. This is a reservation of rights letter. We are currently investigating your claim for benefits. While we are investigating our claim, we will pay the monthly payments provided by your policy under a reservation of rights, without any waiver of our rights to later contest coverage and deny the claims.

Your policy provides that if a claim occurs within the first two years from the effective date, the company has a right to investigate the representations made in the application for insurance. Should we determine that no benefits are payable under your policy, whether because of a pre-existing condition, a misrepresentation in the application, or because no coverage exists for the claim you are making or otherwise, we will have the right to suspend making payments and to seek reimbursement from the beneficiary or the insured of sums paid under the policy. Additionally, we shall have the right, but not the obligation, to seek a judgment declaring that no benefits are payable under the policy or to seek a declaration by the court of the rights and obligations of the parties.

During the pendency of our investigation, you must cooperate with us fully and provide to us, in a timely manner, information requested of you. Failure to do so may result in our suspending payments under this reservation of rights. Should you have any additional facts, which you believe we should consider in determining coverage, please provide us with that information as soon as possible.

We reserve the right to amend this reservation of rights at any time.

Sincerely,

Michael Jones
Senior Claims Examiner

REDACTED

Exhibit N

FROM :                          FAX NO. :                        Jul. 21 2006 04:38PM P1

July, 21, 2006

Pan American
Individual Claims
Box 60219
New Orleans, LA 70160

Re: Disability Policy No. 1257-758 & 1285-764

Dear Sirs:

I would like to apply for Rehabilitation under the terms of my Disability Insurance
Policy, which I have held for over 15 years. I fell off a ladder November 19, 2005,
injuring my shoulder and neck. The continuing issues with my neck make it impossible to
practice Dental Hygiene, my vocation for the past thirty years. I have enrolled in school
already and am presently taking physiology. I am enrolled in the fall for Anatomy and
will then be eligible to apply to nursing schools within driving distance. Two schools are
private with shorter waiting lists, but those details are to be addressed after I pass this
summer Physiology course. In the meantime, I am doing all I can, as quickly as possible,
to make myself eligible to reenter the work force in a productive manner. I will need the
help of my policy to pay living expenses and schooling costs. I would ask you to please
evaluate this in a timely manner to facilitate my transition into schooling.

Thank you for your help.

Sincerely,

Donna Mathews, RDH, EMT

PAL 0355

Exhibit O



PAN
AMERICAN
LIFE

Michael Jones
 Individual Administration
P.O. BOX 60219
New Orleans, LA 70160-0219

August 3, 2006

Donna Mathews
REDACTED

Calistoga, CA 94515

Re:    Policy # 1257-758 & 1285-764

Dear Ms. Mathews,

This letter is to acknowledge receipt of your letter dated July 21, 2006 in which you state your desire to apply for rehabilitation under the terms of your Disability Insurance Policy.  At this time we are requesting a copy of your rehabilitation plans including: a detailed plan of treatment and estimated costs and estimated date of rehabilitation completion.

Please note this communication is not a pledge or promise of payment. As the policy states: "We will pay for a rehabilitation program if we approve it in advance. The extent of our payment will be what we state in our written approval. We will not pay for any rehabilitation expenses covered by another source. This payment will have no effect on any other benefit of this policy." Thank you for allowing Pan American Life to serve your needs.

Sincerely,

Michael Jones
Senior Claim Examiner
Pan American Life
P.O. Box 60219
New Orleans, LA 70160-0219

REDACTED

PAL 0354

Exhibit P

August 23, 2006


Michael Jones
Senior Claims Examiner
Pan American Life
P.O. Box 60219
New Orleans, LA 70160-0219


Re: Policy # 1257-758 & 1285-764


Dear Mr. Jones:

Thank you for your prompt reply regarding my rehabilitation. I will address my plans for rehabilitation after I discuss the issues that are becoming increasingly complicated due to your accounting practices, including payments due to me by your company. My hope is that this will not require intervention by the Department of Insurance, but because my mortgage responsibilities do not follow the flexible practices of your insurance company payments, I will be compelled to submit a request in September if this is not resolved.

First, I am not sure why you failed to mention in your letter of May 17 the amount of $1189.61 that was deducted from my account, when you stated that the amounts of $499.20 and $652.71, respectively, were deducted. These did not amount to the total deducted of $1189.61. This $1189.61 was deducted on 4-17-06 without warning or permission, since the agreement of automatic payments was on a monthly basis only. The reimbursed amounts $406.80 and $534.57 not only did not include 2 month's premiums totaling $210.54 but also the amount of $37.70 that has continued to be deducted monthly until this last period ending 8-16-06.

