Exhibit A

1  MICHAEL E. KINNEY
   Bar No. 77018
2  Law Office of Michael E. Kinney
   438 First St.
3  Fourth Floor
   Santa Rosa, CA  95401
4  (707) 527-4141

5  Attorney for Plaintiff
   DONNA MATHEWS  DELAY REDUCTION CASE
6

7

**FILED**

APR 19 2007

Clerk of the Napa Superior Court
By: M. Borowski
Deputy

CASE MANAGEMENT CONFERENCE
DATE: 9-20-07
TIME: 8:30am        A
PLACE: Courtroom
825 Brown Street, Napa CA  94559

8              SUPERIOR COURT OF CALIFORNIA

9                   COUNTY OF NAPA

10

11  DONNA MATHEWS,                    No. **26-37498**

12          Plaintiff,               COMPLAINT FOR BREACH OF
                                     CONTRACT, BREACH OF THE
13  vs.                              COVENANT OF GOOD FAITH
                                     AND FAIR DEALING, FRAUD,
14                                   NEGLIGENT
    PAN AMERICAN LIFE INSURANCE      MISREPRESENTATION,
15  COMPANY; and DOE 1 through Doe 20, INTENTIONAL INFLICTION OF
    Inclusive,                       EMOTIONAL DISTRESS, UNFAIR
16                                   BUSINESS PRACTICES
            Defendants.
17  _____/ *UNLIMITED CIVIL CASE*

18          COME NOW Plaintiff DONNA MATHEWS and complains and alleges as follows:

19

20                      GENERAL ALLEGATIONS

21          1.      Plaintiff DONNA MATHEWS is and at all times relevant hereto was a

22  resident of the County of Napa, State of California.

23          2.      Plaintiff is informed and believes and thereon alleges that Defendant PAN

24  AMERICAN LIFE INSURANCE COMPANY is, and at all times relevant hereto was, a

25  corporation duly authorized to do business, and doing business as an insurance company in the

26  State of California.

27          3.      The true names and capacities, whether individual, corporate, associate or

    Received otherwise of Defendants Doe 1 through Doe 20, inclusive, are unknown to Plaintiff, who therefore

1  sues said Defendants by such fictitious names.  Plaintiff will amend this Complaint to show their

2  true names and capacities when ascertained.  Plaintiff is informed and believes and thereon alleges

3  that said Defendants, and each of them, were in some way responsible for the harm caused to

4  Plaintiff as alleged in this Complaint.

5          4.          Plaintiff is informed and believes and thereon alleges that each of the

6  Defendants herein was at all times relevant hereto the agent, employee or representative of the

7  remaining Defendants and was acting at least in part within the course and scope of such

8  relationship.

9          5.          In or about May 1991, at Napa County, California, Plaintiff purchased a

10  long term disability insurance policy from Defendants, designated by Defendants as Policy No.

11  0012857640.  Between May 1991 and November 2005, Plaintiff purchased two additional long

12  term disability insurance policies from Defendants, designated by Defendants as Policy No.

13  0012577580 and Policy No. 1257573.  The three long term disability policies are hereinafter

14  collectively designated as "the Policies."  This Policies, by their terms, purported to provide long

15  term disability insurance benefits, including monthly benefit payments and additional funds for the

16  vocational rehabilitation of the policy holder.

17          6.          Plaintiff authorized Defendants to make withdrawals from Plaintiff's bank

18  account monthly in the amount of the monthly premiums for the Policies.  Defendants made such

19  monthly withdrawals.  All premiums on the Policies were paid up to the date of Plaintiff's

20  disability, and the Policies have remained in effect at all times relevant hereto.

21          7.          In November 2005, Plaintiff fell off a ladder and was injured.  Plaintiff

22  suffered a shoulder injury which rendered her disabled from her regular job as a dental hygienist.

23  Defendants have determined that the date of the inception of Plaintiff's disability is December 14,

24  2005.  Plaintiff has been continuously disabled since December 2005, and remains disabled at this

25  time.

26          8.          Plaintiff provided Defendants with prompt notice of her injury and

27  disability.

28          9.          The Policies provide for a waiver of premium payments during the

2

1  policyholder's disability, but that premiums must be paid during the first ninety days of disability.

2  The Policies further provide that Defendants "will refund any premiums paid during the first ninety

3  days of disability, if premiums are waived."  Following Plaintiff's disability, Defendants continued

4  to withdraw premiums from Plaintiff's account, but refused, and continue to refuse, to refund the

5  full amount of premiums paid during the first ninety days of Plaintiff's disability, although Plaintiff

6  requested a full refund.

7          10.        On or about March 15, 2006, without first contacting Plaintiff or

8  Plaintiff's employer or otherwise performing a reasonable investigation as to whether Plaintiff was

9  still disabled or had returned to work, Defendants unilaterally stopped paying benefits to Plaintiff.

10  Plaintiff had not returned to work and was still disabled, as Defendants knew or reasonably should

11  have known.

12          11.        On or about April 17, 2006, without prior notice to Plaintiff, Defendants

13  improperly withdrew the sum of $1,189.61 from Plaintiff's bank account.  Plaintiff is informed

14  and believes that Defendants claim that this sum represents an annual premium for two of the

15  policies and a monthly premium for the third policy.  At no time has Plaintiff ever authorized

16  Defendants to withdraw more than a monthly premium, and Defendants have never been

17  authorized to withdraw an annual premium from Plaintiff's account.  On or about April 17, 2006,

18  Plaintiff was disabled and had been disabled for more that ninety days.  Under the terms of the

19  Policies, premiums were waived and Defendants were not entitled to any premium payment

20  whatsoever at that time.

21          12.        In March 2006, Defendants paid Plaintiff benefits on Policy No.

22  0012857640 and on Policy No. 0012577580, but did not pay benefits due under the third policy,

23  although such benefits were clearly due and owing to Plaintiff.  Defendants concealed from

24  Plaintiff the fact that they were not paying all of the benefits to which Plaintiff was due and

25  provided Plaintiff no notice whatsoever that Defendants had underpaid Plaintiff.

26          13.        Following Plaintiff's disability in December 2005, Defendants withdrew

27  funds from Plaintiff's bank account as a premium payment on Policy No. 1257573.  These

28  withdrawals continued without interruption though August 2006, although Defendants were

3

Complaint

1  obligated to waive the premium during the period of Plaintiff's disability.

2        14.    Defendants improperly suspended all payments of Plaintiff's benefits on

3  all of the Policies and made no payments whatsoever to Plaintiff from March 6, 2006 until July 13,

4  2006, even though Defendants knew or reasonably should have known that Plaintiff was disabled

5  during this entire period.  On July 13, 2006, Defendants resumed paying benefits on Policy No.

6  0012857640 and on Policy No. 0012577580.  Although Defendants then owed Plaintiff for four

7  months of benefits on those two policies, they paid only a portion of the benefits then past due.

8  Since July 2006, Defendants have never brought current the benefits payments due to Plaintiff, and

9  remain months in arrears on the payments due to Plaintiff.

10        15.    Defendants failed to pay any benefits on Policy No. 1257573 until

11  September 2006, by which time Defendants owed benefits for seven months.  In September 2006,

12  Defendants paid a portion of the benefits then past due.  Since September 2006, Defendants have

13  never brought current the benefits payments due to Plaintiff, and remain months in arrears on the

14  payments due to Plaintiff,

15        16.    In addition to monthly benefit payments, the Policies provide the benefit

16  of rehabilitation.  The Policies provide:

17            "We will pay for a rehabilitation program that we approve.  Maximum

18            payment for a single disability will be 24 times the Monthly Benefit.  With our

19            permission this maximum may be waived.  This payment will have no effect on any

20            other benefit of this policy.'

21        17.    Plaintiff duly applied to Defendants for the rehabilitation benefit offered

22  by the policy.  Defendants denied Plaintiff's request for rehabilitation benefits without basis or

23  explanation.  Plaintiff's request for the rehabilitation benefit was reasonable and proper and

24  Defendants' denial was completely unjustified.

25        18.    Defendants have engaged in tactics designed to confuse Plaintiff and to

26  cover up Defendants' inadequate payment of benefits and excessive withdrawal of premiums from

27  Plaintiff's bank account.  These tactics include sending Plaintiff undated Explanations of Benefits,

28  sending premium notices at times when Defendants were obligated to waive premiums, sending

4

Complaint

premium refund checks without explanation of what premiums were being refunded, sending benefit payments in the wrong amount, and refusing to account for all premiums withdrawn from Plaintiff's account.

19.    When Plaintiff complained about the conduct of Defendants, Defendants responded by compelling Plaintiff to attend a medical examination more than 100 miles from Plaintiff's home.  Plaintiff is informed and believes that Defendants took this action to retaliate against Plaintiff for complaining about the conduct of Defendants.

FIRST CAUSE OF ACTION

AGAINST DEFENDANTS AND EACH OF THEM

FOR BREACH OF CONTRACT

20.    Plaintiff hereby repeats and repleads Paragraph 1 through Paragraph 19 of the General Allegations.

21.    Defendants, and each of them, have failed and refused to perform their contractual obligation under the Policies to pay Plaintiff's benefits in full, to refund all premiums taken during Plaintiff's disability, and to provide Plaintiff with rehabilitation benefits, although demand therefor has been made.

22.    Plaintiff paid all premiums and performed all acts required of her under the Policies.

23.    As the result of Defendants' breach of contract, as aforesaid, Plaintiff has suffered a loss of the benefits provided by the Policies plus such reasonably foreseeable consequential damages as she has and will incur in the future.

SECOND CAUSE OF ACTION

AGAINST DEFENDANTS AND EACH OF THEM

FOR BREACH OF THE COVENANT OF GOOD FAITH

AND FAIR DEALING

24.    Plaintiff hereby repeats and repleads Paragraph 1 through Paragraph 19 of the General Allegations and Paragraph 21 through Paragraph 23, inclusive of the First Cause of Action.

5

Complaint

25.    The decision of Defendants, and each of them, to withhold benefits payments due under the Policy, to refuse to provide rehabilitation benefits, to refuse to fully refund premiums paid during Plaintiff's disability, to engage in tactics to confuse Plaintiff and obfuscate Defendants wrongdoing, and to retaliate against Plaintiff was unreasonable because:

a.  Defendants failed to investigate Plaintiff's claim thoroughly;

b.  Defendants failed to evaluate Plaintiff's claim objectively;

c.  Defendants utilized an unduly restrictive, overly technical and clearly erroneous interpretation of the Policy which ignored established law;

d.  Defendants failed to adequately communicate with Plaintiff, and failed to state an adequate basis for the refusal to pay Plaintiff's claim;

e.  Defendants misrepresented pertinent facts or insurance policy provisions relating to refund of premiums, policies in force, benefits due and Plaintiff's right to rehabilitation benefits;

f.  Defendants failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising from policies like Plaintiff's;

g.  Defendants failed to make prompt and timely payment of benefits which it acknowledged were due; and

h.  Defendants engaged in abusive practices to avoid paying claims.

26.    The acts of Defendants, as aforesaid, constitute a breach of the covenant of good faith and fair dealing.

27.    As a proximate result of Defendants' bad faith, Plaintiff has suffered and continues to suffer losses of the benefits provided by the Policy and has suffered and continues to suffer injury, embarrassment, humiliation and mental anguish all to her damage in an amount according to proof.  Plaintiff has been required to retain an attorney and incur attorney fees to enforce the Policies.

28.    Defendants committed the acts alleged herein maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil

6

1   motive amounting to malice, and in conscious disregard of Plaintiff's rights.  Plaintiff is thus

2   entitled to recover punitive damages from Defendants, and each of them, in an amount according

3   to proof.

                              THIRD CAUSE OF ACTION

4

5                      AGAINST DEFENDANTS AND EACH OF THEM

6                                      FOR FRAUD

7            29.          Plaintiff hereby repeats and repleads Paragraph 1 through Paragraph 19 of

8   the General Allegations, Paragraph 21 through Paragraph 23, inclusive of the First Cause of

9   Action, and Paragraph 25 through Paragraph 28, inclusive of the Second Cause of Action.

10           30.          In obtaining the Policies and in keeping the Policies in force, Plaintiff

11  reasonably relied upon the representations contained in Defendants' advertising and in the Policies

12  that Plaintiff would be paid benefits timely and in full as provided by the Policies, that premiums

13  would be waived during the period of Plaintiff's disability, that premiums paid at the beginning of

14  Plaintiff's disability would be refunded, that Plaintiff would be permitted the rehabilitation benefit

15  stated in the policy.

16           31.          The representations described in the preceding Paragraph were false.  The

17  true fact was that Defendants would not do any of the things described in the preceding Paragraph,

18  but instead would refuse to do those things and would attempt to obfuscate and cover up yheir

19  refusal and would retaliate against Plaintiff if she complained.

