MICHAEL E. KINNEY
Bar No. 77018
Law Office of Michael E. Kinney
438 First St.
Fourth Floor
Santa Rosa, CA  95401
(707) 527-4141
Fax (707) 579-9561
kinney@kinnlaw.com

Attorney for Plaintiff
DONNA MATHEWS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA MATHEWS,<br><br>    Plaintiff,<br><br>vs.<br><br>PAN AMERICAN LIFE INSURANCE COMPANY; and DOE 1 through Doe 20, Inclusive,<br><br>    Defendants.<br>_____/ | No.  C 07-02757 SBA<br><br>DECLARATION OF DONNA MATHEWS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Date:  June 10, 2008<br>Time:  1:00 p.m.<br>Ctrm:  3 |

I, Donna Mathews, declare:

1.  I am the Plaintiff in the above matter.  Prior to becoming disabled in 2005, I worked as a dental hygienist.  I began working as a dental hygienist in 1976, and worked regularly at that profession until my disability.

2.  In 1991, I decided to purchase a long term disability insurance policy. My husband is a public school teacher, and we really need both of our incomes.  I knew that the occupation of dental hygienist carried with it the potential for a career ending disability because of the awkward way we have to sit and the fine, accurate movements we need to maintain.  I knew

1

1 | that if I became disabled as a dental hygienist, I would want to try to work at something else.

3. I discussed long term disability policies with my insurance broker, Scott Klohe. I then selected a policy from Pan American Life Insurance Company. Particularly important to me in selecting this policy was the fact that it provided a benefit for vocational rehabilitation. I felt that this provision would give me the best chance to get back into the work force in a position similar in pay and challenges to dental hygiene if I were to become disabled.

4. Around the time I purchased the policy, I looked at the policy and at documents outside the policy that were provided by Pan American. One of the things I looked at was the Disability Income Protection Plan 2A+ Consumer's Guide, a copy of which is attached hereto as Exhibit A. From this document, I understood that Pan American was a reputable insurance company that offered insurance that built in elements that I would have to pay extra for with another company. One of the most important provisions had to do with rehabilitation benefits, which I understood I would be entitled to if I became disabled. I believed that this benefit would help me bridge the gap to a new career. This was a major factor in my decision to purchase insurance from Pan American.

5. Also around the same time I first purchased the policy, I received and read the Notice to Policyholders and Outline of Coverage, a copy of which is attached hereto as Exhibit B. I understood from this document that Pan American was a good insurance company that took care of its policyholders. I understood that it valued my satisfaction and would pay all benefits I deserved in a timely way. This document also reconfirmed my understanding that the policy provided rehabilitation benefits.

6. I also understood that I could increase the amount of my monthly benefits as time went on. Because I believed the representations Pan American had made to me about itself and the insurance it was providing, I kept my policy in force and bought the increased amounts of benefits as time passed.

7. I paid the premiums every month. I authorized Pan American to withdraw its premiums directly from my bank account, which it did every month.

8. In November 2005 I fell off a ladder and was injured. In December 2005

1  I realized that I was physically unable to work. My doctor put me out on disability effective
2  December 14, 2005. I duly made a claim to Pan American.

3    9.    After I was disabled for sixty days, Pan American began paying monthly
4  benefits. In the middle of March 2006, I received two checks from Pan American totaling
5  $2200.00.

6    10.    Shortly after I received the first benefit checks, I received two more
7  checks. With these checks came letters from Michael Jones at Pan American. A copy of one of
8  the letters is being submitted to the Court as Deposition Exhibit 15 and the other is Deposition
9  Exhibit 16. Both letters contained identical language telling me that I would not have to pay
10 premiums "as long as you continue to be disabled." The letter told me that Pan American would
11 advise me when it wanted me to provide evidence of my continued disability. I did not understand
12 how the amount of the check was calculated, but trusted that Pan American would know how to
13 calculate my refund of premiums paid since my disability.

