1  MICHAEL E. KINNEY
   Bar No. 77018
2  Law Office of Michael E. Kinney
   438 First St.
3  Fourth Floor
   Santa Rosa, CA  95401
4  (707) 527-4141
   Fax (707) 579-9561
5  kinney@kinnlaw.com

6  Attorney for Plaintiff
   DONNA MATHEWS

7

8

9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11

12                                    No.  C 07-02757 SBA

   DONNA MATHEWS,
13                                    [PROPOSED] ORDER DENYING
              Plaintiff,             MOTION FOR SUMMARY
14                                    JUDGMENT
   vs.
15                                    Date:  June 10, 2008
   PAN AMERICAN LIFE INSURANCE       Time:  1:00 p.m.
16 COMPANY; and DOE 1 through Doe 20, Ctrm:  3
   Inclusive,
17
              Defendants.
18 _____/

19

20         The Motion of Defendant Pan American Life Insurance Co. for Summary Judgment,

21 or, Alternatively, Partial Summary Judgment, came on regularly for hearing on June 10, 2008, in

22 Courtroom 3 of the above-entitled Court, the Hon. Saundra Brown Armstrong, presiding.  Having

23 considered the evidence submitted and the arguments of counsel, the Court rules as follows:

24 I.         BACKGROUND

25         Plaintiff Donna Mathews purchased long term disability insurance from Defendant

26 Pan American Life Insurance Company ("Pan American") in 1991.  An important reason she

27 bought this policy is that it provides vocational rehabilitation benefits.  As a dental hygienist,

28 Plaintiff was concerned that she might sustain a disability that prohibited her from working the

                                      1

1   awkward position that her job required.  Plaintiff wanted to be able to retrain into a new profession

2   if that happened, and looked upon Pan American's insurance policy as her bridge to a new career

3   in the event that she could not longer work as a dental hygienist.

4          In November 2005 she fell off a ladder and was injured.  Her injury caused her to be

5   disabled from her occupation of dental hygienist, giving rise to Pan American's obligation to

6   provide policy benefits.

7          Pan American failed at the inception of the claim to determine which policies covered

8   Plaintiff and what benefits those policies provided.  Instead, it ignored its obligation to the Plaintiff

9   and overlooked the fact that Ms. Mathews was entitled to monthly benefits of $2700 per month,

10  incorrectly representing to her that she was only entitled to benefits of only $2200 per month.  Pan

11  American indexed all policies under the insured's name, birth date and social security number.

12  Thus, Pan American had a computer system that would have permitted the claims examiner to

13  triple check for benefits.  If a claims examiner utilized that system, he could be assured of finding

14  all applicable policies, even if sloppy data entry by Pan American had resulted in a typographical

15  error in one of the fields.  This system does not work unless claims personnel are trained to use it,

16  and unless policies exist requiring claims personnel to use the system correctly each time a claim

17  arrives.  Pan American, however, provides neither training nor policies to its claims personnel.  In

18  fact, all of its disability claims are adjusted by someone with no prior disability claim experience.

19  Defendant has not trained this person, or otherwise provided him with direction on how to handle

20  those claims.

21          Pan American has no claims manual whatsoever for handling disability claims.

22  Apparently recognizing that it is illegal under California law to operate an insurance company

23  without a claims manual, Defendant engaged in a ludicrous effort to manufacture one during

24  discovery.   Pan American located a pamphlet that another company had written, and produced it

25  in response to a request that it produce its claims manual.  Upon examination at deposition, it

26  quickly became clear that this pamphlet was never considered to be a claims manual, and was

27  never used as one.

28          Months passed, and Plaintiff was underpaid her benefits.  Pan American affirmatively

represented to Plaintiff that she was being paid in full. This representation was untrue. Although Pan American purportedly overlooked the third policy when it calculated the benefits it was required to pay Ms. Mathews, it did not overlook its premiums. Every month, Pan American withdrew a premium from the Mathews' bank account in connection with the third policy. In August 2006, Ms. Mathews noticed that Pan American was still withdrawing $37.70 from her bank account each month. She wrote to Pan American about it, but Pan American ignored her. In September 2006, Plaintiff received an overdraft notice from her bank that was the result of Pan American withdrawing money from her bank account. Ms. Mathews telephoned the billing department at Pan American and demanded to know why money was being withdrawn from her bank account. The billing department explained to her that there was a third policy, that it was not being paid as part of her claim, but instead was being treated as though Ms. Mathews was not disabled. Money was being withdrawn to pay the premium on the third policy. Ms. Mathews then contacted the claims department, and they agreed to start paying Ms. Mathews the monthly benefit she had purchased.

After making only the first monthly payment, Pan American terminated Ms. Mathews' benefits in March 2006.   Pan American has admitted that the only reason Pan American took this action was because the initial Attending Physician Statement contained a prognosis that suggested that Ms. Mathews might recover by March 2006.  Prior to the time that Pan American cut off Plaintiff's benefits, it had received information from Plaintiff's doctor that showed that Plaintiff had not recovered and that her treating doctor had her out of work for several more months. This information did not affect the decision to cut off Plaintiff's benefits because Pan American's process is always to rely on the original Attending Physician Statement  no matter what. Pan American did not investigate to determine whether Ms. Mathews had, in fact, recovered.  It did not contact Ms. Mathews, her employer or her physicians.  Such investigation would have been contrary to Pan American's stated business practice of relying exclusively on the initial Attending Physician Statement, regardless of any other evidence.

