MICHAEL E. KINNEY
Bar No. 77018
Law Office of Michael E. Kinney
438 First St.
Fourth Floor
Santa Rosa, CA  95401
(707) 527-4141
Fax (707) 579-9561
kinney@kinnlaw.com

Attorney for Plaintiff
DONNA MATHEWS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA MATHEWS,<br><br>        Plaintiff,<br><br>vs.<br><br>PAN AMERICAN LIFE INSURANCE COMPANY; and DOE 1 through Doe 20, Inclusive,<br><br>        Defendants.<br>_____/ | No.  C 07-02757 SBA<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Date:  July 1, 2008<br>Time:  1:00 p.m.<br>Ctrm:  3 |

       COMES NOW PLAINTIFF, DONNA MATHEWS, and, hereby opposes Defendant's Motion for Summary Judgment.

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     ii

I.           INTRODUCTORY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . .     1

II.          STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     2

           A.       PanAm Initially Underpays Plaintiff's Benefits. . . . . . . . . . . . .     2

           B.       PanAm Wrongfully Terminated the Claim after Only One Month . .     4

           C.       PanAm Withdraws More than $1,000 from Plaintiff's
Bank Account. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     5

           D.       PanAm Unreasonably Delayed Reinstatement of
Plaintiff's Benefits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     5

           E.       PanAm pays benefits 90 days in arrears . . . . . . . . . . . . . . . . . .     6

           F.       PanAm Denies Plaintiff's Request for Rehabilitation Benefits . . . .     7

           G.       PanAm's Accounting Practices Were Incomprehensible and Wrong .     11

III.         ARGUMENT     12

           A.       Standard on Motion for Summary Judgment . . . . . . . . . . . . . . .     12

           B.       There is Overwhelming Evidence of Breach of Contract
and Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     13

           C.       There is Overwhelming Evidence of Bad Faith. . . . . . . . . . . . . .     16

           D.       There is Substantial Evidence of Misrepresentation which Supports
Plaintiff's Claims for Fraud and Negligent Misrepresentation . . . . .     20

           E.       PanAm Has Violated the Unfair Competition Law . . . . . . . . . . . .     21

           F.       No Opposition as to IIED and NIED Claims . . . . . . . . . . . . . . .     22

           G.       Clear and Convincing Evidence Supports Punitive Damages . . . . . .     23

IV.         CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     25

1

**TABLE OF AUTHORITIES**

2  **Cases**

3

4  AICCO, Inc. v. Insurance Co. of North America,
            90 Cal. App. 4th 579, 588-589 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

5  Amadeo v. Principal Mut. Life Ins. Co.,
            290 F.3d 1152, 1161 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 13, 23

6

7  Atmel Corp. v. St. Paul Fire & Marine Ins. Co.,
            430 F. Supp. 2d 984, 986 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . .    14

8  Balint v. Carson City,
            180 F.3d 1047, 1054 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . .    13

9

10  Barquis v. Merchants Collection Ass'n of Oakland, Inc.,
            7 Cal. 3d 94, 113 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

11  Brandt v. Superior Court
            37 Cal.3d 813 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

12

13  Cardiner v. Provident Life & Accident Ins. Co.,
            158 F. Supp.2d 1088, 1099 (C.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . .    19

14  Cassim v. Allstate Ins. Co.,
            33 Cal.4th 780 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

15

16  Egan v. Mutual of Omaha Ins. Co.
            24 Cal. 3d 809, 818-809 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 23

17  Essex Ins. Co. v. Five Star Dye House, Inc.,
            38 Cal. 4th 1252 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

18

19  Estate of Parker ex rel. Parker v. AIG Life Ins.,
            317 F. Supp 1167, 1171-2 (C.D. Cal 2004) . . . . . . . . . . . . . . . . . . . . . . .    17

20  Frommoethelydo v. Fire Ins. Exchange,
            42 Cal. 3d 208, 215 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

21

22  Gruenberg v. Aetna Insurance Co.
            9 Cal. 3d 566, 574 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    16

23  Hangarter v. Provident Life & Accident Ins. Co.,
            373 F.3d 998, 1010 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

24

25  Hubka v. Paul Revere Life Ins. Co.,
            215 F. Supp.2d 1089, 1092 (S.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . .    13

26  Johnson v. Mutual Benefit Life Ins. Co.,
            847 F.2d 600, 603 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . .    20

27

28  Jordan v. Allstate Ins. Co.,
            148 Cal. App. 4th 1062, 1076 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . .    18

Kapsimallis v. Allstate Ins. Co.,
        104 Cal. App. 4th 667, 676 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . .     22

Klein v. Earth Elements,
        59 Cal. App. 4th 965, 968 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     21

Korea Supply Co. v. Lockheed Martin Corp.,
        29 Cal. 4th 1134, 1143 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     21

Legarra v. Federated Mut. Ins. Co.,
        35 Cal. App. 4th 1472, 1486 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . .     15, 16

Lopez v. Smith,
        203 F.3d 1122, 1131 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . .     12

Love v. Fire Ins. Exch.,
        221 Cal. App.3d 1136, 1148 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . .     19

Mariscal v. Old Republic Ins. Co.
        42 Cal. App. 4th 1617, 1623 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . .     16

McCormick v. Sentinel Life Ins. Co.,
        153 Cal. App. 3d 1030, 1046 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . .     18

Miller v. National American Life Ins. Co. of Calif.,
        54 Cal. App. 3d 331, 339-340 (1976) . . . . . . . . . . . . . . . . . . . . . . . .18, 20-23

Morris v. Paul Revere Life Ins. Co.
        109 Cal. App. 4th 966, 977 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . .     16

Neal v. Farmers Ins. Exch.
        21 Cal. 3d 910, 921 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     16, 23

People ex rel. Bill Lockyer v. Fremont Life Ins. Co.,
        104 Cal. App. 4th 508, 514-515 (2002) . . . . . . . . . . . . . . . . . . . . . . . . .     21

PPG Industries, Inc. v. Transamerica Ins. Co.,
        20 Cal.4th 310, 318-319 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     23

Progressive West Ins. Co. v. Superior Court,
        135 Cal. App. 4th 263, 285-286 (2005) . . . . . . . . . . . . . . . . . . . . . . . .21-22

R & B Auto Center, Inc. v. Farmers Group, Inc.,
        140 Cal. App. 4th 327 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     22

Rattan v. United Services Auto. Ass'n,
        84 Cal. App.4th 715, 724 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     17

Schroeder v. Auto Driveway Co.,
        11 Cal. 3d 908, 922 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     24

Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.,
        78 Cal. App. 4th 847 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     17-18

Ticconi v. Blue Shield of California Life & Health Ins. Co.,
        160 Cal. App. 4th 528 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     22

Textron Financial Corporation v. National Union Fire Insurance Co of Pittsburgh,
    118 Cal. App. 4th 1061, 1077 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Waller v. Truck Ins. Exch., Inc.,
    11 Cal 4th 1, 36 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Statutes, Rules and Regulations**

9 Cal. Admin. Code § 7196 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

9 Cal. Admin. Code § 7197 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

10 Cal Admin Code § 2695.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

10 Cal Admin Code § 2695.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

10 Cal Admin Code § 2695.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Bus. & Prof. Code §17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

Civil Code section 3294 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24

Insurance Code § 790.03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Insurance Code § 10111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Insurance Code § 10350.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19, 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTORY STATEMENT

This is a classic example of insurance bad faith. Plaintiff Donna Mathews purchased long term disability insurance from Defendant Pan American Life Insurance Company ("PanAm") in 1991. She selected this policy because it provides vocational rehabilitation benefits in addition to monthly benefits. In the event she became disabled from the duties of her occupation, Plaintiff wanted to be able to retrain into a new profession, and looked upon PanAm's insurance policy as her potential bridge to a new career.

In 2005 Plaintiff was injured. Her injury caused her to be disabled from her occupation of dental hygienist, giving rise to PanAm's obligation to provide policy benefits. What followed thereafter is a litany of insurance bad faith acts.