When I purchased my policy, I understood that it guaranteed the protection of my income of between $3000 to $4,000 per month. The policy was even recently reviewed I thought, to evaluate and protect my income. Your recent letter insinuated that it was a new policy. Therefore, I would like to formally state here that I do not accept the amount you distributed for February and March of $1,700 and $500, but rather would like to have a thorough evaluation into the amount awarded to me by the second payment of $1,700 and $1,300, before the partial payment received just this week. (This is also a good time to note that after the first payments issued in March, all receipts have left the date field blank.)

PAL 0345

As of this date, my records show the full accounting to be as stated here:

Payments to Pan American:

| Date | Amount | |
|---|---|---|
| 12-20-2005 | $138.97 | |
| 12-23-2005 | $94.77 | |
| 1-18-2006 | $138.97 | |
| 2-15-2006 | $138.97 | |
| 3-15-2006 | $37.70 | |
| 4-17-2006 | $1,189.61 | |
| 5-17-2006 | $37.70 | |
| 6-15-2006 | $37.70 | |
| 6-26-2006 | $46.20 | Check #7046 |
| 6-26-2006 | $59.07 | Check #7407 |
| 7-10-2006 | $46.20 | Bank Check#8083 |
| 7-10-2006 | $59.07 | Bank Check#8084 |
| 7-17-2006 | $37.70 | |
| 8-16-2006 | $37.70 | |

There are also two service charges of $4.00 each. All of these were withdrawn from Mendo Lake Credit Union except the four noted above, which were from Bank of America. The error of subtracting an entire year's premium without notice overdrew my account and this affected other payees as well. I will make one more verbal attempt with your company to stop these withdrawals and then I will contact the bank to stop your company from deducting payments from my Mendo Lake account. Elaine informed me that the premium department of your company does not have communication with your claims department and I have become the victim with these bounced checks.

TOTAL: $ $2108.33

Reimbursements to date for premium charges since qualifying for disability:

$406.80
$534.57
$114.14
$88.40

TOTAL       $1143.91

DIFFERENCE: $964.28

This is the amount you still owe me for overcharged premiums alone.

PAL 0346

The check that was distributed (again without a date) in the middle of August for the period of April to May was for $1,700, less the $500.00 additional benefit you now claim *is* correct, because you claim I owe you. I hope I do not have to hire a lawyer to validate the second month's payment. What you claim as an overpayment, I believe should finally be the correct payment.

To date then, I have received one month's benefit of $2,200 for February that was too low for the salary protection indicated by your company. The second month's payment of $3,000 for March more accurately represented my monthly income. The April payment of $1,700 just received this week (no date) was once again far too low. My disability began December 14, 2005, so including the sixty day waiting period I was entitled to full benefit compensation beginning February 14, 2006. This has not happened.

As you can imagine, dealing with a severe disability such as this one creates enormous stress. I am no less saddled with financial commitments than before but I am no longer able to work in my chosen profession of over thirty years that provided me with an adequate income. I want to be a productive citizen once again and am therefore pursuing a career change that will allow me to do this. Your insurance policy is the bridge that will allow me the necessary funding to get there. Anticipating a possible scenario such as this was the primary motivation for my purchasing your company's coverage in the first place. Career retraining for me cannot possibly happen without consistency on your part to cover my ongoing living expenses as well as tuition, books and other student expenses. The program I am attempting is a rigorous one, and I must have these issues settled so that I devote my full concentration to performing well.

As for my rehabilitation plans, I previously began working on a Bachelor's Degree but realized it would be of no benefit to my scope of practice, pay scale or work setting. Now, all that is changed. For me to work as closely with patients in the diagnosis, treatment planning and patient care in medicine as I did in dentistry, I will have to earn at the least a Bachelor's Degree, but I am aiming for Nurse Practitioner certification. This can begin at Santa Rosa Junior College, Napa Valley Junior College, Pacific Union College, or Sonoma State University. I am currently enrolled for fall, beginning today, in Anatomy at Santa Rosa J.C. I finished Physiology over the summer and will be eligible to apply to the Nursing Program at Santa Rosa in October of this year for the spring and fall of 2007. I will also pursue the application processes for the other schools. The first step is a two year program, and the possibilities are many to make the next step to Nurse Practitioner, but it will most likely be an additional 2 years. A Nurse Practitioner certification will allow me greater flexibility in my work setting and be the least detrimental to my disability. This will provide me with more options in returning to the work force.

PAL 0347

I hope you understand the importance of your policy protection in allowing me to meet my academic goals. I look forward to resolving these accounting problems as soon as possible.

Sincerely,

Donna Mathews, RDH