20           32.          Defendants knew, or in the exercise of reasonable care should have

21  known, that the representations described above were false, but nonetheless failed to tell Plaintiff

22  the true facts.  Said representations were made with the intent to deceive Plaintiff and to induce

23  Plaintiff to pay premiums on the Policies.

24           33.          As a proximate result of Defendants' fraud, Plaintiff has suffered and

25  continues to suffer losses of the benefits provided by the Policy and has suffered and continues to

26  suffer injury, embarrassment, humiliation and mental anguish all to her damage in an amount

27  according to proof.

28           34.          Defendants committed the acts alleged herein maliciously, fraudulently

                                            7

1  and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil

2  motive amounting to malice, and in conscious disregard of Plaintiff's rights.  Plaintiff is thus

3  entitled to recover punitive damages from Defendants, and each of them, in an amount according

4  to proof.

5  FOURTH CAUSE OF ACTION

6  AGAINST DEFENDANTS AND EACH OF THEM

7  FOR NEGLIGENT MISREPRESENTATION

8      35.      Plaintiff hereby repeats and repleads Paragraph 1 through Paragraph 19 of

9  the General Allegations, Paragraph 21 through Paragraph 23, inclusive of the First Cause of

10  Action, Paragraph 25 through Paragraph 28, inclusive of the Second Cause of Action, and

11  Paragraph 30 through Paragraph 34 of the Third Cause of Action.

12      36.      Plaintiff is informed and believes and thereon alleges that during the time

13  Defendants misled Plaintiff, as aforesaid, Defendants lacked any reasonable ground for believing

14  the representations described above to be true.  Plaintiff justifiably relied on said statements.

15      37.      As a proximate result of Defendants' negligent misrepresentations,

16  Plaintiff has suffered and continue to suffer losses of the benefits provided by the Policy and has

17  suffered and continues to suffer injury, embarrassment, humiliation and mental anguish all to her

18  damage in an amount according to proof.

19  FIFTH CAUSE OF ACTION

20  AGAINST DEFENDANTS AND EACH OF THEM

21  FOR UNFAIR BUSINESS PRACTICES

22      38.      Plaintiff hereby repeats and repleads Paragraph 1 through Paragraph 19 of

23  the General Allegations, Paragraph 21 through Paragraph 23, inclusive of the First Cause of

24  Action, and Paragraph 25 through Paragraph 28, inclusive of the Second Cause of Action,

25  Paragraph 30 through Paragraph 34 of the Third Cause of Action, and Paragraph 36 through 37,

26  inclusive of the Fourth Cause of Action.

27      39.      The practices of Defendants described hereinabove are unlawful, unfair or

28  fraudulent business practices of the sort prohibited by California Business and Professions Code

Complaint

section 17200.

40.  Defendants have improperly profited from the practices described above.

SIXTH CAUSE OF ACTION

AGAINST DEFENDANTS AND EACH OF THEM

FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

41.  Plaintiff hereby repeats and repleads Paragraph 1 through Paragraph 19 of the General Allegations, Paragraph 21 through Paragraph 23, inclusive of the First Cause of Action, Paragraph 25 through Paragraph 28, inclusive of the Second Cause of Action, Paragraph 30 through Paragraph 34 of the Third Cause of Action, Paragraph 36 through 37, inclusive of the Fourth Cause of Action, and Paragraph 39 through Paragraph 40 inclusive of the Fifth Cause of Action.

42.  The conduct set forth hereinabove was extreme and outrageous and an abuse of the authority and position of Defendants and each of them.  Said conduct was intended to cause severe emotional distress, or was done in conscious disregard of the probability of causing such distress.

43.  As a proximate result of Defendants' intentional conduct, as aforesaid, Plaintiff suffered emotional distress and mental suffering, embarrassment, humiliation and mental anguish all to his damage in an amount according to proof.

44.  Defendants committed the acts alleged herein maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights.  Plaintiff thus is entitled to recover punitive damages from defendant in an amount according to proof.

SEVENTH CAUSE OF ACTION

AGAINST DEFENDANTS AND EACH OF THEM

FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

45.  Plaintiff hereby repeats and repleads Paragraph 1 through Paragraph 19 of the General Allegations, Paragraph 21 through Paragraph 23, inclusive of the First Cause of Action, Paragraph 25 through Paragraph 28, inclusive of the Second Cause of Action, Paragraph

9

Complaint

30 through Paragraph 34 of the Third Cause of Action, Paragraph 36 through 37, inclusive of the Fourth Cause of Action, and Paragraph 39 through Paragraph 40 inclusive of the Fifth Cause of Action.

46.     The conduct set forth hereinabove was extreme and outrageous and an abuse of the authority and position of Defendants and each of them.  Defendants knew, or should have known, that their acts would cause plaintiff emotional distress.

47.     As a proximate result of Defendants' negligence, as aforesaid, Plaintiff suffered emotional distress and mental suffering, embarrassment, humiliation and mental anguish all to his damage in an amount according to proof.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

### ON THE FIRST CAUSE OF ACTION

1.     For damages according to proof;

2.     For prejudgment interest on that sum;

3.     For costs of suit herein incurred; and

4.     For such other and further relief as the Court deems proper.

### ON THE SECOND, THIRD AND SIXTH CAUSES OF ACTION

1.     For special damages according to proof;

2.     For general damages according to proof;

3.     For punitive damages in a sum sufficient to punish Defendants;

4.     For Plaintiff's attorney fees incurred to enforce the Policies;

5.     For costs of suit herein incurred; and

6.     For such other and further relief as the Court deems proper.

### ON THE FOURTH AND SEVENTH CAUSES OF ACTION

1.     For special damages according to proof;

2.     For general damages according to proof;

3.     For costs of suit herein incurred; and

4.     For such other and further relief as the Court deems proper.

10

Complaint

## ON THE FIFTH CAUSE OF ACTION

1. For an order that Defendants and their agents, attorneys, servants and employees be restrained and enjoined from the unfair business practices as alleged;

2. For an order that Defendants and their agents, attorneys, servants and employees disgorge any and all profits they have made attributable to said unfair business practices;

3. For an award of attorney fees pursuant to Code of Civil Procedure section 1021.5;

4. For costs of suit herein incurred;

5. For such other and further relief as the Court deems proper.

Dated: April 16, 2007

LAW OFFICE OF MICHAEL E. KINNEY

By: _____
Michael E. Kinney
Attorney for Plaintiff

11

Complaint

Exhibit B

# COMPRESSED TRANSCRIPT OF:

# Cory Simon, Volume 1

**Date Taken:**
March 13, 2008

**Case:**
Donna Mathews v. Pan American Life Insurance Company

*Affiliated Reporting*
*650 Poydras Street, Suite 2610*
*New Orleans, LA  70130*
*Phone: 504-568-9111*
*1-877-568-9111*
*Fax: 504-568-9110*
*Email: pages@affiliatedreporting.com*
*Internet: www.affiliatedreporting.com*

Page 28

```
 1          Is that how you understood it?
 2   A. Yes.
 3   Q. Okay.
 4       MR. EVANS:
 5           You know, just to interpose an
 6       objection to that as vague.
 7       MR. KINNEY:
 8           Vague?
 9       MR. EVANS:
10           Whatever you mean by occupational
11       rehab.
12   EXAMINATION BY MR. KINNEY:
13   Q. Okay.  Vocational rehabilitation, do you
14       understand what I mean by that?
15   A. Yes.
16       MR. EVANS:
17           Same objection.
18   EXAMINATION BY MR. KINNEY:
19   Q. When a claimant requests rehabilitation
20       benefits, what is Pan Am's process for
21       reviewing and deciding on that claim?
22   A. Generally we would find out what type of
23       occupational vocational rehabilitation and
24       into what field for future employment the
25       insured would want to take on.
```

```
 1   Q.  Anything else?

 2   A.  We generally ask them for some type of

 3       action plan that would describe what the

 4       course of study would be, how long it would

 5       take, how they expect this to accomplish

 6       their goal of returning to work.

 7   Q.  Okay.  Anything else in terms of

 8       information you would request?

 9   A.  No.

10   Q.  Okay.  And what criteria would you use to

11       decide whether or not to provide the

12       rehabilitation benefits?

13   A.  If it was -- If it would result in an

14       occupation whereas the insured or claimant

15       would be able to return to normal full-time

16       work.

17   Q.  That's the only criteria?

18   A.  We would also -- Once they returned to such

19       normal full-time work, we would expect the

20       claim to end at that point.

21   Q.  Anything else that would be a criterion in

22       determining whether or not to grant the

23       rehabilitation benefits?

24   A.  Not to my knowledge.

25   Q.  Okay.  The two other rehabilitation claims
```

Page 68

```
 1   A. We have not.

 2   Q. Okay.  Have you looked at any sources of

 3      information on that subject, such as the

 4      Dictionary of Occupational Titles?

 5   A. I have not.

 6   Q. In your experience as a disability claims

 7      representative and claims manager, have you

 8      dealt with nurses who were disabled?

 9   A. I have.

10   Q. Okay.  And in the course of doing that

11      work, have you had the obligation to look

12      at the occupational duties of nurses?

13   A. I have.

14   Q. Okay.  And do you know what a nurse does?

15   A. Well, a nurse specifically assists doctors

16      in caring for patients.

17   Q. Okay.  But do you know what manual --

18      physical requirements there are to be a

19      registered nurse?

20   A. Not specifically.

21   Q. Okay.  Do you know why Mr. Jones denied Ms.

22      Mathews' claim for rehabilitation benefits?

23   A. I believe he denied it, because when

24      responding to Ms. Mathews' request for

25      rehabilitation, we did not get a clear
```

Page 69

1    answer or plan as to what this

2    rehabilitation would entail and how it

3    would expect to return her to normal work

4    activity in the future.

5    Q. Okay.  And you have since reviewed the

6    claim since that determination was made not

7    to give her the benefit.

8         Is that right?

9    A. I have looked at aspects of the file.

10   Q. Okay.  And do you believe that Mr. Jones

11   was correct to deny the claim on that

12   basis?

13   A. I do.

14   Q. What additional information should Ms.

15   Mathews have provided to Pan American such

16   that Pan American would have had sufficient

17   information to grant the claim?

18   A. We would have been able to make --

19        MR. EVANS:

20            I'm sorry.

21            Objection.  Calls for speculation.

22            Go ahead.

23        THE WITNESS:

24            We would have been able to make,

25         you know, a determination or review

Cory Simon, Volume 1          Donna Mathews v. Pan American Life Insurance Company          March 13, 2008

Page 70

```
 1                if we had known which school she was
 2                planning to attend, how many course
 3                hours she was planning to take, the
 4                number of courses, the cost of -- you
 5                know, of these courses, and her, you
 6                know, pretty much, you know,
 7                prognosis for going ahead and, you
 8                know, completing such course work.
 9      EXAMINATION BY MR. KINNEY:
10      Q. Okay.  Did Pan American ask Ms. Jones to
11         provide that information?
12      A. We did.
13      Q. When?
14      A. After she made her request for the
15         rehabilitation benefit.
16      Q. Okay.  Did she provide it?
17      A. She replied with not much information.
18      Q. Okay.  Did Pan American explain to her what
19         additional information would be needed?
20      A. I don't recall.  I think that was asked in
21         the original letter.
22      Q. Okay.  Does Pan American have a duty to its
23         claimants to tell them what information is
24         needed to perfect their claim?
25             MR. EVANS:
```

Page 81

```
 1              Deposition of CORY R. SIMON

 2              Taken on March 13, 2008

 3

 4

 5              WITNESS' CERTIFICATE

 6

 7

 8      I have read or have had the foregoing

 9  testimony read to me and hereby certify that

10  it is a true and correct transcription of my

11  testimony, with the exception of any attached

12  corrections or changes.

13

14

15

16

17

18              CORY R. SIMON

19

20

21

22

23

24

25
```

```
1              REPORTER'S CERTIFICATE

2

3      I, LINDY ROOT, Certified Court Reporter,

4  do hereby certify that the above-mentioned

5  witness, after having been first duly sworn by

6  me to testify to the truth, did testify as

7  hereinabove set forth;

8      That the testimony was reported by me in

9  shorthand and transcribed under my personal

10  direction and supervision, and is a true and

11  correct transcript, to the best of my ability

12  and understanding;

13      That I am not of counsel, not related to

14  counsel or the parties hereto, and not in any

15  way interested in the outcome of this matter.

16

17

18

19

20

21                  LINDY ROOT

22          CERTIFIED COURT REPORTER

23      REGISTERED PROFESSIONAL REPORTER

24

25
```