14   11.    Based on the letter of March 13, 2006, I expected that I would continue to
15 receive benefits monthly. I continued to be disabled, and I continued to fill out forms for Pan
16 American documenting my disability. A form that I filled out and sent to Pan American in late
17 March 2006 is submitted herewith as Deposition Exhibit 17. In that document, on the last page, I
18 told Pan American that one of my doctors recommended occupational retraining. Pan American
19 did not respond in any way to this recommendation.

20   12.    Until the middle of April 2006, it was my understanding that Pan
21 American would continue to pay me monthly benefits and that my premiums were waived. I first
22 realized that something was wrong with this understanding when my bank informed me that Pan
23 American had withdrawn $1189.61 from my bank account. I subsequently learned from Pan
24 American that this was a full year's premiums, although they were only authorized to take monthly
25 premiums and I had been told that premiums were waived. A copy of my April bank statement is
26 attached hereto as Exhibit C. At the time this happened I was struggling emotionally with the fact
27 that I was now disabled and had to make significant changes in my life due to my disability. Pan
28 American's sudden raid of my bank account was very upsetting.

13. At about the same time, Pan American stopped making monthly benefit payments, even though I was still disabled and unable to work. I did not receive any benefit payments from March until July.

14. In late May 2006, I received refund checks from Pan American for some of the money it had wrongfully withdrawn from my bank account. A copy of the letter from Michael Jones that accompanied the checks is submitted as Deposition Exhibit 26. I was confused by this letter, as the sums referenced in the letter do not add up to the amount that Pan American seized.

15. In June 2006, I still was not receiving benefits from Pan American, and I began to receive premium notices. Copies of the premium notices dated June 6, 2006 are attached hereto as Exhibit H. I understood that my insurance with Pan American would be canceled unless I paid the monthly premiums. Therefore, I sent in checks for the premiums for June and July, even though I was disabled, not working and should have been on waiver of premium.

16. In July 2006, Pan American began paying me monthly benefits again, but it paid them three months in arrears. Pan American never told my why it was withholding benefits I was due, and I do not know why it paid me in arrears. At the same time it restarted my monthly benefits, it sent me a letter, a copy of which is submitted as Deposition Exhibit 21. The letter told me that Pan American was investigating possible misrepresentations in the application because it thought that I had only been insured for less than two years. The letter also indicated that Pan American might sue me. This letter was quite upsetting to me.

17. On July 21, 2006, I wrote to Pan American to request the rehabilitation benefit that was so important to me when I purchased the policy. A copy of my letter is submitted as Deposition Exhibit 27. I explained that I wanted to retrain to become a nurse.

18. A couple of weeks later I received a letter from Michael Jones dated August 3, 2006 asking for further information about my request for rehabilitation benefits. A copy of this letter is submitted as Deposition Exhibit 7.

19. On August 23, 2006, I wrote to Mr. Jones at Pan American. A copy of my letter of August 23, 2006 is attached hereto as Exhibit D. I addressed several concerns in this

letter. I told Mr. Jones that Pan American's accounting practices were overly complicated and confusing me. I pointed out to him that premiums in the amount of $37.70 were still being deducted from my bank account, even though Pan American should be waiving my premiums. I gave him a full breakdown of the premiums paid since the date of my disability and pointed out that the refunds Pan American had sent did not match the premiums taken.

20. In my letter of August 23, 2006, I told Mr. Jones that I did not believe that I was receiving all of the monthly benefits I had purchased, and that I thought I should be receiving more in benefits. Pan American had paid me inconsistent amounts. In July it paid me $3000, which seemed closer to what I should be receiving than the $2200 I had received in March. In August it paid me just $1700.

21. In my letter of August 23, 2006, I explained to Mr. Jones how emotionally difficult it was to deal with the constant problems and difficulties Pan American was causing.

22. In my letter of August 23, 2006, I provided Mr. Jones with all of the information I had at that time about my plans for rehabilitation. I expected that I would be working with Pan American to develop a rehabilitation plan that would most effectively help me to reenter the work force.

23. Mr. Jones immediately responded to my letter of August 23, 2006 with his letter of August 25, 2006. A copy of that letter is submitted as Deposition Exhibit 28. Mr. Jones wrote about the premium refunds, but his explanation still did not add up to the amount of premiums taken. He sent me two new checks as premium refunds, but even with these checks, I still had not received all of the money Pan American had taken. He said that this was all of the premium refund to which I was entitled, but that did not make sense to me. He did not say anything about the fact that Pan American was still taking money out of my account.