Shortly after it wrongfully terminated her monthly benefits, Pan American withdrew a full year of premiums from the Mathews' bank account.  it should not have withdrawn any money,

1    since the policy provided for a waiver of premiums and Pan American had sent Ms. Mathews a

2    letter on March 13, 2006 (just two days before cutting off her benefits) advising Ms. Mathews that

3    Pan American had classified her as disabled and that all premiums were waived.

4           Pan American refused to pay benefits for about three months, from April through July

5    2006, although it knew Ms. Mathews was not working and that her treating physicians had

6    determined that she was disabled. Pan American had information in its files in March before it

7    stopped paying benefits that showed that Ms. Mathews was still not working due to disability. It

8    received further confirmations of this fact in April and May.  Pan American obtained the records

9    from Plaintiff's treating doctors, all of which it had received by May 23, 2006.  On July 12, 2006,

10   based on the information it had been holding for more than six weeks, Pan American resumed

11   paying monthly benefits policy 1257-758 and on policy 1285-764.

12          When Pan American finally resumed benefit payments in July 2006, it began paying

13   benefits 90 days in arrears. Pan American now acknowledges that it is obligated to make benefits

14   payments current, and not to pay significantly in arrears as was done here. Pan American

15   continued to pay benefits 90 days in arrears until just last month.  On April 5, 2008, it finally

16   brought the benefits current. The issue of Pan American's failure to make timely payments had

17   arisen several times in this litigation, but Pan American required Plaintiff to endure a year of

18   litigation before bringing her benefits current.

19          In 2008, Pan American even tried to cover up the fact that it was improperly paying

20   Ms. Mathews in arrears.  On February 7, 2008, Pan American sent EOBs of that date falsely

21   indicating that Ms. Mathews was being paid current, when in fact she was being paid 90 days in

22   arrears.   This false representation was repeated the following month.

23          A primary reason Ms. Mathews purchased a policy from Pan American instead of

24   some better known carrier was Pan American's agreement to provide rehabilitation benefits.  As a

25   dental hygienist, Ms. Mathews was concerned that her ability to hold the necessary awkward

26   position required for many hours, or her ability to perform fine movements in the small workspace

27   of a patient's mouth, could easily become compromised.  She perceived the Pan American policy,

28   providing five years "own occupation" disability benefits and funds for vocational rehabilitation, as

4

1    a potential bridge to a new career if she could no longer work as a dental hygienist. Both the policy

2    and the accompanying literature made clear that Pan American would provide vocational

3    rehabilitation benefits, and Ms. Mathews reasonably relied thereon.

4           The issue of Ms. Mathews' vocational rehabilitation first came up in March 2006.

5    Dr, Eichbaum, one of Ms. Mathews' treating physicians, suggested to Ms Mathews that she should

6    consider retraining in a completely different field.  Ms. Mathews told Pan American about Dr.

7    Eichbaum's recommendation in early April 2006. Pan American saw that recommendation when it

8    came in, but did contact Ms. Mathews, her physicians or a rehabilitation expert on that subject

9    because Pan American has a business practice not to tell the insured what benefits are available

10   under a policy and not to process any benefits that the insured has not specifically requested.

11          On July 21, 2006, Ms. Mathews wrote to Pan American requesting vocational

12   rehabilitation benefits. She told Pan American that she was already taking classes that were needed

13   to gain admittance to nursing schools, and that she would be able to apply to nursing schools once

14   she had finished those classes. On or about August 3, 2006, Pan American wrote back to Ms.

15   Mathews asking for "a copy of her rehabilitation plans."

16          On August 23, 2006, Ms. Mathews wrote back to Mr. Jones, laying out her

17   rehabilitation plans as best she could, explaining how important it was for her to return to the work

18   force due to the personal and financial stress that her disability was causing, and pointing out that

19   the rehabilitation benefit was "the primary motivation for my purchasing your company's coverage

20   in the first place."  The plans she described were in sufficient detail to permit Pan American to

21   investigate her claim.  Two days later, Pan American responded to Ms. Mathews' request by

22   denying her claim for rehabilitation benefits without explanation.

23          Pan American always denies claims for rehabilitation benefits.  It has never paid a

24   single claim.  The employee assigned to handle these claims has received no training or guidance at

25   all as to how to handle claims for rehabilitation benefits.  Pan American has supplied him with no

26   written guidelines on the subject. His supervisor is likewise unknowledgeable.  Pan American

27   admits that it did not have sufficient information to deny the claim when it wrote the denial letter.

28   It agrees that Pan American should have asked Ms. Mathews to provide further information rather

[Proposed] Order Denying Motion     Case No. C 07-02757-SBA

than denying her claim. In fact, it already possessed all of the information he needed to grant the rehabilitation benefits, or could have easily found the information in a matter of minutes on the internet. The evidence is clear that Plaintiff was entitled to this benefit.

Following Pan American's terse and cryptic denial of rehabilitation benefits, Ms. Mathews proceeded to complain to the California Department of Insurance and the Napa County District Attorney, listing the failure to provide rehabilitation benefits as one of the issues. In response to these complaints, Pan American wrote letters stating that: "The rehabilitation portion of the policies is an additional benefit that is disbursed at Pan American's discretion. The rehabilitation benefit is not, nor was it ever an entitlement for the insured." Following advice she received from the Department of Insurance, in October 2006 Ms. Mathews wrote to Pan American asking the following questions: "Can you tell me what would justify rehabilitation? Is there a company policy regarding rehabilitation? Do you ever approve this benefit or make exceptions, and could I make an appeal for this benefit?" Plaintiff received no answer to any of her questions for more than a month, so on November 27, 2006, she wrote to Mr. Jones asking him to respond to her questions. After Plaintiff insisted on a response, Pan American again denied her claim, without any further investigation, and with any real explanation.