PanAm's bad faith is easiest to see in connection with the rehabilitation benefits. Plaintiff asked for rehabilitation benefits, and PanAm denied them, providing only a one sentence denial without explanation of the reason for denial. PanAm performed no investigation whatsoever before denying this claim. Plaintiff asked why her claim was denied, what else she needed to present, or if she could appeal the denial. PanAm refused to elaborate on why the benefit was denied, and did not answer Plaintiff's question about appeal. In deposition, PanAm admitted that it did not have sufficient information to deny the claim, and should have asked Plaintiff for more information. Discovery has revealed that PanAm has never provided the rehabilitation benefit to anyone, does not have a claims manual or any written claims policies at all, has no appeal process, and has turned over its long term disability insurance claims to an employee who is completely untrained and without experience in claims of this sort.

Bad faith permeates every aspect of PanAm's relationship with Plaintiff. PanAm failed to identify all of the benefits to which Plaintiff was entitled, shorting her $500 per month for ten months until Plaintiff discovered the error and demanded her full benefit. After making only the first monthly payment, PanAm terminated Plaintiff's benefits in March 2006. This was done because PanAm maintains a business practice, illegal under California law, of always terminating disability benefits based on the initial estimate of length of disability made by the attending

physician. PanAm never investigates whether such termination of benefits is proper. Then, while her benefits were cut off, PanAm wrongfully withdrew a year's worth of premiums from Plaintiff's bank account. It took PanAm months to restart Plaintiff's benefits, and when it finally did restart the benefits, it began paying her 90 days in arrears. Although California law clearly requires that benefits be paid current, PanAm continued to pay 90 days in arrears until April 2008. PanAm failed to properly account for premiums and refunds, sent incomprehensible and confusing information to Plaintiff, and made written misrepresentations about policy benefits, refunds of premiums and PanAm's claims handling practices. Senior officers at PanAm were aware of how Plaintiff's claims were handled, and approved the wrongful and illegal practices. Defendant's conduct was egregious and indicative of bad faith in almost every area of its operations.

## II.        STATEMENT OF FACTS

### A.        PanAm Initially Underpays Plaintiff's Benefits.

Plaintiff purchased long term disability insurance from Defendant in 1991. She duly paid her premiums and supplemented the coverage as the years passed. Mathews Decl. ¶2. In 2005 she fell and suffered neck and upper back injuries that disabled her from performing the principal duties of her occupation of dental hygienist. Mathews Decl. ¶1.

PanAm received the claim early in 2006. It began the claim process by failing to determine which policies covered Plaintiff and what benefits those policies provided. Mathews Decl. ¶26. It overlooked the fact that Plaintiff was entitled to monthly benefits of $2700 per month, incorrectly representing to her that she was only entitled to benefits of only $2200 per month. Mathews Decl. ¶24; Depo Bk. Ex. 28[1].

Cory Simon, designated as the person at PanAm most knowledgeable how claims are handled (Ex. F to Kinney Decl. 6:5-22; Depo Bk. Ex. 1), testified that PanAm indexes all policies under the insured's name, birth date and social security number. Ex. G to Kinney Decl. 116:20-117:3. Thus, PanAm had a computer system that would permit a claims examiner to triple check for benefits. If a claims examiner utilized that system, he could be assured of finding all

---

[1] The Deposition Exhibit Book is Exhibit J to the Kinney Declaration. As shorthand, the documents contained in that Book will be hereinafter referred to as "Depo Bk. Ex. #."

1    applicable policies.

2          Of course, this system does not work unless claims personnel are trained to use it, and

3    unless business policies exist requiring claims personnel to use the system each time a claim

4    arrives. PanAm, however, provides neither training nor policies to its claims personnel.

5          In August 2005, Michael Jones began handling all of PanAm's long term disability

6    claims. He is the only claims examiner handling these claims, and thus has no peers to turn to for

7    training. He received no training from PanAm on disability claims prior to taking over the entire

8    disability claims portfolio. Ex. H to Kinney Decl.19:3-20:14. He came to PanAm with no training

9    in disability claims. He had previously worked through temporary personnel agencies handling

10   medical insurance claims. Ex. H to Kinney Decl.10:14-18:8. After taking on the entire disability

11   claims portfolio, Mr. Jones received no training whatsoever from PanAm on disability claims. Ex.

12   H to Kinney Decl. 20:21-21:8. Thus, PanAm assigned all its disability claims to someone with no

13   disability claim experience, and provided no training. This was sure to result bad faith, as it did in

14   Plaintiff's case on numerous occasions. Bernstein Decl. ¶4-9.

15         PanAm has no claims manual for handling disability claims. Ex. F to Kinney Decl.

16   32:6-9; Ex. H to Kinney Decl. 22:18-25. Apparently recognizing that it is illegal under California

17   law to operate an insurance company without a claims manual, Defendant tried to manufacture one

18   during discovery.  PanAm located a pamphlet that another company had written, and produced it

19   in response to a request that it produce its claims manual. At deposition, it became clear that this

20   pamphlet was not a claims manual, and was never used as one. Mr. Jones testified that his

21   supervisor showed him the pamphlet a year or two ago, telling him that it provided some general

22   information on what the competition was doing. Mr. Jones looked at it on that one occasion for a

23   very brief moment, and has never looked at it since. Ex. I to Kinney Decl.142:1-143:17. Mr.

24   Jones does not recall ever reading certain sections of the pamphlet that address subjects that would

25   be relevant to Plaintiff's claim, and testified that those sections had no influence on his handling of

26   Plaintiff's claim. Ex. H to Kinney Decl.144:8-145:8. Mr. Simon testified that the pamphlet is the

27   only document at PanAm that provides guidance for decisions on disability claims. Ex. F to

28   Kinney Decl. 35:10-15.

Plaintiff's Opposition to Motion for Summary Judgment          Case No. C 07-02757-SBA

On August 23, 2006, Plaintiff wrote to PanAm to discuss a number of matters (several of them the result of other acts of wrongdoing by PanAm discussed below). One issue she raised in that letter was her belief that she was not receiving her full monthly benefit. She thought that she had purchased disability insurance that came close to protecting her pre-disability income, and the $2200 per month that PanAm was paying seemed too low. Mathews Decl. ¶20; Ex. D to Mathews Decl. Mr. Jones responded on August 25, 2006, telling Plaintiff that: "Your policies currently pay at total of $2200." Mathews Decl. ¶24 Depo Bk. Ex. 28.

It turned out that there was an additional insurance policy that PanAm had overlooked. Although PanAm overlooked the policy when it calculated the Plaintiff's benefits, it did not overlook the premiums. Every month, PanAm withdrew a premium from Plaintiff's bank account in connection with the policy. In August 2006, Plaintiff noticed that PanAm was withdrawing $37.70 from her bank account each month, although all withdrawals should have stopped. On August 23, 2006, she wrote to Mr. Jones that premiums were being withdrawn from her account. Mathews Decl. ¶19 and Ex. D. When confronted with the fact that PanAm was withdrawing premiums from the Mathews account apparently unconnected with the policies he knew about, Mr. Jones did not investigate. Ex. I to Kinney Decl. 148:25-149:13.

In September 2006, Plaintiff received an overdraft notice from her bank as the result of PanAm withdrawing money from her bank account. Plaintiff telephoned the billing department at PanAm to find out why money was being withdrawn from her account. The billing department told her that it was withdrawing premiums in connection with an additional policy. The claims department had missed this policy, and should have been paying benefits on it. Thereafter, Plaintiff was paid the monthly benefit on the additional policy. Mathews Decl. ¶26.

### B.    PanAm Wrongfully Terminated the Claim after Only One Month.

After making only the first monthly payment, PanAm terminated Plaintiff's benefits in March 2006. At deposition, Michael Jones, designated by PanAm as the "person most knowledgeable" on the claims presented by Plaintiff (Ex. I to Kinney Decl. 101:7-102:3; Depo Bk. Ex. 1), testified that the only reason PanAm cut off benefits was because the initial Attending Physician Statement ("APS") contained a prognosis that suggested that Plaintiff might recover by

March 15, 2006. Ex. H to Kinney Decl. 59:18-62:7; 62:14-63:11. The initial APS was ambiguous at best in this regard, as it indicated that Plaintiff might need surgery. Depo Bk. Ex. 9 at p. PAL0587.