Exhibit C

Page 1

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                  ---oOo---

4

5  DONNA MATHEWS,

6              Plaintiff,

7  vs.                    CASE No.: C 07-02757 SBA

8  PAN AMERICAN LIFE INSURANCE
   COMPANY; and DOE 1 through
9  DOE 20, inclusive,

10             Defendants.
   _____/

11

12

13        DEPOSITION OF DONNA MATHEWS

14          OAKLAND, CALIFORNIA

15           APRIL 3, 2008

16

17

18

19

20  ATKINSON-BAKER, INC.

21  COURT REPORTERS

22  (800)288-3376

23  www.depo.com

24  REPORTED BY:  LINDA ELLINGSON, CSR No. 12256

25  FILE NO.: A202B4A

A202B4A
DONNA MATHEWS - April 3, 2008

Page 58

1       A.    Not that I recall.                              11:58

2       Q.    Do you recall anyone at the Department of       11:58

3    Rehabilitation providing you a copy of a rehabilitation  11:58

4    plan?                                                    11:58

5       A.    I guess I don't really understand what a        11:58

6    rehabilitation plan is.                                  11:58

7       Q.    Okay.  Well, then speak more generally.  Do     11:58

8    you recall getting a document from the Department of     11:58

9    Rehabilitation setting out what they would pay for?      11:58

10      A.    I don't recall.                                 11:58

11      Q.    Okay.  Do you recall getting a document from    11:58

12   the Department of Rehabilitation sort of laying out what 11:58

13   courses they -- or what educational work they expected   11:58

14   you to take as part of your rehabilitation?              11:59

15      A.    Could you repeat?                               11:59

16      Q.    Sure.  Did you -- do you recall getting a       11:59

17   document from the Department of Rehabilitation laying    11:59

18   out, here's what you are going to do between now and,    11:59

19   you know, 2010 or 2011 to get into a career in nursing?  11:59

20   Something like that?  Anything like that?                11:59

21      A.    Well, they wouldn't tell me.  I would tell      11:59

22   them what's required.  And so I don't recall them        11:59

23   telling me what I had to do.  I would have explained to  11:59

24   them this is what's required from me to become a nurse.  11:59

25      Q.    Okay.  And as you explained that to them they   11:59

A202B4A
DONNA MATHEWS - April 3, 2008

Page 59

1    said that at least to the tuition component that the        11:59

2    Department of Rehabilitation would pay for that?            12:00

3         A.    When I was accepted, yes.                        12:00

4         Q.    Okay.  Did -- in your discussions with the       12:00

5    Department of Rehabilitation did they identify -- did       12:00

6    you discuss any particular schools that they would not      12:00

7    pay tuition for?                                            12:00

8         A.    Yes.  They said they would not pay for Pacific   12:00

9    Union College, which is ten minutes from my house, a       12:00

10   highly regarded university that I would have preferred      12:00

11   to go to, but it was too expensive.  They wouldn't pay      12:00

12   for it.                                                     12:00

13        Q.    Was there any other colleges?                    12:00

14        A.    Well, I had to encourage shall I say.  I had     12:00

15   to sort of fight for the -- for them to consider Sonoma     12:00

16   State because of the bachelor's.  Because she said --       12:01

17   Lori Spiekerman said it's virtually unheard of for the     12:01

18   State of California to pay for Sonoma State when I could    12:01

19   have gotten the same education at Santa Rosa JC so I had    12:01

20   to make a case for just going to Sonoma State.             12:01

21        Q.    And how did you make that case?  Did you put     12:01

22   anything in writing?  Did you submit anything?             12:01

23        A.    I don't know if it was in writing or if Lori    12:01

24   and I had that discussion and she put in the paperwork.    12:01

25   Because I do remember her saying, "Would you like me to    12:01

A202B4A
DONNA MATHEWS - April 3, 2008

Page 60

1    fill this out or do you want to fill it out?"  So I          12:01

2    don't remember if I wrote the letter or if we just had       12:01

3    the discussion about why I should be allowed to go to        12:01

4    Sonoma State.                                                12:01

5        Q.    And was the primary reason you were fighting       12:02

6    for Sonoma State was because of the importance of the        12:02

7    bachelor's degree to your educational plans or --           12:02

8        A.    Yes.                                               12:02

9        Q.    Do you recall if it took a long time to make       12:02

10   that case?  Was this something that you came -- was this     12:02

11   something that occurred over several appointments or was     12:02

12   this all during one appointment in which you were            12:02

13   discussing your bachelor's degree plan?                      12:02

14       A.    I don't recall.                                    12:02

15       Q.    After -- well, other than tuition was there        12:02

16   anything else that the Department of Rehabilitation was      12:02

17   paying for?                                                  12:03

18          MR. KINNEY:  Objection, asked and answered.           12:03

19   She already testified about books.                           12:03

20          THE WITNESS:  They did buy me a new tower for         12:03

21   my computer.  They -- a computer.  And they bought me        12:03

22   software for the computer for typing.                        12:03

23   BY MR. EVANS:                                                12:03

24       Q.    And what sort of software?                         12:03

25       A.    Dragon Naturally Speaking.                         12:03

A202B4A
DONNA MATHEWS - April 3, 2008

|   |   |   | Page 61 |
|---|---|---|---|
| 1 | Q. | Is that a dictation software? | 12:03 |
| 2 | A. | Yes. | 12:03 |
| 3 | Q. | When you say a new tower, I'm not sure what | 12:03 |
| 4 |  | you are referring to. Are you talking about a new | 12:03 |
| 5 |  | computer? | 12:03 |
| 6 | A. | Yes. | 12:03 |
| 7 | Q. | Okay. | 12:03 |
| 8 | A. | That would work with the Dragon Naturally | 12:03 |
| 9 |  | Speaking because my computer was too old. | 12:03 |
| 10 | Q. | Are you currently using the Naturally | 12:04 |
| 11 |  | Speaking? | 12:04 |
| 12 | A. | Yes. | 12:04 |
| 13 | Q. | Do you have any training on that? | 12:04 |
| 14 | A. | Yes. | 12:04 |
| 15 | Q. | And what sort of training did you have? | 12:04 |
| 16 | A. | The junior college had a class. | 12:04 |
| 17 | Q. | Did the Department of Rehabilitation pay for | 12:04 |
| 18 |  | that? | 12:04 |
| 19 | A. | Yes. | 12:04 |
| 20 | Q. | And I think the other thing we had talked | 12:04 |
| 21 |  | about was there was -- I thought you said $300 to $500 | 12:04 |
| 22 |  | for books and other expenses. Do I recall that | 12:04 |
| 23 |  | correctly? | 12:04 |
| 24 | A. | Hm-hmm. | 12:04 |
| 25 | Q. | And how often is that amount made available? | 12:04 |

A202B4A
DONNA MATHEWS - April 3, 2008

Page 83

1   independent doctor closer.  So my understanding is that    01:37

2   they were trying to prove that I was faking it.    01:37

3       Q.    So the two and a half hours you rode up there    01:37

4   that was the time to drive from your home to I guess    01:37

5   Palo Alto?    01:37

6       A.    Yes.    01:37

7       Q.    Did you talk to anybody at Pan American about    01:37

8   the driving time involved?    01:37

9       A.    Yes.    01:37

10      Q.    And who did you talk to?    01:37

11      A.    I'm not sure.    01:37

12      Q.    Well, what do you recall of that conversation?    01:37

13      A.    Saying that I was in school -- I talked to    01:37

14  someone at Pan American asking why I had to go so far    01:37

15  for an appointment when I was enrolled in school and I    01:37

16  didn't want to miss school to go for a doctor's    01:37

17  appointment.  And I didn't want to have to go so far for    01:38

18  a doctor's appointment.  I was willing to go to a doctor    01:38

19  but, in fact, one of the appointments had been postponed    01:38

20  because it conflicted with school.    01:38

21      Q.    So you just -- so we don't get confused let's    01:38

22  mark this as the next.    01:38

23          (Marked Deposition Exhibit Nos. 50 and 51.)    01:38

24  BY MR. EVANS:    01:38

25      Q.    I'm showing you the next exhibit which is    01:38

A202B4A
DONNA MATHEWS - April 3, 2008

Page 84

| | | |
|---|---|---|
| 1 | another notice of an independent medical exam.  It says | 01:38 |
| 2 | it's been rescheduled.  Was that rescheduling at your | 01:38 |
| 3 | request? | 01:39 |
| 4 |     A.   Yes. | 01:39 |
| 5 |     Q.   Because the initial date was a conflict for | 01:39 |
| 6 | you? | 01:39 |
| 7 |     A.   Yes. | 01:39 |
| 8 |     Q.   Did you suggest the November 15th date? | 01:39 |
| 9 |     A.   I had no say in the matter. | 01:39 |
| 10 |     Q.   Did the November 15th date pose a conflict for | 01:39 |
| 11 | you? | 01:39 |
| 12 |     A.   They both did.  I was enrolled in school. | 01:39 |
| 13 |     Q.   And what was the conflict on November 15th? | 01:39 |
| 14 |     A.   I don't recall. | 01:39 |
| 15 |     Q.   Did you miss class because of that | 01:39 |
| 16 | appointment? | 01:39 |
| 17 |     A.   I don't recall. | 01:39 |
| 18 |     Q.   What did the Pan American person say when you | 01:39 |
| 19 | said this was two and a half hours away? | 01:39 |
| 20 |     A.   They said this is the doctor they use and I | 01:39 |
| 21 | didn't have a choice if I wanted to continue with my | 01:39 |
| 22 | benefits. | 01:39 |
| 23 |     Q.   This has been previously marked.  We have a | 01:40 |
| 24 | separate binder of exhibits, I guess.  This has been | 01:40 |
| 25 | previously marked as Exhibit 36. | 01:40 |

A202B4A
DONNA MATHEWS - April 3, 2008

Page 93

| | | | |
|---|---|---|---|
| 1 | A. | I'm not what I used to be. | 01:55 |
| 2 | Q. | Okay.  Do you recall during the evaluation by | 01:55 |
| 3 | Dr. Data being tested on your ability to lift objects? | | 01:55 |
| 4 | A. | I don't recall. | 01:55 |
| 5 | Q. | Okay.  Do you recall ever being evaluated on | 01:55 |
| 6 | that by any healthcare provider? | | 01:55 |
| 7 | A. | I don't recall. | 01:56 |
| 8 | Q. | Have you received any disability benefits from | 01:56 |
| 9 | Social Security? | | 01:56 |
| 10 | A. | Yes. | 01:56 |
| 11 | Q. | And do you recall when you started receiving | 01:56 |
| 12 | those? | | 01:57 |
| 13 | A. | No. | 01:57 |
| 14 | Q. | Are you still receiving them? | 01:57 |
| 15 | A. | Yes. | 01:57 |
| 16 | Q. | Can you estimate about how much you receive a | 01:57 |
| 17 | month? | | 01:57 |
| 18 | A. | $1,800. | 01:57 |
| 19 | Q. | Do you know how long you could receive those | 01:57 |
| 20 | benefits? | | 01:57 |
| 21 | A. | Until I go back to work. | 01:57 |
| 22 | Q. | To qualify for the Social Security benefits | 01:57 |
| 23 | were you required to provide any medical information? | | 01:57 |
| 24 | A. | No. | 01:57 |
| 25 | Q. | Were you required to go to an evaluation of | 01:57 |

Page 108

| | | |
|---|---|---|
| 1 | Q.    Okay.  Going to page -- the second page, PAL | 02:39 |
| 2 | 0587.  There's a section here called -- Section 7, | 02:39 |
| 3 | "Physical Impairment, Class 4.  Moderate limitation of | 02:39 |
| 4 | functional capacity; capable of clerical/administrative | 02:39 |
| 5 | (sedentary) activity." | 02:39 |
| 6 |         At the time of this statement that this | 02:39 |
| 7 | statement was made, did you agree with that assessment? | 02:39 |
| 8 |    A.    We didn't discuss that section. | 02:39 |
| 9 |    Q.    Okay.  Under Section 9, "Prognosis." | 02:40 |
| 10 |         Do you recall discussing your prognosis with | 02:40 |
| 11 | Dr. Alexander in connection with this statement? | 02:40 |
| 12 |    A.    Yes. | 02:40 |
| 13 |    Q.    And what do you recall of that discussion? | 02:40 |
| 14 |    A.    I recall his words being, this is how we play | 02:40 |
| 15 | the game.  We have to put a date in there but I'm | 02:40 |
| 16 | qualifying it underneath by saying you may need surgical | 02:40 |
| 17 | intervention so this is what we're going to do. | 02:40 |
| 18 |    Q.    Okay.  Well, between you and him what did he | 02:40 |
| 19 | say about what opinion did he express to you as to when | 02:40 |
| 20 | you would be recovered? | 02:40 |
| 21 |    A.    He didn't because he said I may need surgery | 02:40 |
| 22 | and we didn't know at this point because we didn't have | 02:40 |
| 23 | all the data. | 02:40 |
| 24 |    Q.    Okay, so he marked the one to three months box | 02:40 |
| 25 | and said 3/15/06, but at the time he didn't express to | 02:41 |