24. In his letter of August 25, Mr. Jones told me that I was only entitled to monthly benefits of $2200. He also told me that I had been overpaid $300 thus far. Mr. Jones told me that the Explanation of Benefits forms were clear as to the dates, but that was often not the case.

25. In his letter of August 25, 2006, Mr. Jones told me Pan American's response to my request for rehabilitation benefits. His entire statement on this subject was:

> "As for your rehabilitation plan, Pan American Life will not be extending benefits."

I was devastated by this cold denial of a benefit I had been counting on.

26. In September 2006, I received another overdraft notice from my bank that was the result of Pan American withdrawing money from my bank account. I telephoned the billing department at Pan American and demanded to know why money was being withdrawn from my bank account. The billing department explained that there was a third policy, that it was not being paid as part of my claim, but instead was being treated as though I was not disabled. Money was being withdrawn to pay the premium on the third policy. I then contacted the claims department, and they agreed to start paying me the monthly benefit I had purchased.

27. At this point, I was extremely upset by the way I was being treated by this insurance company. So in September 2006 I contacted the California Department of Insurance and the Napa County District Attorney.

28. Immediately after I complained to the California Department of Insurance and the District Attorney, Pan American sent me another premium refund, this time for $301.60. I did not understand how that was calculated, and it still did not seem like a complete refund, so I wrote to Pan American and asked how that sum was calculated. Mr. Jones wrote back on September 22, 2006 with an explanation.

29. Shortly after I complained to the Napa County District Attorney and the Department of Insurance, Mr. Jones demanded that I be examined by a doctor at Stanford University. Stanford is over 100 miles from my home in Calistoga. I called Pan American and requested a closer doctor, but they refused to provide one.

30. On October 13, 2006, the Department of Insurance wrote to me that its investigation was ongoing and that it expected results withing 45 days. A copy of this letter is attached hereto as Exhibit E.

31. I spoke with investigators from the Department of Insurance about Pan

Declaration of Donna Mathews    Case No. C 07-02757-SBA

1  American's rejection of my request for rehabilitation benefits.  One of them suggested that I write

2  to Pan American and obtain some further information about why the benefit was refused, whether

3  Pan American ever provides the benefit and how I go about appealing the denial.  I wrote the

4  suggested letter on October 24, 2006.  A copy is submitted as Deposition Exhibit 33.

5           32.     Shortly after this letter, I received still more refunds from Pan American.

6  The letter from Mr. Jones that came with these new refunds is submitted as Deposition Exhibit 34.

7  This letter from Pan American did not address my questions of October 24, 2006.

8           33.     A couple of weeks later, I received another letter from Mr. Jones, dated

9  November 6, 2006.  A copy of this letter is submitted as Deposition Exhibit 35.  In that letter, Mr.

10 Jones claims that he found the third policy that was not discovered until September 2006.  I know

11 this statement is false.  Mr. Jones did not find this policy.  I told his department about it on the

12 phone.

13          34.     In his letter of November 6, 2006, Mr. Jones told me there had been yet

14 another mistake on my benefits payment, and that he was sending an additional $300 to correct it.

15          35.     In his letter of November 6, 2006, Mr. Jones makes the hostile statement

16 that I should "refrain from continuing to forward premiums" once I was placed on waiver.  This

17 statement was especially insulting to me, as I had never forwarded a single premium to Pan

18 American, except for June and July when they threatened to cancel my insurance unless I paid

19 them.  All of the premium problems had been the result of Pan American refusing to waive

20 premiums, taking funds from my bank account and then not refunding them properly.

21          36.     In his letter of November 6, 2006, Mr. Jones did not address any of the

22 questions I asked him about rehabilitation benefits in my letter of October 24.

23          37.     I wrote to Mr. Jones again on November 27, 2006.  A copy of that letter

24 is submitted as Deposition Exhibit 37.  I took issue with several of the insulting and erroneous

25 statements he had made in previous correspondence, and I asked him for a response to my

26 questions about the rehabilitation benefit.