Pan American engaged in numerous other acts that violated its insurance policy, California law, or just generally were oppressive and made Plaintiff's relationship more difficult, including failure to properly refund premiums, refusal to waive premiums as required by the policy, improper account, sending benefits in the wrong amount, providing confusing explanations of benefits, requiring Plaintiff to travel more than 100 miles for a medical examination, and generally treating her in a hostile and demeaning manner.

II.        LEGAL STANDARD

On a Motion for Summary Judgment, the court must view the evidence in the light most favorable to the nonmoving party. Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000). The court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999). In insurance bad faith cases, an insurer is not entitled to a summary judgment where,

1    viewing the facts in the light most favorably to the insured, a jury could  conclude that the insurer

2    acted unreasonably. See Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1161 (9th Cir.

3    2002); Hubka v. Paul Revere Life Ins. Co., 215 F. Supp.2d 1089, 1092 (S.D. Cal. 2002). The

4    reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact. Hangarter

5    v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1010 (9th Cir.2004).

6    **III.        ANALYSIS**

7            The First Cause of Action of the Complaint alleges three breaches of the insurance

8    contract:  failure to pay benefits in full; failure to refund all premiums per the policy; and failure

9    to provide rehabilitation benefits.  There is convincing evidence that Defendant breached the

10    contract as alleged.

11            By its recent actions, Defendant has admitted that it failed to pay benefits in full. At

12    the time the Complaint was filed, Defendant owed Plaintiff for 90 days of past due policy benefits.

13    Each of the policies contain a provision that obligates Defendant to pay benefits current:

14            "When Proof of Loss has been received at our home office, we will:
                        **Pay all income payments then due**;

15                    Pay all future income payments monthly **as they become due**;
                    When our liability ends, immediately pay any balance due at that time."

16
17            California law requires disability insurers to pay benefits current and not in arrears.  Ins.

18    Code § 10350.8.  Defendant's failure to pay benefits current breached the contract.

19            In April 2008, after a year of litigation, Defendant finally acknowledged that it had

20    breached the contract by paying the arrearage.  While this voluntary unconditional payment reduces

21    the amount of recoverable contract damages by the amount of payment, it does not affect the tort

22    claims.  Indeed, if anything, the recent payment of the past due benefits strengthens the bad faith

23    case in that it demonstrates the how unreasonable Defendant had been in refusing to pay benefits up

24    until now.  Further, Defendant's payment failed to make Plaintiff whole, because Plaintiff had

25    incurred attorney fees to force Defendant to make the payment. These fees constitute damages

26    under the rule announced in Brandt v. Superior Court (1985) 37 Cal.3d 813.

27            The second category of breach of contract alleged in the Complaint stems from

28    Defendant's failure to refund premiums as provided in the policies.  As set forth above, Defendant

1    has consistently failed to account for or properly refund premiums to Plaintiff, in spite of

2    Plaintiff's many requests and even in spite of inquiries from the California Department of

3    Insurance.  Defendant still has not refunded all of the premiums as required by the policies.

4              The third category of breach of contract alleged in the Complaint is the failure to pay

5    the rehabilitation benefits provided by the policies.  This is both the largest and most egregious

6    breach of contract.  The rehabilitation benefit was a significant reason Plaintiff purchased these

7    policies.  Plaintiff duly applied for the benefit, and was turned down without explanation.  When

8    she requested further clarification Defendant at first ignored  her and later misrepresented its bad

9    faith claims practices. Defendant made it eminently clear that there was nothing Plaintiff could say

10   or do that would be convince Defendant to provide the benefits.  She was left with no choice but

11   litigation.  Discovery has revealed that Defendant has no policy manual concerning rehabilitation

12   benefits, no one with experience in vocational rehabilitation reviewing claims, never investigates

13   claims that come in, never advises insureds that they might qualify for the benefit, and has denied

14   every claim for rehabilitation benefits ever presented to it.

15             After a year of litigation, Defendant still has not acknowledged that Plaintiff is

16   entitled to the rehabilitation benefit, although Plaintiff obviously qualifies for the benefit.

17   Plaintiff's entitlement to the rehabilitation benefit is underlined by the fact that following

18   Defendant's refusal to provide the benefit, Plaintiff applied to the California Department of

19   Rehabilitation, which found that vocational rehabilitation was appropriate for her.  The Department

20   of Rehabilitation made its decision with no more information from Plaintiff than Defendant had at

21   the time Defendant turned her down.

22             Plaintiff is entitled to damages for Defendant's breach of its contract to provide

23   rehabilitation benefits.  insurers are not relieved from their obligation to provide policy benefits

24   merely because the insured has collateral contracts or relations with third persons which relieve

25   him wholly or partly from the loss against which the insurance company agreed to indemnify him.

26   Textron Financial Corporation v. National Union Fire Insurance Company of Pittsburgh, (2004)

27   118 Cal. App. 4th 1061, 1077; Atmel Corp. v. St. Paul Fire & Marine Ins. Co., (N.D. Cal. 2006)

28   430 F. Supp. 2d 984, 986.  The public policy behind this rule is obvious.  Absent such a rule, it

[Proposed] Order Denying Motion     Case No. C 07-02757-SBA

1    would be in the best interest of insurance companies to refuse to pay benefits in cases where the

2    benefits might be available from the government.  For example, health insurers could reject claims

3    in the expectation that the claim would be covered by Medi-Cal.  Under Defendant's theory of

4    damages, if Medi-Cal paid the claim, the health insurer could not be held liable for damages.  The

5    rule that insurers must pay benefits according to their contracts is embodied in California Insurance

6    Code § 10111.

7          Second, Defendant has admitted that it must pay the rehabilitation benefit regardless

8    of whether Plaintiff found another source of funding.  Defendant designated Cory Simon as its

9    person most knowledgeable on its interpretation of the policy language governing the rehabilitation

10   benefit. Simon testified that Defendant interprets the policy language of the Income Protection

11   Policy to mean that Defendant may not offset rehabilitation benefits received from another source.

12   In other words, Defendant understands that it has the obligation to pay policy benefits regardless of

13   whether another source provides coverage.  Thus, the decision of the Department of Rehabilitation

14   to approve Plaintiff for nursing school is not relevant to damages.