Prior to the time that PanAm cut off Plaintiff's benefits, it had received information from Plaintiff's doctor indicating that Plaintiff had not recovered and that she would be out of work for several more months. Mr. Jones understood that it was inconclusive that Plaintiff would be back to work by March 15. Ex. H to Kinney Decl. 67:13-68:22. That did not affect his decision to cut off Plaintiff's benefits because PanAm always relies on the original APS no matter what. Ex. H to Kinney Decl. 68:23-72:6. PanAm did not investigate to determine whether Plaintiff had, in fact, recovered. It did not contact Plaintiff, her employer or her physicians. Such investigation would have been contrary to PanAm's stated practice of relying exclusively on the initial APS.

**C.    PanAm Withdraws More than $1,000 from Plaintiff's Bank Account.**

In April 2006, PanAm withdrew a full year of premiums from the Mathews' bank account. Mathews Decl. ¶12 and Exhibit C. Of course, it should not have withdrawn any money, since the policy provided for a waiver of premiums. PanAm had sent Plaintiff a letter on March 13, 2006 (just two days before cutting off her benefits) advising Plaintiff that PanAm had classified her as disabled and that all premiums were waived. Ex. H to Kinney Decl. 82:6-86:7; Depo Bk. Ex. 15. PanAm nonetheless took twelve times the monthly premium, and overdrew Plaintiff's bank account.

Mr. Jones was assigned the task of handling the premium waiver issues, but no one taught him how to do it. Ex. I to Kinney Decl. 128:20-130:21. Because Mr. Jones was untrained, PanAm emptied Plaintiff's bank account, causing bounced checks and adding to the stress of an already stressful time in Plaintiff's life.

**D.    PanAm Unreasonably Delayed Reinstatement of Plaintiff's Benefits.**

PanAm refused to pay benefits from April through July 2006, although it knew Plaintiff was not working and that her treating physicians had determined that she was disabled. PanAm had information in its files before it stopped paying benefits that showed that Plaintiff was

returning to work due to disability. Ex. H to Kinney Decl. 67:13-68:22.[2]  It received further

confirmations of this fact in April and May.  PanAm obtained the records from Plaintiff's treating

doctors, all of which it had received by May 23, 2006.  Kinney Decl. ¶5 and Ex. A and B.

PanAm did nothing on the claim between May 23 and July 12, 2006.  On July 12, 2006, based on

information it had been holding for several weeks, PanAm resumed paying benefits. Depo Bk. Ex.

21.[3]

<b>E.        PanAm pays benefits 90 days in arrears.</b>

When PanAm finally resumed benefit payments in July 2006, it began paying benefits

90 days in arrears.  Mr. Jones' reason for doing this is unclear, although he apparently does this

frequently.  Ex. I to Kinney Decl. 135:19-138:4.  PanAm acknowledges that it is obligated to

make benefits payments current, and not to pay in arrears as was done here.  Ex. H to Kinney

Decl. 76:2-77:3.  PanAm continued to pay benefits 90 days in arrears until April 5, 2008, when it

finally brought the benefits current.  Mathews Decl ¶43.

The decision to pay benefits in arrears was clearly a calculated decision by PanAm,

made repeatedly and not just a simple oversight.  Mr. Jones made the decision that Plaintiff was

disabled by August 25, 2006, when he wrote to Plaintiff (Depo Bk. Ex. 25) to tell her, among

other things, that he had returned her to "waiver of premium" status.  Premiums are not waived or

refunded until disability is established.  The letter of August 25, 2006, sets out a list of the benefits

payments made, showing that they were being paid 90 days in arrears.  (Depo Bk. Ex. 25, p. 2.)

Thus, Mr. Jones was aware that Plaintiff was being paid in arrears.

On September 13, 2006, PanAm sent Plaintiff a benefit check on the newly

discovered policy, 90 days in arrears.  Kinney Decl. ¶6; Exhibit C thereto.  Thereafter, PanAm

---

[2]    In the moving papers, Defendant suggests that Mr. Jones stopped benefits so that he could investigate the claim further.  That is not what happened.  Benefits were cut off because PanAm's business policy requires them to be cut off without investigation based on the initial APS.  In addition to Mr. Jones testimony on this point, see Depo Bk. Ex. 6, in which PanAm sets forth its understanding as of May 2006.

[3]    The letter to Plaintiff reinstating benefits indicated that Plaintiff had only been insured for two years and that her application was being investigated for that reason.  Depo Bk. Ex. 21. It also suggested that Defendant might try to obtain a judgment against Plaintiff.

made monthly payments 90 days in arrears, mostly accompanied by EOBs showing the payments were being made in arrears.  These EOBs are not mere computer generated forms.  Rather, they are prepared each month by a PanAm employee. Mr. Jones personally authorized each check that went out. Ex D to Kinney Decl. 23:7-35:15. Thus, each month, Mr. Jones knowingly paid Plaintiff 90 days in arrears.

The issue of improper payment in arrears was raised in the Complaint in this matter (Complaint on file herein 4:6-9), which was served on PanAm on April 27, 2007.  (Notice of Removal on file in this case 2:3).  The allegations in the Complaint did not cause PanAm to stop paying in arrears, and this practice continued unabated.

Plaintiff brought this issue up again in the Joint Case Management Statement filed herein on October 1, 2007 (JCMS 4:15-16).  PanAm still did not bring payments current.

In 2008, PanAm issued EOBs that cover up the fact that it was paying Plaintiff in arrears.  On February 7, 2008, Mr. Jones prepared EOBs indicating that Plaintiff was being paid current, when in fact she was being paid 90 days in arrears.  Ex. I to Kinney Decl. 246:4-249:6; Mathews Decl. ¶43 and Exhibit F. This misrepresentation was repeated the following month. Mathews Decl. ¶43.

Finally, just before it filed this Motion for Summary Judgment, PanAm sent Plaintiff checks for the arrearage, together with a letter setting out an incorrect calculation of the arrearage. (The letter is wrong; the checks are right.)  Mathews Decl. ¶43 and Exhibit G.  The letter states that the payments were the result of an audit of the policies, but obviously PanAm was responding to the claims put forward in this lawsuit.  Plaintiff incurred attorney fees and costs associated with that payment. Kinney Decl. ¶8.

### F.        PanAm Denies Plaintiff's Request for Rehabilitation Benefits.

A primary reason Plaintiff purchased this insurance was to obtain rehabilitation benefits.  As a dental hygienist, Plaintiff was concerned that her ability to perform the physical duties of her job could easily become compromised.  She perceived the PanAm policy, providing five years "own occupation" disability benefits and vocational rehabilitation benefits, as a potential bridge to a new career if she could no longer work as a dental hygienist.  Mathews Decl. ¶2-6.

1   Both the policy and the accompanying literature made clear that PanAm would provide vocational

2   rehabilitation benefits, and Plaintiff reasonably relied thereon.  Ibid.

3          The subject of vocational rehabilitation first came up in March 2006.  Dr. Eichbaum,

4   one of Plaintiff's treating physicians, suggested to Plaintiff that she should consider retraining into

5   a different field.  Plaintiff told PanAm about Dr. Eichbaum's recommendation in early April 2006.

6   Mathews Decl. ¶11; Depo Bk. Ex. 17.  Mr. Jones reviewed that recommendation when it came in,

7   but did not contact Plaintiff, her physicians or a rehabilitation expert because PanAm has a

8   business practice not to tell the insured what benefits are available and not to process any benefits

9   until the insured asks for them.  Ex. H to Kinney Decl. 89:18-91:20.

10          On April 3, 2006, PanAm received an APS from Dr. Brown, another of Plaintiff's

11   treating physicians.  Depo Bk. Ex. 18.  Dr. Brown indicated that vocational counseling and/or

12   retraining should be considered an option for Plaintiff.  PanAm ignored this suggestion.

13          On July 21, 2006, Plaintiff wrote to PanAm requesting vocational rehabilitation

14   benefits.  Mathews Decl. ¶17; Depo Bk. Ex. 17.  She told PanAm that she was already taking

15   classes that were needed to gain admittance to nursing schools, and that she would be able to apply

16   to nursing schools once she had finished those classes.