Page 109

| | | |
|---|---|---|
| 1 | you any date when he thought you might be better? | 02:41 |
| 2 | A.   His words were, "This is how we play the | 02:41 |
| 3 | game." | 02:41 |
| 4 | Q.   Beyond that do you remember anything else of | 02:41 |
| 5 | that conversation? | 02:41 |
| 6 | A.   No. | 02:41 |
| 7 | Q.   Okay.  It says, "Do you expect" -- 9C, "Do you | 02:41 |
| 8 | expect any significant improvement in the future?"  Did | 02:41 |
| 9 | Dr. Alexander express to you that he expected you to | 02:41 |
| 10 | improve in the future? | 02:41 |
| 11 | A.   I don't recall. | 02:41 |
| 12 | Q.   Okay.  Did he discuss the need for surgical | 02:41 |
| 13 | intervention with you at the time? | 02:41 |
| 14 | A.   All the information wasn't in.  I hadn't -- I | 02:41 |
| 15 | don't think -- I just remember that we didn't know at | 02:41 |
| 16 | the time if I would need surgery, so it was unclear. | 02:42 |
| 17 | Q.   Because it wasn't known yet that's why it may | 02:42 |
| 18 | need surgical intervention? | 02:42 |
| 19 | A.   Correct. | 02:42 |
| 20 | Q.   I'm showing you a document that's been | 02:42 |
| 21 | previously marked as Exhibit 14.  It's a letter dated | 02:42 |
| 22 | March 6, 2006 saying, "We've enclosed forms to be | 02:42 |
| 23 | completed by you and your physician." | 02:42 |
| 24 | Do you recall what forms were being | 02:42 |
| 25 | transmitted with this letter? | 02:43 |

A202B4A
DONNA MATHEWS - April 3, 2008

Page 113

1    this, needed to compose this?                          02:48

2        A.    Because I was afraid I would forget the      02:48

3    details.                                               02:48

4        Q.    Okay.  Well, do you know why you needed to   02:48

5    submit -- did you submit this to Pan American?         02:48

6        A.    I'm not sure.                                02:48

7        Q.    Okay.  After submitting your initial claim did   02:48

8    you -- were you told by Pan American you needed to     02:48

9    submit additional paperwork, do you recall that?       02:48

10       A.    I don't recall.                              02:48

11       Q.    Was there a point in March 2006 where you came   02:48

12   to believe that you would be disabled for a longer     02:48

13   period of time?                                        02:48

14            MR. KINNEY:  Longer than what?                02:48

15   BY MR. EVANS:                                          02:48

16       Q.    Longer than three months.                    02:48

17       A.    I don't know how to answer that.             02:48

18       Q.    Well, maybe -- yeah, going back to the       02:49

19   conversation you had with Dr. Alexander about how the  02:49

20   game is played is, you know, he had left it at one to  02:49

21   three months and there may need surgical intervention  02:49

22   because not all of the -- he didn't have all the       02:49

23   information yet.                                        02:49

24            Was there a time before March 2006 when you   02:49

25   learned additional -- when you received additional     02:49

A202B4A
DONNA MATHEWS - April 3, 2008

Page 126

| | |
|---|---|
| 1    Q.    Did you write any letters to the bank about | 03:27 |
| 2  this? | 03:27 |
| 3    A.    No, it was on the phone. | 03:27 |
| 4    Q.    It was all over the phone, okay.  And then it | 03:27 |
| 5  says, "Elaine informed me that the premium department of | 03:27 |
| 6  your company does not have communication with your | 03:27 |
| 7  claims department and I have become the victim with | 03:27 |
| 8  these bounced checks." | 03:27 |
| 9        Do you recall what bounced checks you are | 03:27 |
| 10  referring to here? | 03:27 |
| 11    A.    The -- in particular the life insurance | 03:28 |
| 12  checks.  The life insurance withdrawals. | 03:28 |
| 13    Q.    Okay.  Now did you forward any of that | 03:28 |
| 14  correspondence with the life insurance company to Pan | 03:28 |
| 15  American? | 03:28 |
| 16    A.    I don't recall. | 03:28 |
| 17    Q.    There's also a reference at the beginning of | 03:28 |
| 18  the paragraph, the two service charges of $4 each.  What | 03:28 |
| 19  were the service charges for? | 03:28 |
| 20    A.    The bounced checks.  The bounced withdrawals | 03:28 |
| 21  to the life insurance MetLife or General American Life, | 03:28 |
| 22  the life insurance. | 03:28 |
| 23    Q.    Let's clarify what we mean by bounced checks. | 03:28 |
| 24  Was that checks that were returned for insufficient | 03:28 |
| 25  funds or was it a charge for some sort of overdraft | 03:28 |

A202B4A
DONNA MATHEWS - April 3, 2008

Page 127

1    protection?                                                          03:29

2        A.    Insufficient funds charges is what I recall.               03:29

3        Q.    Okay.  Other than the two $4 service charges               03:29

4    are you aware of any other occurring?                                03:29

5        A.    No.                                                        03:29

6        Q.    Were those charges reflected on any bank                   03:29

7    statements?                                                          03:29

8        A.    No.  Statements came by mail but to my                     03:29

9    recollection it wasn't on the monthly statement.  It                 03:29

10   only came and then they reversed the charges.  It came              03:29

11   by a separate -- we've charged your account $4 for                   03:29

12   insufficient funds, and then they credited the account,             03:29

13   I believe.                                                           03:29

14       Q.    And how did that come about where they                     03:29

15   reversed the charges?                                                03:29

16       A.    Because I phoned them up about this fiasco                  03:29

17   with Pan Am and they were sympathetic to what I had to               03:29

18   go through to get them to stop withdrawing these 37.70              03:30

19   every month from my bank account.  Then the life                     03:30

20   insurance was going to cancel me because of insufficient            03:30

21   funds.                                                               03:30

22       Q.    Did you ever tell anyone at Pan American about             03:30

23   the situation of the life insurance?                                 03:30

24       A.    I told Elaine about these bounced checks and               03:30

25   about the withdrawals.                                               03:30

A202B4A
DONNA MATHEWS - April 3, 2008

Page 131

| # | Text | Time |
|---|------|------|
| 1 | your nursing education? | 03:36 |
| 2 | A. I'm not sure about the timing. | 03:36 |
| 3 | Q. Had you been asked for the -- an estimate of | 03:36 |
| 4 | the cost of this program would you have been able to | 03:36 |
| 5 | provide it on August 23rd, 2006? | 03:36 |
| 6 | A. If I had been asked could I provide it? I'm | 03:36 |
| 7 | sure I could have come up with information if Pan Am had | 03:36 |
| 8 | asked me. | 03:36 |
| 9 | Q. At any time before the lawsuit was filed did | 03:37 |
| 10 | you ever notify Pan American that you were receiving | 03:37 |
| 11 | rehabilitation benefits from the state? | 03:37 |
| 12 | A. Not that I recall. | 03:37 |
| 13 | Q. Did you ever advise Pan American that you had | 03:37 |
| 14 | had a rehabilitation plan approved by the state? | 03:37 |
| 15 | A. They didn't ask. | 03:37 |
| 16 | Q. Did Pan American ever ask you for a | 03:37 |
| 17 | rehabilitation plan? | 03:37 |
| 18 | A. I phoned them and I told them I wanted to | 03:37 |
| 19 | apply for their rehabilitation program. And they told | 03:37 |
| 20 | me I needed to submit it in writing. I submitted it in | 03:37 |
| 21 | writing. They're answer was no. And that's when I | 03:37 |
| 22 | wrote again and asked if there's any exceptions to their | 03:37 |
| 23 | policy. Do they ever say yes, and in what conditions | 03:38 |
| 24 | would they say yes. And I think that this was around | 03:38 |
| 25 | the -- this was around the time then that he just wrote | 03:38 |

A202B4A
DONNA MATHEWS - April 3, 2008

Page 147

1    American did you provide any information regarding the      04:05
2    estimated costs?                                            04:05
3        A.    I didn't provide anything else than what's        04:05
4    already in the record.                                      04:05
5        Q.    Okay.  And when you say in the record, just       04:05
6    because it's a term of art, we're talking about in          04:05
7    written documents; is that correct?                         04:05
8        A.    In written documents.                             04:05
9        Q.    So other than what's been transmitted to Pan      04:05
10   American in the form of letters, you haven't had any        04:05
11   other communications in which you discussed the             04:05
12   substance of a rehabilitation plan with Pan American; is    04:05
13   that correct?                                               04:05
14       A.    That's correct.                                   04:05
15       Q.    Have you had -- well, you've identified the       04:05
16   difficulty you had with the life insurance.  But other     04:05
17   than that difficulty, are there any other financial         04:06
18   difficulties that you faced that you believe are            04:06
19   resulted from Pan American's conduct?                       04:06
20       A.    That's hard to answer.  But I would have to       04:06
21   say that it's financially overwhelming to one day be        04:06
22   working and one day not to be working.  And then to have    04:06
23   this kind of accounting practices occur, this was           04:06
24   overwhelming, too.  For me to keep track of this kind of    04:06
25   thing the Department of Insurance couldn't even -- he       04:06

A202B4A
DONNA MATHEWS - April 3, 2008

Page 148

1    had to hire somebody separately to go through all of          04:06

2    this.  So the whole thing was overwhelming to me           04:06

3    financially and emotionally.                               04:06

4         Q.    On the Department of Insurance investigation     04:07

5    you said he needed to hire somebody else?                   04:07

6         A.    There was Daryl and there was someone else.      04:07

7    Daryl was the part dealing with Pan Am saying, What are     04:07

8    you guys doing?  And then he said, I've got someone in      04:07

9    accounting, they're going to try to work with Pan Am and    04:07

10   try to figure out the logistics of their accounting         04:07

11   practices.                                                  04:07

12        Q.    I see.  Other than the -- other than the life    04:07

13   insurance policy, were there any other bills that you       04:07

14   had a hard time paying because of delays in payment or      04:07

15   anything like that or because of withdrawals, any of        04:07

16   that conduct?                                               04:07

17        A.    Not that I recall.                               04:07

18        Q.    All right.  Is your husband still employed?      04:08

19        A.    Yes.                                             04:08

20        Q.    And what's his position?                         04:08

21        A.    He's a teacher.                                  04:08

22        Q.    Where does he work?                              04:08

23        A.    Middletown Unified School District.  He's a      04:08

24   high school teacher.                                        04:08

25        Q.    How long has he been in that position?          04:08

A202B4A
DONNA MATHEWS - April 3, 2008

Page 153

1    Q.    Is there anything else that they've done to    04:15

2    cause you stress?    04:15

3    A.    The entire thing has been so upsetting.  No    04:15

4    one wants to go into rehabilitation.  I don't want to be    04:15

5    a ward of the State.  This is completely degrading that    04:15

6    the state would be paying for my education when I've    04:15

7    been paying for this policy since 1991.    04:15

8         And, is there anything else?  I don't trust    04:15

9    these people as far as I could throw them.  And it's    04:16

10   completely humiliating to have to go through this.  And    04:16

11   every month wonder if they're going to pay me or what    04:16

12   month they're going to pay me for.    04:16

13   Q.    Other than -- other than just the stress of    04:16

14   having to deal with this, how has this stress affected    04:16

15   you?    04:16

16   A.    I'm in pain anyway.  And when you are in pain    04:16

17   and then you have stress it increases your pain or it    04:16

18   increases your stress and then being in school doesn't    04:16

19   help.  So anyone would know it's just a vicious cycle.    04:16

20   And I don't need to be worrying about Pan American.  I    04:16

21   need to be worrying about my grades.  I need to be    04:16

22   worrying about paying my mortgage.  I need to be    04:16

23   worrying about my family and not Pan Am.  I should be    04:17

24   home with my family right now instead of sitting in this    04:17

25   office.    04:17

A202B4A
DONNA MATHEWS - April 3, 2008

```
 1   STATE OF CALIFORNIA      )
                              )ss.
 2   COUNTY OF CONTRA COSTA  )

 3

 4

 5

 6

 7            I, the undersigned, declare under penalty of

 8   perjury that I have read the foregoing transcript, and I

 9   have made any corrections, additions, or deletions that

10   I was desirous of making; that the foregoing is a true

11   and correct transcript of my testimony contained

12   therein.

13            EXECUTED this _____day of_____,

14   20_____, at _____,_____.

15

16

17

18

19                             _____

20                                     DONNA MATHEWS

21

22

23

24

25
```

A202B4A
DONNA MATHEWS - April 3, 2008

```
 1          REPORTER'S CERTIFICATION OF CERTIFIED COPY

 2

 3

 4

 5          I, LINDA ELLINGSON, CSR NO. 12256, a Certified

 6    Shorthand Reporter in the State of California, certify

 7    that the foregoing pages _____ through _____, constitute

 8    a true and correct copy of the original deposition of

 9    _____, taken on _____,

10    2008.

11          I declare under penalty of perjury under the

12    laws of the State of California that the foregoing is

13    true and correct.

14

15          Dated this _____ day of _____,

16    2008.

17

18

19          _____

20          Linda Ellingson, CSR No. 12256

21

22

23

24

25
```

```
 1                      CERTIFICATION
 2            I, the undersigned, a Certified Shorthand
 3   Reporter in the State of California, hereby certify that
 4   the witness in the foregoing deposition was by me duly
 5   sworn to testify to the truth, the whole truth, and
 6   nothing but the truth in the within-entitled cause; that
 7   said deposition was taken at the time and place therein
 8   stated; that the testimony of said witness was reported
 9   by me, a Certified Shorthand Reporter and a
10   disinterested person, and was thereafter transcribed
11   under my direction into typewriting; that the foregoing
12   is a full, complete and true record of said testimony;
13   and that the witness was given an opportunity to read
14   and, if necessary, correct said deposition and to
15   subscribe the same.
16            I further certify that I am not of counsel or
17   attorney for either or any of the parties in the
18   foregoing deposition and caption named, nor in any way
19   interested in the outcome of the cause named in said
20   action.
21            IN WITNESS WHEREOF, I have hereunto set my
22   hand this _____ day of _____, 2008.
23
24            _____
25            LINDA ELLINGSON, CSR No. 12256
```