27          38.     Mr. Jones responded with a letter of December 8, 2006.  A copy is

28 submitted as Deposition Exhibit 38.  In it, Mr. Jones made it clear that he was not going to answer

my questions about the rehabilitation benefit, Pan American was not going to reconsider its refusal to provide the benefit, and there was no appeal possible.

39. When Pan American refused to provide the rehabilitation benefit, I did not know what to do. I really wanted to go back to work, but did not know how I would be able to finance the retraining program. I wanted to go into nursing, because I know from my own experience and from several friends in nursing that there are a lot of jobs in that field that I could do with my physical limitations. Nursing is a good fit with my prior background, and many of the interpersonal skills I had picked up over the years would be transferrable to nursing.

40. In order to try to find some way to pursue retraining, I approached the California Department of Rehabilitation. I told them my situation and goals and they worked with me to prepare a rehabilitation plan. I did not provide the Department of Rehabilitation with any information that I had not provided to Pan American. The Department of Rehabilitation was able to take that information and develop a plan that is taking me into nursing.

41. The Department of Rehabilitation has not paid all of my expenses under the plan it approved. I have past and ongoing expenses that I have had to pay myself. For example, the Department of Rehabilitation will not pay for the palm pilot I need to handle the field training ($499). Although the Department of Rehabilitation paid for a computer, it is not adequate for the research I need to do. The computer I need would cost about $2000. Department of Rehabilitation did not pay for the DVD player I had to buy to listen to study tapes ($89) or the extra study books, earphones and sound card ($170) I needed, nor certain additional ATI books and CD ($99). I still need an ergonomic chair to study in (possibly $500). The Department of Rehabilitation would not pay to upgrade my laptop so it could handle Dragon Naturally Speaking (a computer program that allows me to do word processing by speaking into the computer, which I need due to my disability), so I paid the $300 to do that, and it still does not work right. I should have a new laptop to run this software ($1300) but have not bought it yet because the Department of Rehabilitation will not pay for it. The Department of Rehabilitation pays only a small percentage of my transportation costs. My unreimbursed transportation costs to and from Sonoma State exceed $350 per month. Other costs are continuing arising, and significant costs will come

up in the future that I know that the Department of Rehabilitation will not cover, For example, when I begin doing clinical rotations I will need to stay in a motel. There will be many nights of this, which the Department of Rehabilitation will not pay for. Additionally, I plan to attend the Rural Preceptorship Program during an upcoming break from Sonoma State, as I understand that program will enhance my likely success in nursing. I am informed and believe that the Department of Rehabilitation will not pay for this program.

42.   If funding had been available, I would have attended Pacific Union College in St. Helena, California rather than Sonoma State, where I am now. I understand that the Department of Rehabilitation does not pay for private institutions of higher learning, but that restriction does not apply to Pan American. Not only is Pacific Union recognized as one of the top nursing schools, thereby greatly enhancing my chances of finding local employment on graduating, it is near my home, decreasing the commute and the attendant fatigue from driving (as I am suffering from a disability), thereby giving me more energy to perform well in the program. I am informed and believe that the tuition at Pacific Union is currently about $22,000 per year. The program runs for three and a half years.

43.   From July 2006 until last month, Pan American paid my monthly benefits 90 days in arrears. Earlier this year, Pan American began sending me Explanations of Benefits that falsely claim that it is paying me current. Copies of those Explanations of Benefits are attached hereto as Exhibit F. Last month, Pan American finally brought its payments current. A copy of the letter from Mr. Jones that accompanied the checks for the past due benefits is attached hereto as Exhibit G. The letter incorrectly states that the arrearage totaled $6100. In fact, the arrearage totaled $8100. In spite of the erroneous and confusing cover letter, Pan American paid the $8100 toward the arrearage.

If called as a witness, I could and would testify competently to the foregoing.

I declare under penalty of perjury under the laws of the State of California and the

////

////

////

1 | United States that the foregoing is true and correct.
2 |     Dated this 16th day of May at Calistoga, California.
3 |
4 |     /s/_____
    Donna Mathews