15         Third, as a matter of law, the benefits provided by the Department of Rehabilitation

16   are secondary to benefits available through private insurance.  See Cal. Admin. Code tit. 9, § 7196

17   and § 7197. The obligation of Defendant is primary, and Defendant may not escape its obligation

18   by looking to the Department of Rehabilitation.

19         Fourth, the Department of Rehabilitation has not paid all of Plaintiff's expenses under

20   the plan it approved.  Plaintiff has past and ongoing expenses that Defendant should pay.

21         Finally, if Defendant had not breached its contractual obligation to provide

22   rehabilitation benefits, Plaintiff would have attended the more expensive and better regarded

23   Pacific Union College, which is nearer her home.  Although Defendant was on notice that Plaintiff

24   wanted to attend Pacific Union, Defendant declined to investigate whether Pacific Union was

25   appropriate for Plaintiff's rehabilitation.  Defendant's one sentence denial of Plaintiff's claim did

26   not indicate that Defendant's denial was at all based on a refusal to allow Plaintiff to attend Pacific

27   Union.  Under these circumstances, Defendant has waived its claim, raised for the first time in its

28   moving papers, that it would not pay the tuition at Pacific Union but would insist that Plaintiff

9

1    attend a public institution.  See, e.g., <u>Legarra v. Federated Mut. Ins. Co.</u>, 35 Cal. App. 4th 1472,

2    1486 (1995) holding that: "an insurer waives its right to rely on defenses that it has not specified in

3    its letter denying coverage, but which a reasonable investigation would have disclosed."  <u>Legarra</u>

4    points out that this rule is grounded in the sound public policy that insurers need an incentive to

5    make a thorough investigation of claims.  Here, by refusing to investigate Plaintiff's claim, by

6    refusing to tell Plaintiff what was defective about the claim she submitted, by refusing to allow

7    Plaintiff to appeal her claim, and by refusing to answer Plaintiff's questions about her claim,

8    Defendant waived any right (if it ever had one) to insist that Plaintiff attend only public colleges.

9           There is overwhelming evidence of bad faith here, Plaintiff's Second Cause of Action.

10   The implied covenant of good faith and fair dealing serves to prevent an insurer from impairing the

11   insured's right to receive the benefits for which she contracted.  <u>Egan v. Mutual of Omaha Ins.</u>

12   <u>Co.</u> (1979) 24 Cal. 3d 809, 818-809.  Unreasonable withholding of policy benefits due the insured

13   gives rise to a tort cause of action for breach of the implied covenant.  <u>Gruenberg v. Aetna</u>

14   <u>Insurance Co.</u> (1973) 9 Cal. 3d 566, 574.  Withholding of benefits may take any of the following

15   forms:  denial of benefits due (<u>Mariscal v. Old Republic Ins. Co.</u> (1996) 42 Cal. App. 4th 1617,

16   1623); discontinuing ongoing benefit payments (<u>Morris v. Paul Revere Life Ins. Co.</u> (2003) 109

17   Cal. App. 4th 966, 977); paying less than due (<u>Neal v. Farmers Ins. Exch.</u> (1978) 21 Cal. 3d 910,

18   921); or unreasonable delay in payment (<u>Waller v. Truck Ins. Exch., Inc</u> (1995) 11 Cal 4th 1,

19   36).  Pan American is guilty of all four forms of withholding benefits.  It improperly denied the

20   rehabilitation benefit.  It improperly cut off the ongoing monthly disability benefits in March 2006

21   without good cause.  It unreasonably failed to determine how many policies Plaintiff had, and as a

22   result paid less than was due in monthly benefits for an extended period of time, and it underpaid

23   the refund of premiums due under the policy. It unreasonably delayed payment of three months of

24   disability benefits almost until now.

25           The denial of rehabilitation benefits demonstrates bad faith in several ways.  Each of

26   the following is a wrongful act that provides evidence of bad faith.

27           Pan American has a business policy of never advising its insureds that they might be

28   entitled to rehabilitation benefits.  California law requires the carrier to disclose "all benefits,

coverage, time limits or other provisions of any insurance policy issued by that insurer that may apply." 10 Cal Admin Code § 2695.4. Pan American violated this rule when it failed to tell Plaintiff that rehabilitation benefits might be available in April 2006 when Pan American first received medical reports that rehabilitation might be appropriate. It has a business practice of violating this rule, and violates it in the case of every policyholder to whom it applies.

Pan American does not have a claims manual that addresses how to handle rehabilitation benefits. In fact, it does not have any claims manual at all. California imposes a legal requirement on all carriers to have a claims manual, and requires that the manual include a copy of California regulations regarding claims handling practices. 10 Cal Admin Code § 2695.6. The same law also requires insurers to train claims personnel, another rule ignored by Defendant. Further, the Unfair Claims Settlement Practices Act (Ins. Code § 790.03(h) requires insurers "to adopt and implement reasonable standards for the prompt investigation or claims." Courts have found that a statutory violation of the Unfair Claims Settlement Practices Act has evidentiary value in a bad faith action, i. e., it tends to show a breach of the insurer's implied covenant. Estate of Parker ex rel. Parker v. AIG Life Ins. (C.D. Cal 2004) 317 F. Supp 1167, 1171-2; Rattan v. United Services Auto. Ass'n, 84 Cal. App.4th 715, 724 (2000).