17          On or about August 3, 2006, Mr. Jones wrote back to Plaintiff asking for "a copy of

18   her rehabilitation plans."  Depo Bk. Ex. 7.

19          On August 23, 2006, Plaintiff wrote to Mr. Jones, laying out her rehabilitation plans

20   as best she could, explaining how important it was for her to return to the work force due to the

21   personal and financial stress that her disability was causing, and pointing out that the rehabilitation

22   benefit was "the primary motivation for my purchasing your company's coverage in the first

23   place."  As to her specific plans, she advised that she would be seeking a Bachelor's Degree and

24   would be aiming for a Nurse Practitioner certification.  She was interested in attending Santa Rosa

25   JC, Sonoma State, Pacific Union College or Napa Valley JC.  She wanted to start in Fall 2007.

26   The program leading to Nurse Practitioner would run about four years.  Mathews Decl. ¶22;

27   Exhibit D thereto; Depo Bk. Ex. 8.

28          Two days later on August 25, 2006, Mr. Jones denied the claim.  His entire

1   discussion of rehabilitation benefits is as follows:

2   "As for your rehabilitation plan Pan American Life will not be extending benefits."

3   Mathews Decl. ¶25; Depo Bk. Ex. 28.

4   Discovery has demonstrated that Mr. Jones has denied all of the claims for

5   rehabilitation benefits that he has ever seen. Ex. H to Kinney Decl. 28:10-16. Of course, PanAm

6   never alerts policyholders to this benefit, so most claims probably never even get made. Mr. Jones

7   has received no training or guidance as to how to handle claims for rehabilitation benefits. PanAm

8   has supplied him with no written guidelines on the subject. Ex. H to Kinney Decl. 22:18-25. Mr.

9   Jones' supervisor, Mr. Simon, likewise has no background or training in how to handle

10  rehabilitation claims. Ex. F to Kinney Decl. 23:14-23. PanAm has no claims manual at all. Ex. F

11  to Kinney Decl. 32:6-9; Ex. H to Kinney Decl. 22:18-25.

12  Mr. Simon, PanAm's "person most knowledgeable," testified at deposition that as far

13  as he knows, PanAm has never provided rehabilitation benefits to anyone. Ex. F to Kinney Decl.

14  26:18-27:8. PanAm has never pointed out the rehabilitation benefit to any disabled policyholder.

15  Ex. F to Kinney Decl. 27:13-16 and 64:8-12.

16  Mr. Jones admits that he did not have sufficient information to deny the claim when

17  he wrote his denial letter on August 25. He testified that he should have asked Plaintiff for more

18  information. Ex. I to Kinney Decl. 165:24-166:3. Mr. Simon agrees that PanAm should have

19  asked Plaintiff to provide further information before denying her claim. Ex. G to Kinney Decl.

20  137:24-138:16.

21  In fact, Mr. Jones already possessed enough information to grant the rehabilitation

22  benefits, or he could have easily obtained the information himself. Mr. Jones testified that he

23  needed only three pieces of information to provide rehabilitation benefits: a time line, a dollar

24  amount, and a goal. Ex. H to Kinney Decl. 33:6-34:22. Of course, Mr. Jones never disclosed

25  this supposed standard to Plaintiff. Mr. Jones has no idea what time line would be acceptable, and

26  believes that in some cases even a twenty year time line would be adequate to grant benefits. Ex.

27  H to Kinney Decl. 38:25-41:1. In any event, Plaintiff provided a time line: she told Mr. Jones

28  that she intended to undertake a program that would run for about four years. As to a goal,

Plaintiff made it clear that her goal is to become a nurse. At deposition, Mr. Jones testified that he does not know whether nursing was an adequate goal. He would need to acquire more information to determine whether Plaintiff could perform as a nurse. Ex. H to Kinney Decl. 43:25-48:10 Had he investigated, he would have learned that Plaintiff can, indeed, perform as a nurse. See, McCaskell Decl. Finally, Mr. Jones could easily have determined the dollar amount involved. Plaintiff provided Mr. Jones a list of schools she was considering. Tuition at those schools is readily ascertainable. Mr. Jones, however, chose not to investigate. Mr. Jones testified that PanAm's policy is to rely solely on the policyholder to provide that sort of information, and PanAm never investigates on its own. Ex. I to Kinney Decl. 166:5-170:12. Mr. Simon confirms that this is PanAm's policy. Ex. F to Kinney Decl. 70:22-71:1.

Following PanAm's terse denial of rehabilitation benefits, Plaintiff complained to the California Department of Insurance and the Napa County District Attorney, listing the failure to provide rehabilitation benefits as one of the issues. In response to these complaints, PanAm wrote letters stating that: "The rehabilitation portion of the policies is an additional benefit that is disbursed at PanAm's discretion. The rehabilitation benefit is not, nor was it ever an entitlement for the insured." Depo Bk. Ex. 31 and 32.[4]

At about this time, Plaintiff went to the California Department of Rehabilitation to see if it would help pay for her vocational rehabilitation. Several months later, the Department of Rehabilitation  agreed to provide certain funding for her nursing education. Mathews Decl. ¶40.

In October 2006 Plaintiff wrote to PanAm asking the following questions:  "Can you tell me what would justify rehabilitation? Is there a company policy regarding rehabilitation? Do you ever approve this benefit or make exceptions, and could I make an appeal for this benefit?" Mathews Decl. ¶31; Depo Bk. Ex. 33. Plaintiff received no answer to any of her questions for more than a month, so on November 27, 2006, she wrote again asking for a response. Mathews

---

[4]    In October 2006, shortly after Plaintiff complained to the Napa County District Attorney and the Department of Insurance, Mr. Jones demanded that she be examined by a doctor at Stanford University. Stanford is over 100 miles from Plaintiff's home in Calistoga. Mathews Decl. ¶29. This violated PanAm's stated policy of taking the closest doctor who can perform the services, Ex. F to Kinney Decl. 50:18-51:11, and seems to have been done to retaliate against Plaintiff.

1  Decl. ¶37; Depo Bk. Ex. 37.

2       On December 8, 2006, Mr. Jones responded to Plaintiff:

3            "Pan American Life reserves the right to be involved with an insured's vocational
             rehabilitation process.  This includes but is not limited to evaluation by certified
4            rehabilitation specialists, physical testing and vocational aptitude testing.  This benefit
             is not a guaranteed benefit for all disabled insured and must be agreed upon and
5            evaluated in advance on a case by case basis.  As we have previously indicated in the
             correspondence dated August 31, 2006 (sic) Pan American Life will not be entering
6            into a rehabilitation agreement with you."

7       This not only fails to answer Plaintiff's questions (Ex. I to Kinney Decl.

8  243:7-246:3), some of the information contained in it is untrue.  In fact, PanAm makes no effort

9  whatsoever to be involved with an insured's vocational rehabilitation process.  Indeed, it could not

10 be less involved.  All PanAm does is review the request for rehabilitation benefits and deny it.  It

11 does not use certified rehabilitation specialists.  Mr. Simon, who runs the claim department and

12 approves all expenditures for outside vendors, does not even know what a certified rehabilitation

13 specialist is, and is sure that PanAm has never used one.  Ex. F to Kinney Decl. 72:14-20.  There

14 is no evidence that PanAm has ever used physical testing or vocational rehabilitation testing in

15 connection with a request for rehabilitation benefits.  There certainly was none in connection with

16 Plaintiff's request.

17      Since Mr. Jones made it clear in his December 8, 2006 letter that PanAm would not

18 provide rehabilitation benefits to Plaintiff under any circumstances, Plaintiff gave up trying to

19 communicate further with PanAm on this subject.  Mathews Decl. ¶ 38.

20      **G.       PanAm's Accounting Practices Were Incomprehensible and Wrong.**

21      Several times, PanAm incorrectly refunded premiums collected from Plaintiff.  PanAm

22 still owes Plaintiff money for premiums that it should have refunded long ago.