Exhibit D

RECEIVED

MAR 2 0 2008

REED SMITH

1   MICHAEL E. KINNEY
    Bar No. 77018
2   Law Office of Michael E. Kinney
    438 First St.
3   Fourth Floor
    Santa Rosa, CA  95401
4   (707) 527-4141
    Fax (707) 579-9561
5   kinney@kinnlaw.com

6   Attorney for Plaintiff
    DONNA MATHEWS

7

8

9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11

12   DONNA MATHEWS,                      No.  C 07-02757 SBA

13                                       PLAINTIFF'S RESPONSES TO
              Plaintiff,                 DEFENDANT'S FIRST SET OF
14                                       INTERROGATORIES

     vs.
15
     PAN AMERICAN LIFE INSURANCE
16   COMPANY; and DOE 1 through Doe 20,
     Inclusive,
17
              Defendants.
18   _____/

19

20        COMES NOW Plaintiff DONNA MATHEWS, and, pursuant to Rule 33 of the

21   Federal Rules of Civil Procedure, responds to Defendant's Interrogatories.  Plaintiff has not

22   completed her investigation of the facts relating to this case, has not fully completed her discovery

23   in this action and has not completed her preparation for the trial.  Plaintiff's responses to the

24   interrogatories summarize information collected in a reasonable and good faith effort to obtain the

25   information requested in the interrogatories, in accord with Plaintiff's understanding of the fair

26   intent of the interrogatories, but Plaintiff's discovery and investigation in this action are

27   continuing.  It is anticipated that further discovery, independent investigation, legal research and

28   analysis will supply additional facts, add meaning to the known facts, as well as establish entirely

---

1

1  new factual conclusions and legal contentions, all of which may lead to additions, corrections or

2  amendments to Plaintiff's pleadings and/or responses to the interrogatories.  Plaintiff expressly

3  reserves the right to make such additions, corrections and amendments, to call at trial witnesses

4  who would have been identified, and to introduce at trial evidence which would have been

5  summarized, in response to the interrogatories had such witnesses and evidence been known to

6  Plaintiff at the time of these responses.

7           Plaintiff does not understand the interrogatories to require recitation of information

8  previously elicited and/or the identity of documents or witnesses previously identified by the parties

9  in discovery, in disclosure made pursuant to Rule 26 of the Federal Rules of Civil Procedure or

10 otherwise revealed in documents produced or on file in this action.  Plaintiff expressly reserves the

11 right to present such evidence and witnesses at trial.  To the extent that any of the interrogatories

12 might be construed to require such duplicative recitation of information, Plaintiff objects to each

13 such interrogatory on the grounds that it is overly broad, unduly burdensome, repetitive,

14 redundant, duplicative and requests information as readily available to Defendant as to Plaintiff.

15 Plaintiff expressly reserves the right to present such evidence and witnesses at trial.

16          Plaintiff's responses are made solely for the purpose of furthering discovery in this

17 action, and each response, and all of the information set out therein, is made subject to, and

18 without waiver of, all appropriate objections which would require exclusion of any of the disclosed

19 information from evidence at trial, to the full extent that any interrogatory would be objectionable

20 if asked of a witness at trial, including, but not limited to, objections on the grounds of

21 incompetency, irrelevance, immateriality, impropriety and privilege.  All such objections are

22 hereby reserved by Plaintiff to be interposed at trial or at other appropriate time in this action.

23 Plaintiff's willingness to provide information in response to an interrogatory is not an admission

24 that such information is discoverable or that it constitutes admissible evidence, and Plaintiff's

25 present disclosure of the information is not to be construed as a waiver of any proper objection to

26 the use or admissibility of the information, or to further inquiry into the subject matter of the

27 information, at trial or at other time in this action.

28          Plaintiff does not understand any of the interrogatories to refer, relate to or seek

1   disclosure of any communication between Plaintiff and her attorneys in this action or in any other

2   legal matter or to seek disclosure of any information protected by the attorney work product

3   doctrine, and to the extent that any of the interrogatories was intended or might be construed to

4   seek such disclosure, Plaintiff objects to each such interrogatory on the grounds of attorney-client

5   privilege and/or the attorney work product doctrine.  Such privileged and protected information

6   shall not be provided, and any inadvertent disclosure or production thereof shall not constitute a

7   knowing, intentional or continuing waiver of any privilege or protection.

8            The foregoing general responses and objections are incorporated by this reference into

9   each of the specific responses set out below, and each such response is made subject to, and

10  without waiver of, these general responses and objections and to any objection (including

11  objections relating to privilege, work product protection, competence, relevance, materiality and

12  admissibility) which, if interposed at trial, would result in the exclusion of any requested document

13  from evidence at trial.  All such objections are hereby expressly reserved by Plaintiff to be

14  interposed at trial or at other appropriate time in this action.

15

16                                **SPECIFIC RESPONSES**

17

18  INTERROGATORY NO. 1:

19            Identify (by providing the name, address, telephone number and dates of visits) all

20  healthcare providers, including but not limited to physicians, nurses, physical therapists,

21  occupational therapists or other caregivers whom YOU have seen for treatment or consulted in

22  connection with YOUR DISABILITY.

23

24  RESPONSE TO INTERROGATORY NO. 1:

25            Objection: harassing and asked in furtherance of Defendant's bad faith. Not

26  reasonably calculated to lead to the discovery of admissible evidence as Defendant has admitted

27  that Plaintiff is disabled within the meaning of the policies at issue in this matter and is paying

28  Plaintiff certain policy benefits.  Without waiving these objections, Plaintiff responds to the best of

3

1    her recollection as follows:

2    Dr. Steven Smith
     4706 Hoen Ave,
3    Santa Rosa, CA 95405
     2/10/06
4
     Dr. Jamie Fitzgerald McMullan
5    1900 Cinnabar Ct.
     Calistoga, CA 94515
6    707-792-4388
     1/20/06 and ongoing
7
     Training Wellspring Physical Therapy
8    2436 Foothill Blvd.
     Calistoga, CA 94515
9    707-942-8094
     1/19/06 through 3/28/06
10
     Dr. Andrew Alexander
11   913 Washington St.
     Calistoga, CA 94515
12   707-942-6233
     1/19/06
13
     Dr. Eldan Eichbaum
14   525 Doyle Park Dr., No. 102
     Santa Rosa, CA 95405
15   707-523-1873
     3/7/06, 4/14/06
16
     Dr. Barry Brown
17   1222 Pine St.
     St. Helena, CA 94574
18   707-963-2711
19   Stanford Hospital
     Palo Alto, CA
20   11/06
21   Dr. Marko Bodor
     980 Trancas St
22   Napa, CA 94558
     707-255-5454
23
     St. Helena Physical Therapy
24   St. Helena, CA
     around 6/06
25

26   INTERROGATORY NO. 2:

27         Identify (by providing the name, address and telephone number) of all persons with

28   knowledge regarding the underlying facts of YOUR DISABILITY CLAIM.

4

1 RESPONSE TO INTERROGATORY NO. 2:

2       Objection: vague and ambiguous as the term "underlying facts" is unclear and not

3 properly defined.  Assuming that this interrogatory seeks the identity of persons who have personal

4 knowledge about the occurrence of the accident that caused Plaintiff's disability, Plaintiff responds:

5 Arthur Mathews
  26 View Rd.
6 Calistoga, CA  94515

7

8 INTERROGATORY NO. 3:

9       Identify (by providing the name of the insurance company and policy number) any

10 disability insurance policies you have had in force at any time from November 2005 to the present.

11

12 RESPONSE TO INTERROGATORY NO. 3:

13       Plaintiff was insured by Pan-American Life Insurance Company under the policies

14 which are the subject of this lawsuit.

15 INTERROGATORY NO. 4:

16       Identify all PERSONS (by providing the name, address, and telephone number) with

17 whom YOU communicated or consulted regarding any rehabilitation plan or program.

18

19 RESPONSE TO INTERROGATORY NO. 4:

20       Michael Jones and Elaine Bourg at Pan American Life Insurance Co.; Lori

21 Spiekerman and Patricia Stengle at the California Department of Rehabilitation, 50 D St., Room

22 425, Santa Rosa, CA  95404, 707-576-2233

23

24 INTERROGATORY NO. 5:

25       Identify all benefits YOU have received from any source in connection with YOUR

26 DISABILITY or any inability to work.

27

28

Plaintiff's Responses to First Set of Interrogatories   Case No. C 07-02757-SBA

RESPONSE TO INTERROGATORY NO. 5:

Objection: vague and ambiguous.  Without waiving that objection, Plaintiff responds that she has received the following benefits:  certain Disability Income Policy benefits and Income Continuation Policy benefits from Pan American Life Insurance Company; disability benefits from the California EDD; Social Security disability benefits; rehabilitation benefits from the California Department of Rehabilitation.

INTERROGATORY NO. 6:

Identify (by providing the date and the name and address of the PERSON performing the evaluation) all evaluations that have been conducted regarding YOUR ability or inability to engage in any employment or to participate in any activity.

RESPONSE TO INTERROGATORY NO. 6:

Objection: vague, ambiguous, overbroad and harassing and seeks information previously produced in this matter.  Without waiving these objections, Plaintiff responds that all written medical reports on this subject in Plaintiff's possession have previously been produced in this case.

INTERROGATORY NO. 7:

Describe in full and complete detail all facts which support YOUR contention that "Defendants improperly suspended all payments of Plaintiff's benefits on all of the Policies and made no payments whatsoever to Plaintiff from March 6, 2006 until July 13, 2006" as asserted in Paragraph 14 of the Complaint.

RESPONSE TO INTERROGATORY NO. 7:

Objection: vague and ambiguous.  Without waiving these objections, Plaintiff responds that Defendant began paying benefits on two of the three policies Plaintiff maintained with Defendant, but stopped paying benefits on those policies in March 2006 and made no

6

1   payments whatsoever to Plaintiff until July 13, 2006.  Payments should have been made during this

2   period as Plaintiff qualified for benefits during this time period.  Plaintiff is informed and believes

3   that Defendant maintains an unlawful policy and practice of ceasing benefits to policyholders at the

4   expiration of any period of identified as the initial prognosis on an Attending Physician Statement,

5   regardless of the true facts at the time benefits are terminated.  Plaintiff is also informed and

6   believes that Defendant knew, at the time it terminated Plaintiff's benefits in March 2006, that

7   Plaintiff remained disabled and had not returned to work.  Plaintiff is further informed and believes

8   that Defendant did not undertake a reasonable investigation to determine whether Plaintiff was

9   disabled or had returned to work prior to terminating Plaintiff's benefits, and that Defendant's

10  business practice is not to undertake any such investigation prior to terminating benefits.

11

12  INTERROGATORY NO. 8:

13          Describe in full and complete detail all facts which support YOUR contention that

14  "Defendants failed to pay any benefits on Policy No. 1257573 until September 2006. [. . .].  Since

15  September 2006, Defendants have never brought current the benefits payments due to Plaintiff, and

16  remain months in arrears on the payments due to Plaintiff" as asserted in Paragraph 15 of the

17  Complaint.

18

19  RESPONSE TO INTERROGATORY NO. 8:

20          Objection: vague and ambiguous. Without waiving these objections, Plaintiff responds

21  that Defendant never made any payments under that policy until September 2006.  In September

22  2006, Defendant began making payments, but paid Plaintiff three months in arrears.  Defendant

23  has still not brought the payments current.

24

25  INTERROGATORY NO. 9:

26          Describe in full and complete detail any rehabilitation program, including but not

27  limited to a detailed plan of treatment and estimated costs and estimated date of rehabilitation

28  completion, for which YOU claim you sought payment of rehabilitation benefits under the

7

1    disability insurance policies issued by PAN-AMERICAN to YOU.

2

3    RESPONSE TO INTERROGATORY NO. 9:

4        Objection: vague and ambiguous. Assuming that this Interrogatory asks for

5 information about the request for benefits made by Plaintiff to Defendant, and not about the

6 rehabilitation program Plaintiff subsequently underwent without the assistance of the benefits that

7 Defendant wrongfully withheld, Plaintiff responds as follows:

8        On July 21, 2006, Plaintiff wrote to Defendant and requested rehabilitation benefits as

9 provided in her policies to undertake a course of study leading to becoming a nurse. On August

10 23, 2006, Plaintiff again wrote to Defendant as follows:

11        "As you can imagine, dealing with a severe disability such as this one creates
enormous stress. I am no less saddled with financial commitments than before but I

12 am no longer able to work in my chosen profession of over thirty years that provided
me with an adequate income. I want to be a productive citizen once again and am

13 therefore pursuing a career change that will allow me to do this. Your insurance
policy is the bridge that will allow me the necessary funding to get there. Anticipating

14 a possible scenario such as this was the primary motivation for my purchasing your
company's coverage in the first place. Career retraining for me cannot possibly

15 happen without consistency on your part to cover my ongoing living expenses as well
as tuition, books and other student expenses. The program I am attempting is a

16 rigorous one, and I must have these issues settled so that I devote my full
concentration on performing well.