The duty of good faith and fair dealing requires an insurer to act reasonably in denying coverage. Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc. (2000) 78 Cal. App. 4th 847, 879. An insurer acts unreasonably in denying coverage where it fails to reasonably investigate a claim. Id. at 879-80. "An unreasonable failure to investigate may be found when an insurer fails to consider, or seek to discover, evidence relevant to the issues of liability and damages." Id. at 880. Here, Defendant's failure to investigate was total. It did not even make a pretense of investigation, and never does. As soon as Plaintiff told Defendant that she wanted to rehabilitate into nursing by pursuing a degree at one of three Northern California colleges, Defendant slammed the door in her face. The denial letter went out within forty eight hours. No investigation whatsoever took place, nor does it ever. An insurer commits the tort of bad faith when it denies payments to its insured without fully investigating the grounds for its denial. Frommoethelydo v. Fire Ins. Exchange, 42 Cal. 3d 208, 215 (1986); Egan v. Mutual of Omaha

Ins. Co., 24 Cal. 3d 809, 818-19 (1979).

Following its initial denial of rehabilitation benefits, Defendant continued its bad faith refusal to investigate.  In October 2006, Plaintiff asked Defendant what she needed to justify rehabilitation benefits, whether Defendant ever granted the benefits, and whether she could appeal. Defendant ignored her questions for a month, then reiterated its conclusion that she was not entitled to benefits.  The duty to investigate is not suspended by the initial denial of the claim (nor by filing of suit).  Defendant's continued failure to investigate also gives rise to bad faith liability. Jordan v. Allstate Ins. Co. (2007) 148 Cal. App. 4th 1062, 1076.

Defendant's purported reason for denying the rehabilitation benefits - that Plaintiff did not provide information of exactly the sort it wanted - also gives rise to bad faith liability. McCormick v. Sentinel Life Ins. Co. (1984) 153 Cal. App. 3d 1030, 1046 (insurer does not have the right to insist that the claim be proved only through certain types of evidence).   Defendant also committed bad faith when it failed to respond to Plaintiff's request to appeal the denial of benefits. Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc. supra at 880.

Defendant also breached its duty of good faith and fair dealing when it improperly terminated benefits in March 2006.  Defendant testified that its business practice is always to cut off monthly disability benefits in accordance with the prognosis in the initial Attending Physician Statement, without inquiry to the doctor, the insured or the employer.  This business practice has been illegal in California for decades.  Miller v. National American Life Ins. Co. of Calif. (1976) 54 Cal. App. 3d 331, 339-340.  Defendant's belated suggestion in the moving papers that it cut off Plaintiff's benefits because it needed to perform further investigation is just untrue.  Defendant did not make a decision to perform a further investigation before cutting off benefits.  It automatically cut off the benefits.

Defendant continued to withhold monthly benefits from Plaintiff from March until July 2006.  Even if Defendant had possessed a valid reason for cutting off benefits in March, its delay in reinstating benefits until July is an unreasonable and bad faith delay.  California law requires insurers to process claims withing 40 days.  10 Cal. Code of Regs. §2695.7.  Even absent the regulation, Defendant would be in bad faith if it unreasonably delayed processing the claim.

1    See, e.g., Cardiner v. Provident Life & Accident Ins. Co., 158 F. Supp.2d 1088, 1099 (C.D. Cal.

2    2001); Love v. Fire Ins. Exch., 221 Cal. App.3d 1136, 1148 (1990). The evidence shows that

3    Defendant sat on the claim for weeks without processing it, ultimately reinstating Plaintiff's

4    benefits in July based on information it had possessed for two months.

5         When Defendant finally did resume the monthly disability payments, it made the

6    payments three months in arrears. This violated California law which requires that benefits be paid

7    current. Ins. Code § 10350.8. It also violated the clear terms of the insurance policies.

8    Defendant continued to violate this law and the terms of the policy every month thereafter until

9    April 2008. For a year and a half it sent EOBs that showed that it was paying in arrears, and

10   thereafter it provided Plaintiff with EOBs stating that it was paying current, although it was still

11   paying in arrears. It ignored the claim in the Complaint that it was paying in arrears. Defendant

12   ignored the claim in the Joint Case Management Statement that it was paying in arrears. Finally,

13   after the close of discovery and shortly before filing this motion, Defendant paid the three months

14   of benefits it had been withholding. Thus, Defendant has finally acknowledged that its conduct of

15   paying in arrears was improper.

16        Because Defendant obviously committed bad faith in connection with its failure to pay

17   benefits current, Plaintiff is entitled to fees under Brandt v. Superior Court (1985) 37 Cal.3d 813.

18   See also Cassim v. Allstate Ins. Co. (2004) 33 Cal.4th 780; Essex Ins. Co. v. Five Star Dye

19   House, Inc. (2006) 38 Cal. 4th 1252. Plaintiff has incurred attorney fees in connection with the

20   recovery of the past due benefits and therefore is entitled to recover Brandt fees.