23      Pursuant to the waiver of premium clause in the policies (Depo Bk. Ex. 4, p.

24 PAL1012) the insured pays premiums during the first 90 days of disability.  If the insured is still

25 disabled at the end of 90 days, PanAm refunds the 90 days of premiums.  In Plaintiff's case,

26 however, PanAm refunded only 60 days of premiums in March 2006. The premium on policy

27 1257-758 was $44.20 because Plaintiff had agreed to pay using the Pre-Authorized Collection

28 ("PAC") method (Exhibit B to Jones Decl., p. 3); PanAm refunded $88.40 (Depo Bk. Ex. 15).

1   The premium on policy 1285-764 was $57.07 (Exhibit A to Jones Decl., p. 3); PanAm refunded

2   $114.14. (Depo Bk. Ex. 16).  Thus, the initial refund was light by $106.27.

3          On April 17, 2006, PanAm withdrew $1189.61 from Plaintiff's bank account.

4   Mathews Decl. ¶12, Exhibit C to Mathews Decl.  On May 17, 2006, PanAm issued refunds of

5   $406.80 on policy 1257-758 and $534.57 on policy 1285-764. (Depo Bk. Ex. 26.)  At the time of

6   this refund, PanAm indicated that it was refunding only ten months of premiums, although a year's

7   premiums had been seized. In fact, however, it refunded less than 10 months of premiums. To

8   make a ten month refund, PanAm needed to pay $121.33 more.  Thus, this refund was $121.33

9   light.

10          In June and July 2006, PanAm billed Plaintiff for premiums. Threatened with losing

11   her disability insurance, Plaintiff mailed checks totaling $105.27 per month to PanAm in June and

12   July 2006.  Mathews Decl. ¶15, Exhibit D to Mathews Decl.; Depo Bk. Ex. 8.

13          On August 25, 2006, PanAm refunded two months worth of premiums, although

14   Plaintiff had paid the premiums for four months.  Mr. Jones wrote that all premiums paid had been

15   refunded.  Depo Bk. Ex. 28.  This statement was not true.

16          In September 2006 Plaintiff contacted the California Department of Insurance and the

17   Napa County District Attorney.  Mathews Decl. ¶27.  In response to an inquiry from the Napa

18   County District Attorney, Mr. Jones wrote that PanAm had refunded all premiums to Plaintiff.

19   Depo Bk. Ex. 31.  This statement was not true.

20          On October 27, 2006, PanAm issued yet another refund, totaling $214.80. Depo Bk.

21   Ex. 34. After that refund, PanAm still owed Plaintiff $219.60. No further refunds have issued.

22          In addition to all of these difficulties, there were undated and confusing EOBs

23   (Mathews Decl. ¶24.); payments of benefits in the wrong amount (Mathews Decl. ¶20, 23, 34); and

24   failure to provide explanations for premium refunds (Mathews Decl. ¶10, 14, 23, 28 .)

25   **III.**       **ARGUMENT**

26         **A.**         **Standard on Motion for Summary Judgment.**

27          On a Motion for Summary Judgment, the court must view the evidence in the light

28   most favorable to the nonmoving party. Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000).

1  The court must not weigh the evidence or determine the truth of the matter, but only determine

2  whether there is a genuine issue for trial. Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir.

3  1999).  In insurance bad faith cases, an insurer is not entitled to a summary judgment where,

4  viewing the facts in the light most favorably to the insured, a jury could  conclude that the insurer

5  acted unreasonably. See Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1161 (9th Cir.

6  2002); Hubka v. Paul Revere Life Ins. Co., 215 F. Supp.2d 1089, 1092 (S.D. Cal. 2002). The

7  reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact. Hangarter

8  v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1010 (9th Cir.2004).

9          **B.          There is Overwhelming Evidence of Breach of Contract and Damages**.

10          The Complaint alleges three breaches of the insurance contract:  failure to pay benefits

11 in full; failure to refund all premiums per the policy; and failure to provide rehabilitation benefits.

12 There is convincing evidence that PanAm breached the contract.

13          By its recent actions, PanAm has admitted that it failed to pay benefits in full. At the

14 time the Complaint was filed, PanAm owed Plaintiff for 90 days of past due policy benefits. The

15 policies contain a provision that obligates PanAm to pay benefits current:

16          "When Proof of Loss has been received at our home office, we will:
                **Pay all income payments then due**;
17              Pay all future income payments monthly **as they become due**;
                When our liability ends, immediately pay any balance due at that time."

18

19 Ex. A to Jones Decl. in support of MSJ, PAL1014; Depo Bk. Ex. 4.

20 Insurance Code § 10350.8 requires disability insurers to pay benefits current.

21          In April 2008, after a year of litigation, PanAm finally acknowledged that it had

22 breached the contract by paying the arrearage.  While this voluntary payment reduces the amount

23 of recoverable contract damages by the amount of payment, it does not affect the tort claims.  In

24 fact, the recent payment of past due benefits serves to demonstrate how unreasonable PanAm had

25 been in refusing to pay benefits up until now.  Further, PanAm's payment failed to make Plaintiff

26 whole, because Plaintiff has incurred attorney fees to force PanAm to make the payment. Kinney

27 Decl. ¶8; Exhibit E thereto. These fees constitute damages under the rule announced in Brandt v.

28 Superior Court 37 Cal.3d 813 (1985).

          The second category of breach of contract alleged in the Complaint stems from

1   PanAm's failure to refund premiums as provided in the policies.  As set forth above, PanAm has

2   consistently failed to account for or properly refund premiums to Plaintiff.  PanAm still has not

3   refunded all of the premiums as required by the policies.

4          The third breach of contract alleged in the Complaint is the failure to pay

5   rehabilitation benefits.  This is the most egregious breach.  The rehabilitation benefit was a

6   significant reason Plaintiff purchased these policies (Mathews Decl. ¶2-6).  Plaintiff duly applied

7   for the benefit, and was turned down without explanation.  When she requested further

8   clarification, PanAm at first ignored her and later misrepresented its claims practices. PanAm made

9   it clear that there was nothing Plaintiff could say or do that would convince it to provide the

10  benefit.  Discovery has revealed that PanAm has no policy manual concerning rehabilitation

11  benefits, has no one with experience in vocational rehabilitation reviewing claims, never

12  investigates claims, never advises insureds that they might qualify for the benefit, and has denied

13  every claim for rehabilitation benefits ever presented to it.

14         PanAm still has not acknowledged that Plaintiff is entitled to the rehabilitation benefit,

15  although Plaintiff obviously qualifies for the benefit.  See the Declaration of Dan McCaskell,

16  Ph.D., who unequivocally opines that Plaintiff qualifies for the benefit.  Plaintiff's entitlement to

17  the rehabilitation benefit is underlined by the fact that after PanAm refused to provide the benefit,

18  Plaintiff applied to the California Department of Rehabilitation, which found that vocational

19  rehabilitation was appropriate for her.  Plaintiff came to the Department of Rehabilitation with the

20  same information she had brought to PanAm.  Mathews Decl. ¶39-40.

21         PanAm argues that, because Plaintiff obtained benefits from the State of California,

22  PanAm is not liable to pay rehabilitation benefits.  This argument fails for a number of reasons.

23         First, insurers are not relieved from their obligation to provide policy benefits merely

24  because the insured has collateral contracts or relations with third persons which relieve him wholly

25  or partly from the loss against which the insurance company agreed to indemnify him. Textron

26  Financial Corporation v. National Union Fire Insurance Company of Pittsburgh, 118 Cal. App. 4th

27  1061, 1077 (2004); Atmel Corp. v. St. Paul Fire & Marine Ins. Co., 430 F. Supp. 2d 984, 986

28  (N.D. Cal. 2006).  There is a strong public policy behind this rule.  Absent such a rule, it would be

1   in the best interest of insurance companies to refuse to pay benefits in cases where the benefits

2   might be available from the government.  The rule that insurers must pay benefits according to

3   their contracts is found in California Insurance Code § 10111.

4          Second, PanAm has admitted that it must pay the rehabilitation benefit regardless of

5   whether Plaintiff found another source of funding.  PanAm designated Cory Simon as its person

6   most knowledgeable on the interpretation of the policy language governing the rehabilitation

7   benefit (Ex. F to Kinney Decl. 6:2-7:18).  Mr. Simon testified that PanAm interprets the policy

8   language of the Income Protection Policy to mean that PanAm may not offset rehabilitation

9   benefits received from another source (Ex. G to Kinney Decl.  103:7-24).  In other words, PanAm

10  understands that it is obligated to pay policy benefits regardless of whether another source provides

11  coverage.  Thus, the decision of the Department of Rehabilitation to approve Plaintiff for nursing

12  school is not relevant to damages.