17        As for my rehabilitation plans, I previously began working on a Bachelor's Degree
but realized it would be of no benefit to my scope of practice, pay scale or work

18 setting. Now, all that is changed. For me to work as closely with patients in the
diagnosis, treatment planning and patient care in medicine as I did in dentistry, I will

19 have to earn at the least a Bachelor's Degree, but I am aiming for Nurse Practitioner
certification. This can begin at Santa Rosa Junior College, Napa Valley Junior

20 College, Pacific Union College, or Sonoma State University. I am currently enrolled
for fall, beginning today, in Anatomy at Santa Rosa J.C. I finished Physiology over

21 the summer and will be eligible to apply to the Nursing Program at Santa Rosa in
October of this year for the spring and fall of 2007. I will also pursue the application

22 processes for the other schools. The first step is a two year program, and the
possibilities are many to make the next step to Nurse Practitioner, but it will most

23 likely be an additional 2 years. A Nurse Practitioner certification will allow me
greater flexibility in my work setting and be the least detrimental to my disability.

24 This will provide me with more options in returning to the work force."

25        Defendant immediately denied Plaintiff the rehabilitation benefit to which Plaintiff

26 was entitled, without asking any further questions of Plaintiff or allowing her to explain any of the

27 details of her proposed plan further. Plaintiff is informed and believes that Defendant performed

28 no investigation and took no steps to ascertain any further details regarding Plaintiff's claim,

1  although certain information, such as the amount of tuition at the schools proposed by Plaintiff,

2  was easily ascertainable.

3          Had Defendant not breached its duty of good faith and fair dealing, Plaintiff would

4  have applied to enter the nursing program at Pacific Union College in St. Helena, California.

5  Plaintiff is informed and believes that the program would run for a duration of three and a half

6  years.  Plaintiff is informed and believes that tuition at that institution is about $22,000 per year.  I

7  addition, Plaintiff would have needed to purchase books, a suitable computer, computer programs,

8  miscellaneous supplies, transportation costs, and overnight accommodations that would be

9  necessary when she does clinical rotations away from home.  Plaintiff has not yet determined the

10  exact dollar value of these items.

11

12  INTERROGATORY NO. 10:

13          State the amount in disability benefits, not including rehabilitation benefits, which

14  YOU contend that PAN-AMERICAN owes but has not yet paid to YOU under the disability

15  insurance policies issued by PAN-AMERICAN to YOU.

16

17  RESPONSE TO INTERROGATORY NO. 10:

18          PAN AMERICAN is, and long has been, three months in arrears to Plaintiff.  Thus,

19  PAN AMERICAN LIFE INSURANCE CO. currently owes Plaintiff $8100 in addition to her

20  current monthly benefit.

21

22  INTERROGATORY NO. 11:

23          State the amount in premiums which YOU contend that PAN-AMERICAN has

24  improperly withdrawn from YOUR bank account in connection with the disability policies issued

25  by PAN-AMERICAN to YOU.

26

27  RESPONSE TO INTERROGATORY NO. 11:

28          Objection: vague and ambiguous.  Assuming this Interrogatory is limited to

9

1    withdrawals from Plaintiff's account, and does not address the various incorrect refunds PAN

2    AMERICAN engaged in, Plaintiff responds:

3              In March 2006 Defendant improperly withdrew $37.70 from Plaintiff's account. In

4    April 2006, Defendant improperly withdrew $1189.61. In May 2006, Defendant improperly

5    withdrew $37.70. In June 2006, Defendant improperly withdrew $142.97. In July 2006,

6    Defendant improperly withdrew $142.97. In August 2006, Defendant improperly withdrew

7    $37.70. Thus, the total is $1588.65.

8

9    INTERROGATORY NO. 12:

10              Describe in full and complete detail all facts which support YOUR contention that

11    PAN-AMERICAN's decision to deny YOUR claim for rehabilitation benefits was unreasonable, as

12    alleged in paragraph 25 of the Complaint.

13

14    RESPONSE TO INTERROGATORY NO. 12:

15              Objection: vague and ambiguous as to the term "full and complete detail" and cannot

16    be answered without speculating as to the meaning of that term. Without waiving that objections,

17    Plaintiff responds:

18              Plaintiff is informed and believes that Defendant's entire handling of Plaintiff's claims

19    was unreasonable. Plaintiff is informed and believes that Defendant does not have a claims manual

20    or any other written policies or procedures that offer any guidance to its claims personnel as to how

21    to handle claims that arise under the policies at issue in this lawsuit. Plaintiff is informed and

22    believes that Defendant is in violation of California law that requires such written policies and

23    guidelines and is in violation of the provisions of California law that require that certain content be

24    included in such written policies and guidelines. Plaintiff is informed and believes that

25    Defendant's claims personnel are inadequately trained on the legal requirements for adjusting

26    claims of the sort presented by Plaintiff and, in fact, are without any training on disability policies

27    or rehabilitation benefits, and are ignorant of fundamental principles of claims handling. Plaintiff

28    is informed and believes that Defendant's claims personnel are unaware of the requirements of

1  California law for handling claims like Plaintiff's. Plaintiff is informed and believes that

2  Defendant's claims personnel are unaware that California law requires that "every insurer shall

3  disclose to a first party claimant ... all benefits, coverage, time limits or other provisions of any

4  insurance policy issued by that insurer that may apply to the claim presented by the claimant."

5  Plaintiff is informed and believes that Defendant's claim personnel are instructed to do the exact

6  opposite of the law's requirement in that regard, and wilfully and intentionally do not provide

7  claimants with any benefits or other required information unless specifically requested by the

8  claimant.  Plaintiff is informed and believes that Defendant's claims personnel are also uninformed

9  that California law requires that a claim denial be in writing and "shall provide to the claimant a

10  statement listing all bases for such rejection or denial and the factual and legal bases for each

11  reason given for such rejection or denial which is then within the insurer's knowledge."  Plaintiff is

12  informed and believe that Defendant wilfully and intentionally fails and refuses to provide written

13  claims denials that comply with the requirements of California law.  Plaintiff is informed and

14  believes that Defendant ignored the requirements of California law when it cut off Plaintiff's

15  disability benefits without any notice whatsoever, without any investigation as to whether benefits

16  should be cut off, without a writing setting out the factual and legal bases for cutting off benefits,

17  and cut off benefits in spite of the fact that it had information that benefits were still payable and

18  that its secret reason for cutting off benefits was wrong.

19          Plaintiff is informed that each of the above wrongful acts is committed on a frequent

20  basis and is a business practice of Defendant, and is done by Defendant wilfully and intentionally

21  and in conscious disregard of the rights of its policyholders.

22          Plaintiff is informed and believes that Defendant maintains a business practice of

23  terminating disability benefits based on information contained in the initial Attending Physician

24  Statement, without further investigation, notice to the insured or consideration of new or contrary

25  information already received by Defendant.  Plaintiff is informed and believes that this practice is

26  unreasonable and illegal as a matter of California law.  Plaintiff is informed and believes that

27  Defendant utilized this unreasonable and illegal business practice in Plaintiff's case to terminate her

28  benefits.

1    Plaintiff is informed and believes that Defendant has a business practice of not

2    investigating claims for rehabilitation benefits, and instead relying solely on claimants to perform

3    the investigation that Defendant is legally required to perform.  Defendant failed and refused to

4    investigate Plaintiff's claim for rehabilitation benefits prior to denying it.

5    Plaintiff is informed and believes that Defendant has a pattern and practice of denying

6    claims for rehabilitation benefits without regard to the merits of the claim, and that Defendant is

7    unable to identify a single instance in which it granted rehabilitation benefits.  Plaintiff is informed

8    and believes that Defendant has predetermined never to pay any rehabilitation benefits, and that its

9    procedures and rationales regarding rehabilitation benefits are a sham to cover its predetermined

10    decision to deny all such claims.

11    Plaintiff is informed and believes that Defendant interprets the policy language

12    regarding rehabilitation benefits to require claimants to provide Defendant with overpowering

13    evidence as to the details of the proposed rehabilitation plan.  If a claimant fails to meet the

14    arbitrary requirements set by Defendant, but not communicated to claimants, the claim is denied

15    and the claimant is provided no opportunity to have the matter reviewed on appeal.  Plaintiff is

16    informed and believes that this interpretation of the policy is clearly erroneous under California

17    law.

18    Plaintiff's claim for rehabilitation benefits was denied by Defendant in a letter dated

19    August 25, 2006.  All Defendant's letter said about the denial of rehabilitation benefits was:  "As

20    for your rehabilitation plan Pan American Life will not be extending benefits."  Plaintiff is

21    informed and believes that this explanation of the reason for denial of her claim for benefits is

22    insufficient and illegal under California law. When Plaintiff attempted to find out where her plan

23    fell short of Defendant's requirements, Defendant refused to tell her.  When Plaintiff asked if she

24    could appeal the denial, Defendant refused to answer her question.  Plaintiff is informed and

25    believes that Defendant did not possess sufficient information to deny her request for rehabilitation

26    benefits, but denied them anyway without requesting further information or performing any

27    investigation to obtain further information.

28    When Plaintiff submitted her claim for disability insurance benefits, Defendant failed

12

1   and refused to determine what benefits were payable monthly to Plaintiff, and failed to pay

2   Plaintiff on a policy held by Plaintiff with Defendant.  When Plaintiff complained that the amount

3   of her benefit seemed smaller than she expected, Defendant falsely represented to her that

4   Defendant was paying the correct amount, when, in fact, Defendant was underpaying.  It was only

5   when Plaintiff, through her own efforts, discovered the existence of a policy benefit that was going

6   unpaid that Defendant owned up to the fact that it was underpaying Plaintiff and began paying the

7   additional benefit.

8        Defendant made numerous improper withdrawals of premiums from Plaintiff's bank

9   account, as detailed in response to Interrogatory No. 11, above.  When Plaintiff complained about

10  the improper withdrawals, Defendant failed and refused to properly account for the withdrawals or

11  to make refunds in the correct amount.  Only after Plaintiff complained to the California

12  Department of Insurance did Defendant finally reconcile its improper withdrawals and refund to

13  Plaintiff the full amount of premiums improperly withdrawn.

14       Defendant improperly stopped making payments of monthly disability benefits for

15  three months in 2006.  When it started making payments again, it failed to pay for the three

16  months during which payments had been stopped.  It continued to pay three months in arrears,

17  even after this lawsuit was filed specifically alleging that Defendant had not paid the past due

18  benefits, and to the date of these Answers to Interrogatories, Defendant continues to make

19  payments three months in arrears.  For a period of time, Defendant sent forms showing that the

20  payments were being made three months behind.  Some of the forms were undated, making it more

21  difficult to discern that Defendant was improperly paying in arrears.  Plaintiff is informed and

22  believes that Defendant failed to provide satisfactory "Explanations of Benefits" as required by

23  California law.  In March 2008, Defendant falsely and fraudulently represented to Plaintiff that it

24  was not paying Plaintiff in arrears, but instead was paying Plaintiff current.  Plaintiff is informed

25  and believes that Defendant knew or in the exercise of reasonable care should have known that this

26  representation was false and would be likely to mislead.

27       Due to the multiple problems created by Defendant's many unreasonable acts, as

28  aforesaid, Plaintiff complained to the California Department of Insurance and the Napa County

Plaintiff's Responses to First Set of Interrogatories   Case No. C 07-02757-SBA

1  District Attorney about Defendant's improper and illegal conduct. Plaintiff is informed and

2  believes that, in retaliation for those complaints, Defendant scheduled her for an Insurance

3  Company Medical Examination in Palo Alto California, although there were many qualified

4  doctors closer to Plaintiff's home. Plaintiff is also informed and believes that, at the same time

5  and as retaliation for Plaintiff's complaints, Defendant placed Plaintiff under surveillance.

6  Defendant even had Plaintiff under surveillance for the lengthy drive to Palo Alto, even though

7  Plaintiff's disability does not preclude her from driving.

8          Plaintiff is informed and believes that Defendant's unreasonable, intentional and bad

9  faith conduct has continued with its handling of the instant litigation. Plaintiff is informed and

10  believes that Defendant has failed and refused to admit that Plaintiff is, and at relevant times was,

11  disabled within the meaning of the insurance policies here at issue. Plaintiff is informed and

12  believes that Defendant is aware that Plaintiff is and was disabled, that Defendant engaged in an

13  extraordinarily detailed review of Plaintiff's claims to determine that she was disabled, including

14  placing Plaintiff under surveillance and requiring Plaintiff to be examined by a physician selected

15  by Defendant. Plaintiff is informed and believes that the reason Defendant refuses to admit these

16  facts which it knows to be true is in bad faith to make this litigation more expensive for Plaintiff.