21        A bad faith disregard of its duties to its insureds permeates Defendant's handling of

22   this claim. It failed to locate all of the insurance policies under which Plaintiff was insured, in

23   spite of Plaintiff's inquiries, resulting in a ten month delay in a portion of Plaintiff's benefits. It

24   misrepresented to Plaintiff that it was paying all of the benefits to which Plaintiff was entitled. The

25   claims department is staffed by untrained and unsupervised personnel, who are not provided with

26   written policies and procedures for handling claims of the sort presented here. It improperly

27   withdrew a year's premiums from Plaintiff's bank account. It unreasonable failed to properly

28   account for premium refunds (see Johnson v. Mutual Benefit Life Ins. Co. (9th Cir. 1988) 847

F.2d 600, 603), it paid benefits in the wrong amount, and provided confusing explanations of refunds and benefit payments. It unreasonably required Plaintiff to travel more than 100 miles for a medical examination, in violation of Defendant's standard practices, immediately after Plaintiff complained about Defendant to the Department or Insurance and the District Attorney. Everything Defendant did on this claim reeks of a conscious disregard for Plaintiff's rights and the rights of policyholders in general.

There is sufficient evidence to overrule the Motion as to the Causes of Action for fraud and negligent misrepresentation. A case directly on point is Miller v. National American Life Ins. Co. of Calif. (1976) 54 Cal. App. 3d 331. In Miller, the Court of Appeals upheld a fraud judgment against an insurance company based upon representations that the company would make the payments described in policy. Id at 338. Here, Plaintiff points to representations both within and outside of the policies, which not only represented that policy benefits would be paid, but also represented that Defendant would treat Plaintiff well and that in the event of a claim, Defendant was "there to serve" Plaintiff and that her "satisfaction was very important to" Defendant, and that if she should make a claim, Defendant "fully expect(s) to provide a fair settlement in a timely fashion."

As here, Miller involved a case in which the insurer automatically cut off benefits based solely on the Attending Physician Statement, without investigation. The Miller Court stated:

> "The wording of the questions, the policy of interpretation without warning or guidance to the attending physician, and the failure to consult the doctor as to an acknowledged uncertainty all lend support to the inference of an intent not to live up to the promised coverage." Id at 339.

The facts here are for more egregious than those presented in Miller. Not only did Pan American cut off monthly disability benefits without investigation, when it came to the rehabilitation benefit, it engaged in a business practices that assure that it never pays rehabilitation benefits, that stifle inquiries from claimants about policy benefits, and that, in general, defeat the purpose for which policyholders purchase these policies.

The fact that Pan American designed its business to thwart the reasonable expectations

14

1    of policyholders demonstrates the falsity of the representations that it made both within and outside

2    of the policies.  It is hard to imagine a clearer example of misrepresentation in the insurance

3    context.

4         The Complaint states a cause of action for violation of the Unfair Competition Law

5    (Cal. Bus. & Prof. Code §17200 et. seq.).  Substantial evidence supports this theory.

6         The Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent

7    business act or practice and unfair, deceptive, untrue or misleading advertising . . . ."  The section

8    demonstrates a clear design to protect consumers as well as competitors.  Consumers need the

9    greatest protection from sharp business practices.  <u>People ex rel. Bill Lockyer v. Fremont Life Ins.</u>

10   <u>Co.</u> (2002) 104 Cal. App. 4th 508, 514-515.  The UCL is broad enough to reach practically any

11   form of predatory business practice in whatever context it may occur.  <u>Korea Supply Co. v.</u>

12   <u>Lockheed Martin Corp.</u> (2003) 29 Cal. 4th 1134, 1143.  Plaintiff is not required to demonstrate a

13   series of ongoing wrongful acts.  Rather, a single wrongful act is sufficient to establish a violation

14   of §17200.  <u>Klein v. Earth Elements</u> (1997) 59 Cal. App. 4th 965, 968.

15        The UCL applies to anything that can properly be called a business practice and at the

16   same time is forbidden by law.  <u>Barquis v. Merchants Collection Ass'n of Oakland, Inc.</u>  (1972) 7

17   Cal. 3d 94, 113.  A business practice that violates any law - civil or criminal, state or federal -

18   may be enjoined under this statute.  <u>AICCO, Inc. v. Insurance Co. of North America</u> (2001) 90

19   Cal. App. 4th 579, 588-589.  The statute also applies to acts that are unfair.  "Unfair" practices

20   are those practices whose harm to the victim outweighs its benefits.  <u>Progressive West Ins. Co. v.</u>

21   <u>Superior Court</u> (2005) 135 Cal. App. 4th 263, 285-286.

22        Courts have not been hesitant to apply the UCL to insurance claims practices.  See,

23   e.g., <u>Kapsimallis v. Allstate Ins. Co.</u> (2002) 104 Cal. App. 4th 667, 676  (carrier used date of

24   earthquake as date of loss in all cases, without investigation into actual claim, resulting in improper

25   denial of claims on statute of limitations basis);  <u>Progressive West Ins. Co. v. Superior Court,</u>

26   supra (the insurance company had a pattern and practice of demanding 100 percent of any moneys

27   it paid out to its policyholders under the medical-payments coverage without regard to the

28   company's obligations under the made-whole rule or the common-fund doctrine); <u>Ticconi v. Blue</u>

1    Shield of California Life & Health Ins. Co. (2008)160 Cal. App. 4th 528  (the insurer engaged in a

2    practice of post-claims underwriting to rescind policies and deny claims).  In R & B Auto Center,

3    Inc. v. Farmers Group, Inc. (2006) 140 Cal. App. 4th 327, the insurance company sold the insured

4    car dealership insurance that the insured reasonably believed would cover it for lemon law

5    violations.  Plaintiffs alleged that Defendant never intended to actually provide the coverage and

6    sought equitable relief under the UCL.  The court found that the UCL applied under those facts.