13         Third, as a matter of law, the benefits provided by the Department of Rehabilitation

14  are secondary to benefits available through private insurance.  Cal. Admin. Code tit. 9, § 7196 and

15  § 7197. The obligation of PanAm is primary, and PanAm may not escape its obligation by looking

16  to the Department of Rehabilitation.

17         Fourth, the Department of Rehabilitation has not paid all of Plaintiff's expenses under

18  the plan it approved.  Plaintiff has past and ongoing expenses that PanAm should pay.  Mathews

19  Decl. ¶41.

20         Finally, if PanAm had not breached its contractual obligation to provide rehabilitation

21  benefits, Plaintiff would have attended the more expensive and better regarded Pacific Union

22  College, which is nearer her home.  Mathews Decl. ¶42.  Although PanAm was on notice that

23  Plaintiff wanted to attend Pacific Union, PanAm declined to investigate whether Pacific Union was

24  appropriate for Plaintiff's rehabilitation.  PanAm's one sentence denial of Plaintiff's claim did not

25  indicate that PanAm's denial was at all based on a refusal to allow Plaintiff to attend Pacific

26  Union.  Under these circumstances, PanAm has waived its claim, raised for the first time in its

27  moving papers, that it would not pay the tuition at Pacific Union.  See, e.g., Legarra v. Federated

28  Mut. Ins. Co., 35 Cal. App. 4th 1472, 1486 (1995) holding that: "an insurer waives its right to

rely on defenses that it has not specified in its letter denying coverage, but which a reasonable investigation would have disclosed." Legarra points out that this rule is grounded in the public policy that insurers need an incentive to make a thorough investigation of claims. Here, by refusing to investigate Plaintiff's claim, by refusing to tell Plaintiff what was defective about the claim she submitted, and by refusing to allow Plaintiff to appeal her claim, PanAm waived any right (if it had one) to insist that Plaintiff attend only public colleges.

### C.    There is Overwhelming Evidence of Bad Faith.

The implied covenant of good faith and fair dealing serves to prevent an insurer from impairing the insured's right to receive the benefits for which she contracted. Egan v. Mutual of Omaha Ins. Co., 24 Cal. 3d 809, 818-809 (1979). Unreasonable withholding of policy benefits due the insured gives rise to a tort cause of action for breach of the implied covenant. Gruenberg v. Aetna Insurance Co., 9 Cal. 3d 566, 574 (1973). Withholding of benefits may take any of the following forms:  denial of benefits due (Mariscal v. Old Republic Ins. Co., 42 Cal. App. 4th 1617, 1623 (1996)); discontinuing ongoing benefit payments (Morris v. Paul Revere Life Ins. Co., 109 Cal. App. 4th 966, 977 (2003)); paying less than due (Neal v. Farmers Ins. Exch., 21 Cal. 3d 910, 921 (1978)); or unreasonable delay in payment (Waller v. Truck Ins. Exch., Inc., 11 Cal 4th 1, 36 (1995)). PanAm is guilty of all four forms of withholding benefits. It improperly denied the rehabilitation benefit. It improperly cut off the monthly disability benefits in March 2006 without good cause. It unreasonably failed to determine what policies Plaintiff had, and as a result paid less than was due in monthly benefits, and it underpaid the refund of premiums due under the policy. It unreasonably delayed payment of three months of disability benefits almost until now.

The denial of rehabilitation benefits demonstrates bad faith in several ways. Each of the following is a wrongful act that provides evidence of bad faith.

PanAm has a business policy of never advising its insureds that they might be entitled to rehabilitation benefits. California law requires the carrier to disclose "all benefits, coverage, time limits or other provisions of any insurance policy issued by that insurer that may apply." 10 Cal Admin Code § 2695.4. PanAm violated this rule when it failed to tell Plaintiff that rehabilitation benefits might be available in April 2006 when PanAm first received medical reports

1    that rehabilitation might be appropriate.  It has a business practice of violating this rule, and

2    violates it in the case of every policyholder to whom it applies.

3          PanAm does not have a claims manual that addresses how to handle rehabilitation

4    benefits.  In fact, it does not have any claims manual at all.  California imposes a requirement on

5    all carriers to have a claims manual, and requires that the manual include a copy of California

6    regulations regarding claims handling practices. 10 Cal Admin Code § 2695.6.  The same law also

7    requires insurers to train claims personnel, another rule ignored by PanAm.  Further, the Unfair

8    Claims Settlement Practices Act, Ins. Code § 790.03(h), requires insurers "to adopt and implement

9    reasonable standards for the prompt investigation or claims."  Courts have found that a statutory

10   violation of the Unfair Claims Settlement Practices Act has evidentiary value in a bad faith actions,

11   i. e., it tends to show a breach of the insurer's implied covenant.  Estate of Parker ex rel. Parker

12   v. AIG Life Ins., 317 F. Supp 1167, 1171-2 (C.D. Cal 2004); Rattan v. United Services Auto.

13   Ass'n, 84 Cal. App.4th 715, 724 (2000).

14         The duty of good faith and fair dealing requires an insurer to act reasonably in

15   denying coverage. Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc., 78 Cal.

16   App. 4th 847, 879 (2000).  An insurer acts unreasonably in denying coverage where it fails to

17   reasonably investigate a claim. Id. at 879-80. "An unreasonable failure to investigate may be found

18   when an insurer fails to consider, or seek to discover, evidence relevant to the issues of liability

19   and damages." Id. at 880.  Here, PanAm's failure to investigate was total.  It did not even make a

20   pretense of investigation, and never does.  Ex. I to Kinney Decl. 166:5-170:12; Ex. F to Kinney

21   Decl. 70:22-71:1. As soon as Plaintiff told PanAm that she wanted to rehabilitate into nursing by

22   pursuing a degree at a Northern California college, PanAm denied her claim. The denial letter

23   went out within forty eight hours.  No investigation whatsoever took place, nor does it ever.  An

24   insurer commits the tort of bad faith when it denies payments to its insured without fully

25   investigating the grounds for its denial. Frommoethelydo v. Fire Ins. Exchange, 42 Cal. 3d 208,

26   215 (1986); Egan v. Mutual of Omaha Ins. Co., 24 Cal. 3d 809, 818-19 (1979).

27         After its initial denial of rehabilitation benefits, PanAm continued its bad faith refusal

28   to investigate.  In October 2006, Plaintiff asked PanAm what she needed to justify rehabilitation

1  benefits, whether PanAm ever granted the benefits, and whether she could appeal.  PanAm ignored

2  her questions for a month, then reiterated its conclusion that she was not entitled to benefits.  The

3  duty to investigate is not suspended by the initial denial of the claim (nor by  filing of suit).

4  PanAm's continued failure to investigate also gives rise to bad faith liability.  Jordan v. Allstate

5  Ins. Co., 148 Cal. App. 4th 1062, 1076 (2007).

6          PanAm's purported reason for denying the rehabilitation benefits - that Plaintiff did

7  not provide information of exactly the sort it wanted - also gives rise to bad faith liability.

8  McCormick v. Sentinel Life Ins. Co., 153 Cal. App. 3d 1030, 1046 (1984) (insurer does not have

9  the right to insist that the claim be proved only through certain types of evidence).   PanAm also

10  committed bad faith when it failed to respond to Plaintiff's request to appeal the denial of benefits.

11  Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc. supra at 880.