17          Investigation and discovery are continuing, and further facts regarding Defendant's

18  unreasonable conduct may come to light during discovery or at trial.

19

20  INTERROGATORY NO. 13:

21          Describe in full and complete detail all facts which support YOUR contention that

22  YOU have "suffered and continue[] to suffer injury, embarrassment, humiliation and mental

23  anguish all to her damage in an amount according to proof" as alleged in paragraphs 27, 33, 37, 43

24  and 47 of the Complaint.

25

26  RESPONSE TO INTERROGATORY NO. 13:

27          Beginning with the injuries suffered from her fall off the ladder in November 2005,

28  Plaintiff has been in pain. Only someone who has suffered chronic pain can understand the fatigue

1   that must be overcome in dealing with it.  Plaintiff has mustered all of her energy and resources in

2   pursuit of a new career and has managed to move forward on that front despite Defendant's bad

3   faith failure to provide rehabilitation benefits and Defendant's numerous other wrongful acts as

4   explained in answers to these Interrogatories.  Plaintiff has spent countless hours, at first

5   individually, then with the help of the state, and finally with a lawyer, in a futile attempt to get

6   cooperation from Defendant, not only for her living expenses, but for her re-education that was

7   clearly offered in the policies she was sold and which she faithfully paid for approximately fifteen

8   years.  This entire process has been extremely draining and upsetting and has caused and continues

9   to cause Plaintiff to suffer.

10

11   INTERROGATORY NO. 14:

12         Describe in full and complete detail all facts which support YOUR contention that

13   YOU are entitled to punitive damages as alleged in paragraphs 28, 34, and 44 of the Complaint.

14

15   RESPONSE TO INTERROGATORY NO. 14:

16         Objection: vague and ambiguous as to the term "full and complete detail" and cannot

17   be answered without speculating as to the meaning of that term.  Without waiving that objections,

18   Plaintiff responds:

19         Plaintiff is informed and believes that Defendant's entire handling of Plaintiff's claims

20   was unreasonable.  Plaintiff is informed and believes that Defendant does not have a claims manual

21   or any other written policies or procedures that offer any guidance to its claims personnel as to how

22   to handle claims that arise under the policies at issue in this lawsuit.  Plaintiff is informed and

23   believes that Defendant is in violation of California law that requires such written policies and

24   guidelines and is in violation of the provisions of California law that require that certain content be

25   included in such written policies and guidelines.  Plaintiff is informed and believes that

26   Defendant's claims personnel are inadequately trained on the legal requirements for adjusting

27   claims of the sort presented by Plaintiff and, in fact, are without any training on disability policies

28   or rehabilitation benefits, and are ignorant of fundamental principles of claims handling.  Plaintiff

1    is informed and believes that Defendant's claims personnel are unaware of the requirements of

2    California law for handling claims like Plaintiff's. Plaintiff is informed and believes that

3    Defendant's claims personnel are unaware that California law requires that "every insurer shall

4    disclose to a first party claimant ... all benefits, coverage, time limits or other provisions of any

5    insurance policy issued by that insurer that may apply to the claim presented by the claimant."

6    Plaintiff is informed and believes that Defendant's claim personnel are instructed to do the exact

7    opposite of the law's requirement in that regard, and wilfully and intentionally do not provide

8    claimants with any benefits or other required information unless specifically requested by the

9    claimant.  Plaintiff is informed and believes that Defendant's claims personnel are also uninformed

10   that California law requires that a claim denial be in writing and "shall provide to the claimant a

11   statement listing all bases for such rejection or denial and the factual and legal bases for each

12   reason given for such rejection or denial which is then within the insurer's knowledge."  Plaintiff is

13   informed and believe that Defendant wilfully and intentionally fails and refuses to provide writt

14   claims denials that comply with the requirements of California law.  Plaintiff is informed and

15   believes that Defendant ignored the requirements of California law when it cut off Plaintiff's

16   disability benefits without any notice whatsoever, without any investigation as to whether benefits

17   should be cut off, without a writing setting out the factual and legal bases for cutting off benefits,

18   and cut off benefits in spite of the fact that it had information that benefits were still payable and

19   that its secret reason for cutting off benefits was wrong.

20        Plaintiff is informed that each of the above wrongful acts is committed on a frequent

21   basis and is a business practice of Defendant, and is done by Defendant wilfully and intentionally

22   and in conscious disregard of the rights of its policyholders.

23        Plaintiff is informed and believes that Defendant maintains a business practice of

24   terminating disability benefits based on information contained in the initial Attending Physician

25   Statement, without further investigation, notice to the insured or consideration of new or contrary

26   information already received by Defendant.  Plaintiff is informed and believes that this practice is

27   unreasonable and illegal as a matter of California law.  Plaintiff is informed and believes that

28   Defendant utilized this unreasonable and illegal business practice in Plaintiff's case to terminate her

1    benefits.

2         Plaintiff is informed and believes that Defendant has a business practice of not

3    investigating claims for rehabilitation benefits, and instead relying solely on claimants to perform

4    the investigation that Defendant is legally required to perform.  Defendant failed and refused to

5    investigate Plaintiff's claim for rehabilitation benefits prior to denying it.

6         Plaintiff is informed and believes that Defendant has a pattern and practice of denying

7    claims for rehabilitation benefits without regard to the merits of the claim, and that Defendant is

8    unable to identify a single instance in which it granted rehabilitation benefits.  Plaintiff is informed

9    and believes that Defendant has predetermined never to pay any rehabilitation benefits, and that its

10   procedures and rationales regarding rehabilitation benefits are a sham to cover its predetermined

11   decision to deny all such claims.

12        Plaintiff is informed and believes that Defendant interprets the policy language

13   regarding rehabilitation benefits to require claimants to provide Defendant with overpowering

14   evidence as to the details of the proposed rehabilitation plan.  If a claimant fails to meet the

15   arbitrary requirements set by Defendant, but not communicated to claimants, the claim is denied

16   and the claimant is provided no opportunity to have the matter reviewed on appeal.  Plaintiff is

17   informed and believes that this interpretation of the policy is clearly erroneous under California

18   law.

19        Plaintiff's claim for rehabilitation benefits was denied by Defendant in a letter dated

20   August 25, 2006.  All Defendant's letter said about the denial of rehabilitation benefits was:  "As

21   for your rehabilitation plan Pan American Life will not be extending benefits."  Plaintiff is

22   informed and believes that this explanation of the reason for denial of her claim for benefits is

23   insufficient and illegal under California law. When Plaintiff attempted to find out where her plan

24   fell short of Defendant's requirements, Defendant refused to tell her.  When Plaintiff asked if she

25   could appeal the denial, Defendant refused to answer her question.  Plaintiff is informed and

26   believes that Defendant did not possess sufficient information to deny her request for rehabilitation

27   benefits, but denied them anyway without requesting further information or performing any

28   investigation to obtain further information.

17

1    When Plaintiff submitted her claim for disability insurance benefits, Defendant failed

2    and refused to determine what benefits were payable monthly to Plaintiff, and failed to pay

3    Plaintiff on a policy held by Plaintiff with Defendant.  When Plaintiff complained that the amount

4    of her benefit seemed smaller than she expected, Defendant falsely represented to her that

5    Defendant was paying the correct amount, when, in fact, Defendant was underpaying.  It was only

6    when Plaintiff, through her own efforts, discovered the existence of a policy benefit that was going

7    unpaid that Defendant owned up to the fact that it was underpaying Plaintiff and began paying the

8    additional benefit.

9    Defendant made numerous improper withdrawals of premiums from Plaintiff's bank

10   account, as detailed in response to Interrogatory No. 11, above.  When Plaintiff complained about

11   the improper withdrawals, Defendant failed and refused to properly account for the withdrawals or

12   to make refunds in the correct amount.  Only after Plaintiff complained to the California

13   Department of Insurance did Defendant finally reconcile its improper withdrawals and refund to

14   Plaintiff the full amount of premiums improperly withdrawn.

15   Defendant improperly stopped making payments of monthly disability benefits for

16   three months in 2006.  When it started making payments again, it failed to pay for the three

17   months during which payments had been stopped.  It continued to pay three months in arrears,

18   even after this lawsuit was filed specifically alleging that Defendant had not paid the past due

19   benefits, and to the date of these Answers to Interrogatories, Defendant continues to make

20   payments three months in arrears.  For a period of time, Defendant sent forms showing that the

21   payments were being made three months behind.  Some of the forms were undated, making it more

22   difficult to discern that Defendant was improperly paying in arrears.  Plaintiff is informed and

23   believes that Defendant failed to provide satisfactory "Explanations of Benefits" as required by

24   California law.  In March 2008, Defendant falsely and fraudulently represented to Plaintiff that it

25   was not paying Plaintiff in arrears, but instead was paying Plaintiff current.  Plaintiff is informed

26   and believes that Defendant knew or in the exercise of reasonable care should have known that this

27   representation was false and would be likely to mislead.

28   Due to the multiple problems created by Defendant's many unreasonable acts, as

1    aforesaid, Plaintiff complained to the California Department of Insurance and the Napa County

2    District Attorney about Defendant's improper and illegal conduct.  Plaintiff is informed and

3    believes that, in retaliation for those complaints, Defendant scheduled her for an Insurance

4    Company Medical Examination in Palo Alto California, although there were many qualified

5    doctors closer to Plaintiff's home.  Plaintiff is also informed and believes that, at the same time

6    and as retaliation for Plaintiff's complaints, Defendant placed Plaintiff under surveillance.

7    Defendant even had Plaintiff under surveillance for the lengthy drive to Palo Alto, even though

8    Plaintiff's disability does not preclude her from driving.

9              Plaintiff is informed and believes that Defendant's unreasonable, intentional and bad

10   faith conduct has continued with its handling of the instant litigation. Plaintiff is informed and

11   believes that Defendant has failed and refused to admit that Plaintiff is, and at relevant times was,

12   disabled within the meaning of the insurance policies here at issue.  Plaintiff is informed and

13   believes that Defendant is aware that Plaintiff is and was disabled, that Defendant engaged in an

14   extraordinarily detailed review of Plaintiff's claims to determine that she was disabled, including

15   placing Plaintiff under surveillance and requiring Plaintiff to be examined by a physician selected

16   by Defendant.  Plaintiff is informed and believes that the reason Defendant refuses to admit these

17   facts which it knows to be true is in bad faith to make this litigation more expensive for Plaintiff.

18             Plaintiff is informed and believes that Defendant made the representations set out in

19   answer to Interrogatory No. 15 with knowledge that said representations were false, without any

20   reasonable basis for knowing that they were true, with the intention of misleading potential

21   customers into purchasing insurance from Defendant.  Plaintiff reasonable relied upon said

22   representations.

23             Plaintiff is informed and believes that each of the above actions was done

24   intentionally, fraudulently, and in conscious disregard of Plaintiff's rights, in bad faith, in violation

25   of Defendant's duty of good faith and fair dealing.  Plaintiff is informed and believes that the

26   above acts were performed as business practices and policies formulated and implemented by

27   Defendant.  Plaintiff is informed and believes that each of the above acts was performed by

28   Defendant's employees at the direction of Defendant and that each of the above acts was ratified by

1  Defendant.

2          Investigation and discovery are continuing, and further facts supporting punitive

3  damages may come to light during discovery or at trial.

4

5  INTERROGATORY NO. 15:

6          Identify in full and complete detail the "representations contained in Defendants'

7  advertising and in the Policies" that were false as alleged in paragraphs 30 and 31 of the

8  Complaint.

9

10  RESPONSE TO INTERROGATORY NO. 15:

11          Objection: vague and ambiguous as to the term "full and complete detail."  Without

12  waiving that objection, Plaintiff responds:

13          Pan American made the following written representations outside the policy:

14              "We are here to serve you."

15              "As our policyholder, your satisfaction is very important to us."

16              "Should you have a claim, we fully expect to provide a fair settlement in a timely

17          fashion."

18              " The Monthly Benefit . .  will be paid after 60 days of total disability.  The

19          benefit will continue for a Maximum Period of 5 years.'

20              "Rehabilitation - The Company will pay up to 24 times the Monthly Benefit for a

21          Company approved rehabilitation program."

22              "Waiver of Premium - After ninety days of total or residual disability, the policy

23          premiums will be waived during continued disability until age 65."

24          In addition, the policies contain representations under the following headings:

25              Monthly benefit payments; rehabilitation; waiver of premium; premium refund; time

26  of payment of claim; and total disability.

27

28  INTERROGATORY NO. 16:

1          State the amount(s) that YOU are claiming in economic damages in this action and the

2    basis for YOUR computation of economic damages.

3

4    RESPONSE TO INTERROGATORY NO. 16:

5          Plaintiff is seeking economic damages for Defendant's failure to pay her claim for

6    rehabilitation benefits, as set out in response to Interrogatory No. 9, above, and failure to pay her

7    disability benefits in full, as set out in response to Interrogatory No. 10, above.