7    Id at 355-356.

8            The evidence presented here shows that Pan American engaged in rampant and

9    egregious unlawful and unfair conduct that the Court should enjoin.  As in R & B Auto Center,

10   supra, Defendant sells a benefit (the rehabilitation benefit) that it has no intention of actually

11   providing.  A reasonable consumer reading the policy would expect that rehabilitation benefits

12   were available, but in fact, Defendant never pays those benefits.  It has no policies in place for

13   providing those benefits, it does not honor its legal obligation to tell policyholders about the benefit

14   when it appears they might be entitled to it, it denies the benefits without explanation, it refuses to

15   respond to inquiries from the policyholder about the benefits, it has no appeal process in place and

16   does not answer questions about appeal, and, if the policyholder is insistent about the rehabilitation

17   benefit, Defendant misrepresents how claims for this benefit are processed.  An insurance company

18   cannot be any more unfair than Defendant.

19           No more is needed to deny the Motion for Partial Summary Judgment as to the UCL

20   claim, but more is present.  In addition to its fraudulent and unfair practice in connection with the

21   rehabilitation benefit, there is Defendant's business practice of automatically denying benefits

22   based on the initial Attending Physician Statement, without any investigation at all.  As discussed

23   at some length above, this practice is fraud per se.  Miller v. National American Life Ins. Co. of

24   Calif. (1976) 54 Cal. App. 3d 331. The UCL is California's answer to the problem of how to deal

25   with a business practice like this one.

26           Another illegal practice engaged in by Defendant is paying disability benefits in

27   arrears.  This practice is made illegal by Ins. Code § 10350.8.  Defendant has violated this law

28   frequently.

1    There is substantial evidence which Supports the Claim for Intentional Infliction of

2  Emotional Distress.  Under California law, the elements of a claim for intentional infliction of

3  emotional distress (IIED) are:  (1) extreme and outrageous conduct by the defendant with the

4  intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the

5  plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of

6  the emotional distress by the defendant's outrageous conduct. <u>Christensen v. Superior Court</u>, 54

7  Cal.3d 868, 903, (1991)

8    Defendant committed a series of acts, any one of which would be sufficient to allow

9  Plaintiff's IIED claim to go the jury. It underpaid benefits, it cut off benefits without basis or

10  investigation, it improperly seized funds from Plaintiff's bank account, it paid benefits in arrears, it

11  refused to provide the rehabilitation benefit, it refused to answer Plaintiff's questions, it improperly

12  calculated refunds, it failed to honor its obligation to waive premiums, it provided

13  incomprehensible and confusing accounting, it wrote insulting letters, and so on.  California case

14  law provides examples of IIED claims against an insurance company for threatened and actual bad

15  faith refusals to make payments under the policy. <u>Fletcher v. Western Natl. Life Ins. Co.</u>, 10 Cal.

16  App.3d 376 (1970) (an insurer's intentional conduct and wanton and reckless disregard of

17  consequences to plaintiff in delaying payments of approved benefits vital to the support of plaintiff

18  and her children supported an IIED claim).  See also <u>Hernandez v. General Adjustment Bureau</u>,

19  199 Cal. App.3d 999 (1988).

20    Defendant caused Plaintiff serious emotional upset on several occasions.  Defendant

21  should expect this sort of strong emotional response from a person who has recently become

22  disabled, who is now being denied the lifeline she was depending upon, and who is being treated as

23  outrageously as Defendant treated Plaintiff here.

24    Plaintiff's claim for negligent infliction of emotional distress claim is presented under

25  the "direct victim" theory. <u>Burgess v. Superior Court</u>, 2 Cal.4th 1064, 1071 (1992). In <u>Marlene F.

26  v. Affiliated Psychiatric Medical Clinic, Inc.</u> 48 Cal.3d 583 (1989), the court stated that damages

27  for emotional  distress are recoverable "when they result from the breach of a duty owed the

28  plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that

17

[Proposed] Order Denying Motion    Case No. C 07-02757-SBA

1   arises out of a relationship between the two." Id. at 590. "Unless the defendant has assumed a duty

2   to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only

3   if the emotional distress arises out of the defendant's breach of some other legal duty and the

4   emotional distress is proximately caused by that breach of duty." Potter v. Firestone Tire and

5   Rubber, 6 Cal. 4th 965, 985 (1997); Erlich v. Menezes, 21 Cal.4th 543, 555 (1999). A legal duty

6   "may be imposed by law, be assumed by the defendant, or exist by virtue of a special

7   relationship." Potter, supra, 6 Cal.4th at 985; Marlene F., supra, 48 Cal.3d at 590.

8          Defendant argues that Plaintiff cannot establish the requisite duty on behalf of

9   Defendant to support the tort of negligent infliction of emotional distress. California law does not

10  support Defendant's argument. In Johnson v. Mutual Ben. Life Ins. Co., 847 F.2d 600 (9th Cir.

11  1988), a Ninth Circuit court decision where an insured brought an NIED claim against the insurer

12  as well as a claim for breach of the implied covenant of good faith and fair dealing, the court held

13  that genuine issues of material fact existed on both claims to preclude summary judgment. In

14  insurance litigation suits, an action for negligent infliction of emotional distress can be maintained

15  so long as there is a duty of good faith and fair dealing. Coleman v. Republic Indem. Ins. Co. of

16  Calif., 132 Cal. App.4th 403, 415-16 (2005). Here, there is very clearly a duty of good faith and

17  fair dealing, as well as several obvious breaches of that duty. Since a duty exists, the negligent

18  infliction claim must survive this motion and go to the jury.