12          PanAm also breached its duty of good faith and fair dealing when it improperly

13  terminated benefits in March 2006.  PanAm testified that its business practice is always to cut off

14  monthly disability benefits in accordance with the prognosis in the initial APS, without inquiry to

15  the doctor, the insured or the employer.  This business practice has been illegal in California for

16  decades.  Miller v. National American Life Ins. Co. of Calif., 54 Cal. App. 3d 331, 339-340

17  (1976).  PanAm's belated suggestion in the moving papers that it cut off Plaintiff's benefits

18  because it needed to perform further investigation is just untrue.  PanAm did not make a decision

19  to perform a further investigation before cutting off benefits.  It automatically cut off the benefits

20  (Ex. H to Kinney Decl. 68:23-72:6).  Confirmation of the fact that PanAm's current assertion in

21  this regard was recently concocted can be seen in Depo Bk. Ex. 6, a letter sent by PanAm in May

22  2006.  If Plaintiff's disability benefits were cut off at that time for further investigation, as PanAm

23  now claims, Depo Bk. Ex. 6 would have said so.  Instead it says "you returned to work on

24  3/15/06," an incorrect statement that flows from PanAm's policy of cutting off benefits

25  automatically based on the APS without investigation.

26          PanAm continued to withhold monthly benefits from Plaintiff from March until July

27  2006.  Even if PanAm had possessed a valid reason for cutting off benefits in March, its delay in

28  reinstating benefits until July is unreasonable.  California law requires insurers to process claims

withing 40 days.  10 Cal Admin Code § 2695.7.  Even absent the regulation, PanAm would be in bad faith if it unreasonably delayed processing the claim.  See, e.g., <u>Cardiner v. Provident Life & Accident Ins. Co.</u>, 158 F. Supp.2d 1088, 1099 (C.D. Cal. 2001); <u>Love v. Fire Ins. Exch.</u>, 221 Cal. App.3d 1136, 1148 (1990).  The evidence shows that PanAm sat on the claim for weeks without processing it, ultimately reinstating Plaintiff's benefits in July based on information it had possessed for two months.

When PanAm finally did resume the monthly disability payments, it made the payments three months in arrears.  This violated California law which requires that benefits be paid current.  Ins. Code § 10350.8.  It also violated the clear terms of the insurance policies.  See, e.g., the section entitled "Time of Payment of Claim" Ex. A to Jones Decl., PAL 1014.  PanAm continued to violate this law and the terms of the policy every month thereafter until April 2008.  For a year and a half it sent EOBs that showed that it was paying in arrears, and thereafter it provided Plaintiff with EOBs stating that it was paying current, although it was still paying in arrears.  It ignored the claim in the Complaint that it was paying in arrears.  PanAm ignored the claim in the Joint Case Management Statement that it was paying in arrears.  Finally, after the close of discovery, PanAm paid the three months of benefits it had been withholding.  Thus, PanAm has finally acknowledged that its conduct of paying in arrears was improper.

Because PanAm obviously committed bad faith in connection with its failure to pay benefits current, Plaintiff is entitled to fees under <u>Brandt v. Superior Court</u>, 37 Cal.3d 813 (1985).  See also <u>Cassim v. Allstate Ins. Co.</u>, 33 Cal.4th 780 (2004); <u>Essex Ins. Co. v. Five Star Dye House, Inc.</u>, 38 Cal. 4th 1252 (2006).  Plaintiff has incurred attorney fees in connection with the recovery of the past due benefits (Kinney Decl. ¶8 and Exhibit E) and therefore is entitled to recover <u>Brandt</u> fees.[5]

A bad faith disregard of its duties to its insureds permeates PanAm's handling of this claim.  Bernstein Decl.  It failed to locate all of the insurance policies under which Plaintiff was insured, in spite of Plaintiff's inquiries, resulting in a ten month delay in a portion of Plaintiff's

---

[5]    The amount of <u>Brandt</u> fees recoverable in this action is not at issue in this Motion for Summary Judgment.  The calculation of the amount will occur at trial.

benefits.  It misrepresented to Plaintiff that it was paying all of the benefits to which Plaintiff was entitled. The claims department is staffed by untrained and unsupervised personnel, who are not provided with written policies and procedures for handling claims of the sort presented here.  It improperly withdrew a year's premiums from Plaintiff's bank account.  It unreasonably failed to properly account for premium refunds (see <u>Johnson v. Mutual Benefit Life Ins. Co.</u>, 847 F.2d 600, 603 (9th Cir. 1988)), it paid benefits in the wrong amount, and provided confusing explanations of refunds and benefit payments.  It unreasonably required Plaintiff to travel more than 100 miles for a medical examination, in violation of PanAm's standard practices, immediately after Plaintiff complained about PanAm to the Department or Insurance and the District Attorney.  Everything PanAm did on this claim reeks of a conscious disregard for Plaintiff's rights and the rights of policyholders in general.

D.    **There is Substantial Evidence of Misrepresentation which Supports Plaintiff's Claims for Fraud and Negligent Misrepresentation.**

In addition to bad faith, the Complaint states causes of action for fraud and negligent misrepresentation.  There is substantial evidence of misrepresentation here.

A case directly on point is <u>Miller v. National American Life Ins. Co. of Calif.</u>, 54 Cal. App. 3d 331 (1976).  There, the Court upheld a fraud judgment against an insurance company based upon representations that the company would make the payments described in policy. <u>Id</u> at 338. Here, Plaintiff points to representations both within and outside of the policies, which not only represented that policy benefits would be paid, but also represented that PanAm would treat Plaintiff well and that in the event of a claim, PanAm was "there to serve" Plaintiff and that her "satisfaction was very important to" PanAm, and that if she should make a claim, PanAm "fully expect(s) to provide a fair settlement in a timely fashion." Mathews Decl. ¶2-6; Exhibits A and B thereto.  As here, <u>Miller</u> involved a case in which the insurer automatically cut off benefits based solely on the APS, without investigation.  The <u>Miller</u> Court stated:

> "The wording of the questions, the policy of interpretation without warning or
> guidance to the attending physician, and the failure to consult the doctor as to an
> acknowledged uncertainty all lend support to the inference of an intent not to live up

1    to the promised coverage." Id at 339.

2         The facts here are for more egregious than those presented in <u>Miller</u>.   Not only did

3    PanAm cut off monthly disability benefits without investigation, when it came to the rehabilitation

4    benefit, it engaged in practices that assure that it never pays rehabilitation benefits, that stifle

5    inquiries from claimants about policy benefits, and that defeat the purpose for which policyholders

6    purchase these policies.

7         The fact that PanAm designed its business to thwart the reasonable expectations of

8    policyholders demonstrates the falsity of the representations that it made both within and outside of

9    the policies.  It is hard to imagine a clearer example of misrepresentation in the insurance context.

10                **E.        PanAm Has Violated the Unfair Competition Law.**

11        The Complaint states a cause of action for violation of the Unfair Competition Law

12   (Cal. Bus. & Prof. Code §17200 et. seq.) ("UCL").  Substantial evidence supports this theory.

13        The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and

14   unfair, deceptive, untrue or misleading advertising . . . ."  It is designed to protect consumers as

15   well as competitors.  Consumers need the greatest protection from sharp business practices.  <u>People</u>

16   <u>ex rel. Bill Lockyer v. Fremont Life Ins. Co.</u>, 104 Cal. App. 4th 508, 514-515 (2002).  The UCL

17   is broad enough to reach practically any form of predatory business practice in whatever context it

18   may occur. <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1143 (2003).

19   Plaintiff is not required to demonstrate a series of ongoing wrongful acts.  Rather, a single

20   wrongful act is sufficient to establish a violation of the UCL.  <u>Klein v. Earth Elements</u>, 59 Cal.

21   App. 4th 965, 968 (1997).

22        The UCL applies to anything that can properly be called a business practice and at the

23   same time is forbidden by law. <u>Barquis v. Merchants Collection Ass'n of Oakland, Inc.</u>, 7 Cal. 3d

24   94, 113 (1972).  A business practice that violates any law - civil or criminal - may be enjoined

25   under this statute. <u>AICCO, Inc. v. Insurance Co. of North America</u>, 90 Cal. App. 4th 579, 588-

26   589 (2001) .  The statute also applies to acts that are unfair.   "Unfair" practices are those practices

27   whose harm to the victim outweighs its benefits. <u>Progressive West Ins. Co. v. Superior Court</u>, 135

28   Cal. App. 4th 263, 285-286 (2005).

1    The UCL applies to insurance claims practices.  See, e.g., <u>Kapsimallis v. Allstate Ins.</u>

2  <u>Co.</u>, 104 Cal. App. 4th 667, 676 (2002);  <u>Progressive West Ins. Co. v. Superior Court</u>, supra;

3  <u>Ticconi v. Blue Shield of California Life & Health Ins. Co.</u>, 160 Cal. App. 4th 528 (2008).  In <u>R</u>

4  <u>& B Auto Center, Inc. v. Farmers Group, Inc.</u>, 140 Cal. App. 4th 327 (2006), the insurance

5  company sold the insured car dealership insurance that the insured reasonably believed would cover

6  it for lemon law violations.  Plaintiffs alleged that the insurer never intended to actually provide

7  the coverage and sought equitable relief under the UCL.  The court found that the UCL applied

8  under those facts.  Id at 355-356.