8

9    INTERROGATORY NO. 19:

10         State the amount(s) that you are claiming in non-economic damages in this action and

11   the basis for YOUR computation of non-economic damages.

12

13   RESPONSE TO INTERROGATORY NO. 19:

14         Plaintiff has not made a claim for a specific amount of non-economic damages.  At

15   the time of trial, the jury will determine what amount of non-economic damages is appropriate.

16

17   INTERROGATORY NO. 19 (sic):

18         State the amount that YOU are claiming in attorneys' fees in this action.

19

20   RESPONSE TO INTERROGATORY NO. 19:

21         Plaintiff has not made a claim for a specific amount of attorney fees, and cannot do so

22   at this time because the amount of attorney fees cannot be determined until the conclusion of the

23   case.  Plaintiff is informed and believes that a Court would likely determine that $400 per hour is a

24   reasonable hourly fee for Plaintiff's counsel.

25

26   INTERROGATORY NO. 19 (sic):

27         State in detail all facts which YOU contend support YOUR contention that PAN-

28   AMERICAN is liable for YOUR damages.

21

1  RESPONSE TO INTERROGATORY NO. 19:

2          Objection:  This Interrogatory is compound to the extent that it seeks information

3  about each of the allegations of the Complaint.  To the extent that it does that, it violates the limit

4  on the number of interrogatories.  Further, it is vague and ambiguous and calls for information

5  protected by the attorney work product privilege, in that it seeks attorney theory as to what facts to

6  emphasize out of the numerous facts of this case which demonstrate that Defendant is liable.

7  Further, its is vague and ambiguous as to the term "in detail" and cannot be answered without

8  speculating as to the meaning of that term.  Further, the term "damages" is vague and ambiguous.

9  For the purpose of this response, Plaintiff assumes that the term "damages" does not include

10  punitive damages, which are the subject of another Interrogatory.  Also, for the purpose of this

11  Interrogatory, Plaintiff assumes that the term "liable for YOUR damages" as used in this

12  Interrogatory asks about the wrongful acts committed by Defendant that give rise to liability.

13  Without waiving that objections, Plaintiff responds:

14          Plaintiff is informed and believes that Defendant's entire handling of Plaintiff's claims

15  was unreasonable.  Plaintiff is informed and believes that Defendant does not have a claims manual

16  or any other written policies or procedures that offer any guidance to its claims personnel as to how

17  to handle claims that arise under the policies at issue in this lawsuit.  Plaintiff is informed and

18  believes that Defendant is in violation of California law that requires such written policies and

19  guidelines and is in violation of the provisions of California law that require that certain content be

20  included in such written policies and guidelines.  Plaintiff is informed and believes that

21  Defendant's claims personnel are inadequately trained on the legal requirements for adjusting

22  claims of the sort presented by Plaintiff and, in fact, are without any training on disability policies

23  or rehabilitation benefits, and are ignorant of fundamental principles of claims handling.  Plaintiff

24  is informed and believes that Defendant's claims personnel are unaware of the requirements of

25  California law for handling claims like Plaintiff's.  Plaintiff is informed and believes that

26  Defendant's claims personnel are unaware that California law requires that "every insurer shall

27  disclose to a first party claimant ... all benefits, coverage, time limits or other provisions of any

28  insurance policy issued by that insurer that may apply to the claim presented by the claimant."

1    Plaintiff is informed and believes that Defendant's claim personnel are instructed to do the exact

2    opposite of the law's requirement in that regard, and wilfully and intentionally do not provide

3    claimants with any benefits or other required information unless specifically requested by the

4    claimant.  Plaintiff is informed and believes that Defendant's claims personnel are also uninformed

5    that California law requires that a claim denial be in writing and "shall provide to the claimant a

6    statement listing all bases for such rejection or denial and the factual and legal bases for each

7    reason given for such rejection or denial which is then within the insurer's knowledge."  Plaintiff is

8    informed and believe that Defendant wilfully and intentionally fails and refuses to provide writt

9    claims denials that comply with the requirements of California law.  Plaintiff is informed and

10   believes that Defendant ignored the requirements of California law when it cut off Plaintiff's

11   disability benefits without any notice whatsoever, without any investigation as to whether benefits

12   should be cut off, without a writing setting out the factual and legal bases for cutting off benefits,

13   and cut off benefits in spite of the fact that it had information that benefits were still payable and

14   that its secret reason for cutting off benefits was wrong.

15         Plaintiff is informed that each of the above wrongful acts is committed on a frequent

16   basis and is a business practice of Defendant, and is done by Defendant wilfully and intentionally

17   and in conscious disregard of the rights of its policyholders.

18         Plaintiff is informed and believes that Defendant maintains a business practice of

19   terminating disability benefits based on information contained in the initial Attending Physician

20   Statement, without further investigation, notice to the insured or consideration of new or contrary

21   information already received by Defendant.  Plaintiff is informed and believes that this practice is

22   unreasonable and illegal as a matter of California law.  Plaintiff is informed and believes that

23   Defendant utilized this unreasonable and illegal business practice in Plaintiff's case to terminate her

24   benefits.

25         Plaintiff is informed and believes that Defendant has a business practice of not

26   investigating claims for rehabilitation benefits, and instead relying solely on claimants to perform

27   the investigation that Defendant is legally required to perform.  Defendant failed and refused to

28   investigate Plaintiff's claim for rehabilitation benefits prior to denying it.

1    Plaintiff is informed and believes that Defendant has a pattern and practice of denying

2    claims for rehabilitation benefits without regard to the merits of the claim, and that Defendant is

3    unable to identify a single instance in which it granted rehabilitation benefits.  Plaintiff is informed

4    and believes that Defendant has predetermined never to pay any rehabilitation benefits, and that its

5    procedures and rationales regarding rehabilitation benefits are a sham to cover its predetermined

6    decision to deny all such claims.

7    Plaintiff is informed and believes that Defendant interprets the policy language

8    regarding rehabilitation benefits to require claimants to provide Defendant with overpowering

9    evidence as to the details of the proposed rehabilitation plan.  If a claimant fails to meet the

10   arbitrary requirements set by Defendant, but not communicated to claimants, the claim is denied

11   and the claimant is provided no opportunity to have the matter reviewed on appeal.  Plaintiff is

12   informed and believes that this interpretation of the policy is clearly erroneous under California

13   law.

14   Plaintiff's claim for rehabilitation benefits was denied by Defendant in a letter dated

15   August 25, 2006.  All Defendant's letter said about the denial of rehabilitation benefits was:  "As

16   for your rehabilitation plan Pan American Life will not be extending benefits."  Plaintiff is

17   informed and believes that this explanation of the reason for denial of her claim for benefits is

18   insufficient and illegal under California law. When Plaintiff attempted to find out where her plan

19   fell short of Defendant's requirements, Defendant refused to tell her.  When Plaintiff asked if she

20   could appeal the denial, Defendant refused to answer her question.  Plaintiff is informed and

21   believes that Defendant did not possess sufficient information to deny her request for rehabilitation

22   benefits, but denied them anyway without requesting further information or performing any

23   investigation to obtain further information.

24   When Plaintiff submitted her claim for disability insurance benefits, Defendant failed

25   and refused to determine what benefits were payable monthly to Plaintiff, and failed to pay

26   Plaintiff on a policy held by Plaintiff with Defendant.  When Plaintiff complained that the amount

27   of her benefit seemed smaller than she expected, Defendant falsely represented to her that

28   Defendant was paying the correct amount, when, in fact, Defendant was underpaying.  It was only

1    when Plaintiff, through her own efforts, discovered the existence of a policy benefit that was going

2    unpaid that Defendant owned up to the fact that it was underpaying Plaintiff and began paying the

3    additional benefit.

4           Defendant made numerous improper withdrawals of premiums from Plaintiff's bank

5    account, as detailed in response to Interrogatory No. 11, above.  When Plaintiff complained about

6    the improper withdrawals, Defendant failed and refused to properly account for the withdrawals or

7    to make refunds in the correct amount.  Only after Plaintiff complained to the California

8    Department of Insurance did Defendant finally reconcile its improper withdrawals and refund to

9    Plaintiff the full amount of premiums improperly withdrawn.

10          Defendant improperly stopped making payments of monthly disability benefits for

11   three months in 2006.  When it started making payments again, it failed to pay for the three

12   months during which payments had been stopped.  It continued to pay three months in arrears,

13   even after this lawsuit was filed specifically alleging that Defendant had not paid the past due

14   benefits, and to the date of these Answers to Interrogatories, Defendant continues to make

15   payments three months in arrears.  For a period of time, Defendant sent forms showing that the

16   payments were being made three months behind.  Some of the forms were undated, making it more

17   difficult to discern that Defendant was improperly paying in arrears.  Plaintiff is informed and

18   believes that Defendant failed to provide satisfactory "Explanations of Benefits" as required by

19   California law.  In March 2008, Defendant falsely and fraudulently represented to Plaintiff that it

20   was not paying Plaintiff in arrears, but instead was paying Plaintiff current.  Plaintiff is informed

21   and believes that Defendant knew or in the exercise of reasonable care should have known that this

22   representation was false and would be likely to mislead.

23          Due to the multiple problems created by Defendant's many unreasonable acts, as

24   aforesaid, Plaintiff complained to the California Department of Insurance and the Napa County

25   District Attorney about Defendant's improper and illegal conduct.  Plaintiff is informed and

26   believes that, in retaliation for those complaints, Defendant scheduled her for an Insurance

27   Company Medical Examination in Palo Alto California, although there were many qualified

28   doctors closer to Plaintiff's home.  Plaintiff is also informed and believes that, at the same time

1   and as retaliation for Plaintiff's complaints, Defendant placed Plaintiff under surveillance.

2   Defendant even had Plaintiff under surveillance for the lengthy drive to Palo Alto, even though

3   Plaintiff's disability does not preclude her from driving.

4          Plaintiff is informed and believes that Defendant made the representations set out in

5   answer to Interrogatory No. 15 with knowledge that said representations were false, without any

6   reasonable basis for knowing that they were true, with the intention of misleading potential

7   customers into purchasing insurance from Defendant.  Plaintiff reasonable relied upon said

8   representations.

9          Plaintiff is informed and believes that Defendant's unreasonable, intentional and bad

10  faith conduct has continued with its handling of the instant litigation. Plaintiff is informed and

11  believes that Defendant has failed and refused to admit that Plaintiff is, and at relevant times was,

12  disabled within the meaning of the insurance policies here at issue.  Plaintiff is informed and

13  believes that Defendant is aware that Plaintiff is and was disabled, that Defendant engaged in an

14  extraordinarily detailed review of Plaintiff's claims to determine that she was disabled, including

15  placing Plaintiff under surveillance and requiring Plaintiff to be examined by a physician selected

16  by Defendant.  Plaintiff is informed and believes that the reason Defendant refuses to admit these

17  facts which it knows to be true is in bad faith to make this litigation more expensive for Plaintiff.

18         Investigation and discovery are continuing, and further facts supporting liability may

19  come to light during discovery or at trial.

20

21  INTERROGATORY NO. 20:

22         Identify any and all specific activities and/or employment that YOU have been

23  qualified, approved or cleared to perform by any health care professional, occupational or physical

24  therapist, or state or federal agency.

25

26  RESPONSE TO INTERROGATORY NO. 20:

27         Nurse.

28

1  INTERROGATORY NO. 21:

2          Identify all DOCUMENTS which support YOUR responses in Interrogatory Nos. 1

3  through 20 above.

4

5  RESPONSE TO INTERROGATORY NO. 21:

6          Objection: vague and ambiguous.   Without waiving this objection, Plaintiff responds:

7  the documents previously produced in this matter by the parties hereto, and the documents being

8  produced in response to Defendant's First Request to Produce.

9  Dated: March 19, 2008                          LAW OFFICE OF MICHAEL E. KINNEY

10

11                                      By: _____

12                                          Michael E. Kinney
                                            Attorney for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE BY MAIL - CCP 1013a, 2015.5

I declare that:

I am employed in the County of Sonoma, California. I am over the age of eighteen years and not a party to the within entitled cause; my business address is: Law Offices of Michael E. Kinney, 438 First St., Fourth Floor, Santa Rosa, CA 95401. I am readily familiar with said law firm's practice for collection and processing of correspondence for mailing with the U.S. Postal Service. In the ordinary course of business, correspondence is deposited with the U.S. Postal Service the same day.

On March 19, 2008, I served the attached **PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES** in this action by placing a true copy thereof in an envelope, which on the same date, at said law firm, was sealed and placed for deposit in the U.S. Postal Service, pursuant to said law firm's ordinary business practices for collection and mailing. Each envelope bore the name and address of the person served as follows:

Thomas A. Evans, Esq.
REED SMITH LLP
P.O. Box 2084
Oakland, CA 94604-2084                    Attorney for Defendant


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 19, 2008 at Santa Rosa, California.


_____Michael E. Kinney_____          _Michl E. Kinney_____

**VERIFICATION TO FOLLOW**