19         There is clear and convincing evidence to support the award of punitive damages.

20  Punitive damages are made available to discourage the perpetuation of objectionable corporate

21  policies that breach the public's trust and sacrifice the interests of the vulnerable for commercial

22  gain. Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1164-1165 (9th Cir. 2002)

23  (reversing a grant of summary judgment and remanding for further proceedings on an insured's

24  claim for punitive damages, finding sufficient evidence that the denial of her claim "was not simply

25  the unfortunate result of poor judgment" to allow a jury to conclude that the insurer's actions were

26  willful and "rooted in established company practice"), quoting Egan, supra, 24 Cal.3d at 820.

27         Punitive damages are available when the insured proves by clear and convincing

28  evidence that the insurance company engaged in conduct that is oppressive, fraudulent, or

1   malicious. Amadeo, 290 F.3d at 1164, quoting PPG Industries, Inc. v. Transamerica Ins. Co., 20

2   Cal.4th 310, 318-319 (1999).

3          "[A] plaintiff may meet the state of mind requirement for an award of punitive

4   damages by showing that the insurer's bad faith was 'part of a conscious course of conduct, firmly

5   grounded in established company policy." Amadeo, 290 F.3d at 1165, quoting Neal v. Farmers

6   Ins. Exchange, 21 Cal.3d 910 (1978).

7          Pan American has engaged in conduct that is fraudulent, oppressive and malicious as

8   defined by California Civil Code section 3294.

9          Fraudulent conduct sufficient to support punitive damages is evident both in

10  Defendant's business policy of cutting off benefits without investigation and in its business policy

11  of refusing to pay rehabilitation benefits.  In Miller v. National American Life Ins. Co. of Calif.,

12  supra, the Court upheld the award of punitive damages based solely on the fraudulent conduct of

13  the insurer that flows from business practice of cutting off benefits without investigation.  Here,

14  the fraudulent conduct of the insurer goes far beyond that found in Miller.  Not only does the

15  insurer cut off benefits without investigation, it never pay one class of rehabilitation benefits at all,

16  never investigates claims for that type of benefit, stonewalls when a claimant inquires about the

17  benefit, and even makes misrepresentations to the claimant if the claimant insists on a response.

18         Besides being fraudulent, the conduct of Defendant was malicious and/or oppressive.

19  Conduct is considered malicious if it is either intended by a defendant to cause injury or if it is

20  despicable conduct which is carried on by the defendant with a willful and conscious disregard of

21  the rights of others. Cal. Civil Code §3294(c)(1).  It is not necessary to show that Defendant had

22  personal animosity toward plaintiff or acted out of "evil" motives.  It is enough that Defendant

23  intended the consequences that were substantially certain to result from its conduct.  Schroeder v.

24  Auto Driveway Co. (1974) supra at 922.

25         Conduct is considered oppressive when it is despicable conduct that subjects a person

26  to cruel and unjust hardship in conscious disregard of that person's rights.  Civil Code §3294(c)(2).

27         Malicious and oppressive conduct is shown here by the following:

28     • Pan American placed a claims representative with no experience at all in disability

19

[Proposed] Order Denying Motion     Case No. C 07-02757-SBA

claims in sole control of all disability claims;

- Pan American has no written policies at all regarding the handling of disability claims;

- Pan American did not locate all of the monthly disability benefits it was supposed to pay Plaintiff until ten months after the date of disability, and after Plaintiff contacted Pan American's billing department to find out why it was still collecting premiums;

- Pan American terminated Plaintiff's monthly disability benefits without investigation;

- Pan American required Ms. Mathews to travel over 100 miles for a medical examination immediately after Ms. Mathews complained to the Department of Insurance;

- Pan American withdrew twelve months' premiums from Plaintiff's bank account;

- Pan American withheld Plaintiff's monthly benefits for two months after it completed its investigation into her disability;

- When Pan American restarted Plaintiff's benefits in July 2006, it paid her 90 days in arrears;

- Defendant wrote to Plaintiff in July 2006 indicating that Plaintiff had only been insured for two years, that her application was being investigated and that Defendant might seek a judgment against Plaintiff;

- Pan American refused to pay rehabilitation benefits without explanation;

- Pan American denied Plaintiff's claim for rehabilitation when it knew that it did not have sufficient information to deny that claim;

- Pan American refused to investigate whether Plaintiff was entitled to rehabilitation benefits;

- Pan American refused to answer Plaintiff's questions about what information was needed to provide rehabilitation benefits;

- Pan American told Plaintiff that rehabilitation benefits were not an "entitlement"

when in truth Plaintiff was entitled to the benefit;

- Pan American told Plaintiff that it used vocational rehabilitation specialists to assess rehabilitation claims although it does not do that and its senior officer for claims does not even know what a vocational rehabilitation specialist is;
- Pan American did not properly account to Plaintiff for benefits and refunds of premium, but instead repeatedly sent Plaintiff incomprehensible and erroneous information;
- Pan American sent Plaintiff Explanations of Benefits that falsely represented that she was being paid current, when in fact she was being paid in arrears.

There is clear and convincing evidence of each and every one of these items.

The moving papers have not raised the issue of corporate liability for the fraudulent, malicious and oppressive conduct here. The evidence that Pan American is liable in punitive damages for such conduct by its employees is abundant here. Not only was everything that was done here by Mr. Jones supervised by Mr. Simon, the company's Chief Claim Officer (Simon Depo 6:1), Plaintiff's claim was reviewed by Mr. Simon, together with Pan American's Vice President for Administration and a lawyer from Pan American's office of in-house counsel, and the wrongful activity that is the subject of this lawsuit was explicitly ratified

## IV.        CONCLUSION

Based on the foregoing, Defendant's motion is denied in its entirety.


                                         _____
                                         Saundra B. Armstrong
                                         Judge

[Proposed] Order Denying Motion    Case No. C 07-02757-SBA