9    The evidence presented here shows that PanAm engaged in rampant unlawful and

10  unfair conduct that the Court should enjoin.  As in <u>R & B Auto Center</u>, supra, PanAm sells a

11  benefit (the rehabilitation benefit) that it has no intention of actually providing.  A reasonable

12  consumer would expect that rehabilitation benefits were available, but in fact, PanAm never pays

13  those benefits.  It has no policies in place for providing those benefits, it does not honor its legal

14  obligation to tell policyholders about the benefit when it appears they might be entitled to it, it

15  denies the benefits without explanation, it refuses to respond to inquiries from the policyholder

16  about the benefits, it has no appeal process in place and does not answer questions about appeal,

17  and, if the policyholder is insistent about the rehabilitation benefit, PanAm misrepresents how

18  claims for this benefit are processed.  An insurance company cannot be any more unfair than

19  PanAm.

20    In addition to its fraudulent and unfair practice in connection with the rehabilitation

21  benefit, there is PanAm's business practice of automatically denying benefits based on the initial

22  APS, without any investigation.  As discussed above, this practice is fraud per se.  <u>Miller v.</u>

23  <u>National American Life Ins. Co. of Calif.</u> (1976) 54 Cal. App. 3d 331.

24    Another illegal practice engaged in by PanAm is paying disability benefits in arrears.

25  This practice is made illegal by Ins. Code § 10350.8.  PanAm has violated this law frequently.  Ex.

26  I to Kinney Decl. 138:1-4.  This practice should also be enjoined.

27    **F.        No Opposition as to IIED and NIED Claims.**

28    Plaintiff does not offer opposition with respect to the claims for intentional infliction

1   of emotional distress and negligent infliction of emotional distress.

2   **G.        Clear and Convincing Evidence Supports Punitive Damages.**

3          Punitive damages are made available to discourage the perpetuation of objectionable

4   corporate policies that breach the public's trust and sacrifice the interests of the vulnerable for

5   commercial gain. Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1164-1165 (9th Cir.

6   2002) (reversing a grant of summary judgment, finding sufficient evidence that the denial of a

7   claim "was not simply the unfortunate result of poor judgment" to allow a jury to conclude that the

8   insurer's actions were willful and "rooted in established company practice"), quoting Egan, supra,

9   24 Cal.3d at 820.  Punitive damages are available when the insured proves by clear and convincing

10  evidence that the insurance company engaged in conduct that is oppressive, fraudulent, or

11  malicious. Amadeo, supra at 1164, quoting PPG Industries, Inc. v. Transamerica Ins. Co., 20

12  Cal.4th 310, 318-319 (1999).

13         "[A] plaintiff may meet the state of mind requirement for an award of punitive

14  damages by showing that the insurer's bad faith was 'part of a conscious course of conduct, firmly

15  grounded in established company policy." Amadeo, supra at 1165, quoting Neal v. Farmers Ins.

16  Exchange, 21 Cal.3d 910 (1978).

17         PanAm has engaged in conduct that is fraudulent, oppressive and malicious as defined

18  by California Civil Code section 3294.

19         Fraudulent conduct sufficient to support punitive damages is evident both in PanAm's

20  business policy of cutting off benefits without investigation and in its business policy of refusing to

21  pay rehabilitation benefits.  In Miller v. National American Life Ins. Co. of Calif., supra, the

22  Court upheld the award of punitive damages based solely on the fraudulent conduct of the insurer

23  engaged in a business practice of cutting off benefits without investigation.  Here, the fraudulent

24  conduct goes far beyond that found in Miller.  Not only does the insurer cut off benefits without

25  investigation, it never pays rehabilitation benefits at all, never investigates claims for that type of

26  benefit, stonewalls when a claimant inquires about the benefit, and makes misrepresentations to the

27  claimant if the claimant insists on a response.

28         Besides being fraudulent, the conduct of PanAm was malicious and/or oppressive.

1   Conduct is considered malicious if it is either intended by a defendant to cause injury or if it is

2   despicable conduct which is carried on by the defendant with a willful and conscious disregard of

3   the rights of others.  Cal. Civil Code §3294(c)(1).  It is not necessary to show that PanAm had

4   personal animosity toward plaintiff or acted out of "evil" motives.  It is enough that PanAm

5   intended the consequences that were substantially certain to result from its conduct.  <u>Schroeder v.</u>

6   <u>Auto Driveway Co.,</u> 11 Cal. 3d 908, 922 (1974).

7              Conduct is considered oppressive when it is despicable conduct that subjects a person

8   to cruel and unjust hardship in conscious disregard of that person's rights.  Civil Code §3294(c)(2).

9              Malicious and oppressive conduct is shown here by the following acts by PanAm:

10  • Placing a claims representative with no experience in disability claims in sole

11     control of all disability claims;

12  • Having no written policies regarding the handling of disability claims;

13  • Not locating all of monthly disability benefits due to Plaintiff until ten months after

14     the date of disability, and after Plaintiff contacted PanAm's billing department to

15     find out why it was still collecting premiums;

16  • Terminating Plaintiff's monthly disability benefits without investigation;

17  • Requiring Plaintiff to travel over 100 miles for a medical examination immediately

18     after Plaintiff complained to the Department of Insurance;

19  • Withdrawing twelve months' premiums from Plaintiff's bank account;

20  • Withholding Plaintiff's monthly benefits for two months after completing the

21     investigation into her disability;

22  • Paying Plaintiff 90 days in arrears;

23  • Writing to Plaintiff in July 2006 indicating that Plaintiff had only been insured for

24     two years, that her application was being investigated and that PanAm might seek a

25     judgment against Plaintiff;

26  • Refusing without explanation to pay rehabilitation benefits;

27  • Denying Plaintiff's claim for rehabilitation when it knew that it did not have

28     sufficient information to deny that claim;

- Refusing to investigate whether Plaintiff was entitled to rehabilitation benefits;
- Refusing to answer Plaintiff's question about what information was needed to obtain rehabilitation benefits;
- Telling Plaintiff that rehabilitation benefits were not an "entitlement";
- Asserting that it used vocational rehabilitation specialists to assess rehabilitation claims although it does not do that and its senior officer for claims does not even know what a vocational rehabilitation specialist is;
- Failing to properly account to Plaintiff for benefits and refunds of premium, but instead repeatedly sending Plaintiff incomprehensible and erroneous information;
- Sending EOBs that falsely represented that Plaintiff was being paid current, when in fact she was being paid in arrears.

There is clear and convincing evidence of each of these items. In fact, the evidence in support of these charges is incontrovertible.

Not only was everything that was done here by Mr. Jones supervised by Mr. Simon, the company's Chief Claim Officer (Ex. F to Kinney Decl. 6:1), Plaintiff's claim was reviewed by Mr. Simon, together with PanAm's Vice President for Administration and a lawyer from PanAm's office of in-house counsel, and the wrongful activity that is the subject of this lawsuit was explicitly ratified. Ex. F to Kinney Decl. 73:9-79:19.

## IV.    CONCLUSION

The conduct of PanAm which is the subject of this lawsuit could hardly be worse. At every step of the process, PanAm ignored its obligations. PanAm admits that it treats other policyholders as reprehensibly as it treated Plaintiff. Overall, this case presents a clear example of insurance bad faith.

Dated: June 6, 2008                            LAW OFFICE OF MICHAEL E. KINNEY


                                               By: /s/_____
                                                     Michael E. Kinney
                                                     Attorney for Plaintiff